# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CASSANDRA MATNEY, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| REVANCE THERAPEUTICS, INC., MARK J. FOLEY, and TOBIN C. SCHILKE, | |
| Defendants. | |

Plaintiff Cassandra Matney ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Revance Therapeutics, Inc. ("Revance" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Revance securities between February 29, 2024 and December 6, 2024, both dates inclusive (the "Class Period"),

1

seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.　　　Revance is a biotechnology company that develops, manufactures, and commercializes neuromodulators for various aesthetic and therapeutic indications in the U.S. and internationally.

3.　　　In January 2020, Revance entered into a distribution agreement (the "Distribution Agreement") with Teoxane SA ("Teoxane"), pursuant to which Teoxane granted Revance "the exclusive right to import, market, promote, sell and distribute Teoxane's line of Resilient Hyaluronic Acid® dermal fillers, which include: (i) the RHA® Collection of dermal fillers and (ii) the RHA® Pipeline Products in the U.S., U.S. territories and possessions, in exchange for 2,500,000 shares of [Revance] common stock" and certain other commitments by Revance. In addition, under the Distribution Agreement, Revance is required to meet certain minimum purchase obligations and certain minimum expenditure requirements and either party may terminate the Teoxane Agreement in the event of "a material breach by the other party, including certain specified breaches that include the right for Teoxane to terminate the Teoxane Agreement for [Revance's] failure to meet the minimum purchase requirements or commercialization expenditure during specified periods, or for [Revance's] breach of the exclusivity obligations" under the Distribution Agreement.

4.　　　In August 2024, Revance and Crown Laboratories, Inc. ("Crown"), a privately held marketer and manufacturer of skincare products, jointly announced that they had entered into a merger agreement (the "Merger Agreement") pursuant to which the companies would seek to

merge. Under the terms of the Merger Agreement, Crown would commence a tender offer (the "Tender Offer") to acquire all outstanding shares of Revance's common stock for $6.66 per share in cash, representing a total enterprise value of $924 million.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Revance was in material breach of the Distribution Agreement; (ii) the foregoing subjected the Company to an increased risk of litigation, as well as monetary and reputational harm; (iii) all the foregoing increased the risk that the Tender Offer would be delayed and/or amended; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

6. On September 23, 2024, Revance disclosed in an SEC filing that it "received a notice to remedy alleged material breaches, including breaches of the maximum levels of buffer stock and required efforts to promote and sell Teoxane products, under the Company's exclusive distribution agreement with Teoxane SA". Due to the dispute with Teoxane, Revance advised that Crown's Tender Offer had been delayed until at least October 4, 2024.

7. On this news, Revance's stock price fell $0.445 per share, or 7.66%, to close at $5.365 per share on September 23, 2024.

8. Then, on December 9, 2024, Revance disclosed in an SEC filing that Crown and Revance had amended their merger agreement, and that Crown would shortly commence a tender offer to acquire all outstanding shares of Revance's common stock for $3.10 per share in cash—a drop of over 50% in the purchase price.

9. Market analysts were quick to comment on the reduced Tender Offer purchase price. For example, on December 9, 2024, *Reuters* published an article entitled "Revance agrees

3

to lower take-private offer by Crown Labs," which quoted an analyst from the investment banking firm Stifel as stating "[t]his significant devaluation is a reflection of multiple forced errors, starting with the failed launch strategy for Daxxify and ensuing reputational damage to Revance's relationships to the surprise merger announcement near all-time lows, then leading to accusations of breach of contract with Teoxane."

10.    On this news, Revance's stock price fell $0.79 per share, or 20.68%, to close at $3.03 per share on December 9, 2024.

11.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Revance is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

15.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

4

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

16.     Plaintiff, as set forth in the attached Certification, acquired Revance securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17.     Defendant Revance is a Delaware corporation with principal executive offices located at 1222 Demonbreun Street, Suite 2000, Nashville, Tennessee 37203.  The Company's common stock trades in an efficient market on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "RVNC."

18.     Defendant Mark J. Foley ("Foley") has served as Revance's Chief Executive Officer at all relevant times.

19.     Defendant Tobin C. Schilke ("Schilke") has served as Revance's Chief Financial Officer at all relevant times.

20.     Defendants Foley and Schilke are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Revance's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Revance's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Revance, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and

5

were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

22. Revance and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23. Revance is a biotechnology company that develops, manufactures, and commercializes neuromodulators for various aesthetic and therapeutic indications in the U.S. and internationally.

24. In January 2020, Revance entered into the Distribution Agreement with Teoxane.

### Materially False and Misleading Statements Issued During the Class Period

25. The Class Period begins on February 29, 2024, the day after Revance filed an Annual Report on Form 10-K with the SEC during after-market hours, reporting the Company's financial and operating results for the quarter and year ended December 31, 2023 (the "2023 10-K"). In discussing the Company's strategy, the 2023 10-K stated, in relevant part:

- We have and will continue to selectively evaluate partnerships, distribution opportunities, joint development agreements and acquisitions to expand our aesthetic and therapeutic franchises and enhance our competitive position:

  o Our Teoxane partnership enabled us to enter the U.S. dermal filler market and has provided the foundation for DAXXIFY® and potential future product commercialization.

26. Further, with respect to the Distribution Agreement, the 2023 10-K stated, in relevant part:

Under the Teoxane Agreement, as amended in September 2020, November 2020 and December 2022, we are required to meet certain minimum purchase

6

obligations during each year of the term and are required to meet certain minimum expenditure requirements in connection with commercialization efforts. Either party may terminate the Teoxane Agreement in the event of the insolvency of, or a material breach by, the other party, including certain specified breaches that include the right for Teoxane to terminate the Teoxane Agreement for our failure to meet the minimum purchase requirements or commercialization expenditure during specified periods, or for our breach of the exclusivity obligations under the Teoxane Agreement.

This was plainly a catchall provision not sufficiently tailored to meet the known and/or foreseeable risks facing the Company.

27.     Appended to the 2023 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that "[t]he information contained in the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

28.     On May 9, 2024, Revance filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2024 (the "Q1 2024 10-Q"). With respect to the Distribution Agreement, the Q1 2024 10-Q stated, in relevant part:

In January 2020, we entered into the Teoxane Agreement, as amended, pursuant to which Teoxane granted us the exclusive right to import, market, promote, sell and distribute Teoxane's line of Resilient Hyaluronic Acid® dermal fillers, which include: (i) RHA® Collection of dermal fillers, and (ii) the RHA® Pipeline Products in the U.S. and U.S. territories and possessions, in exchange for 2,500,000 shares of our common stock and certain other commitments by us. The Teoxane Agreement is effective for a term of ten years from product launch in September 2020 and may be extended for a two-year period upon the mutual agreement of the parties. We are required to meet certain minimum purchase obligations during each year of the term. Our minimum purchase obligation for the year ending December 31, 2024 is $52 million. Our minimum purchase obligations after December 31, 2024 will be determined based on projected market growth rate. We are also required to meet certain minimum expenditure requirements in connection with commercialization and promotion of RHA® Collection of dermal fillers and RHA® Pipeline Products, which is $36 million for the year ending December 31, 2024. Minimum expenditures related to the commercialization and

7

promotion of the RHA® Collection of dermal fillers and RHA® Pipeline Products after December 31, 2024 will be determined at a later date.

Either party may terminate the Teoxane Agreement in the event of the insolvency of, or a material breach by, the other party, including certain specified breaches that include the right for Teoxane to terminate the Teoxane Agreement for our failure to meet the minimum purchase requirements or commercialization expenditure during specified periods, or for our breach of the exclusivity obligations under the Teoxane Agreement.

This was plainly a catchall provision not sufficiently tailored to meet the known and/or foreseeable risks facing the Company.

29.    Appended to the Q1 2024 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [Q1 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.    On August 8, 2024, Revance filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2024 (the "Q2 2024 10-Q").  With respect to the Distribution Agreement, the Q2 2024 10-Q stated, in relevant part:

In January 2020, we entered into the Teoxane Agreement, as amended, pursuant to which Teoxane granted us the exclusive right to import, market, promote, sell and distribute Teoxane's line of Resilient Hyaluronic Acid® dermal fillers, which include: (i) RHA® Collection of dermal fillers, and (ii) the RHA® Pipeline Products in the U.S. and U.S. territories and possessions, in exchange for 2,500,000 shares of our common stock and certain other commitments by us. The Teoxane Agreement is effective for a term of ten years from product launch in September 2020 and may be extended for a two-year period upon the mutual agreement of the parties. We are required to meet certain minimum purchase obligations during each year of the term. Our minimum purchase obligation for the year ending December 31, 2024 is $52 million. Our minimum purchase obligations after December 31, 2024 will be determined based on projected market growth rate. We are also required to meet certain minimum expenditure requirements in connection with commercialization and promotion of RHA® Collection of dermal fillers and RHA® Pipeline Products, which is $36 million for the year ending December 31, 2024. Minimum expenditures related to the commercialization and

8

promotion of the RHA® Collection of dermal fillers and RHA® Pipeline Products after December 31, 2024 will be determined at a later date.

Either party may terminate the Teoxane Agreement in the event of the insolvency of, or a material breach by, the other party, including certain specified breaches that include the right for Teoxane to terminate the Teoxane Agreement for our failure to meet the minimum purchase requirements or commercialization expenditure during specified periods, or for our breach of the exclusivity obligations under the Teoxane Agreement.

This was plainly a catchall provision not sufficiently tailored to meet the known and/or foreseeable risks facing the Company.

31.     Appended to the Q2 2024 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that "[t]he information contained in the [Q2 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.     On August 12, 2024, Revance issued a press release entitled "Crown Laboratories and Revance Announce Entry Into Merger Agreement."  The press release stated, in relevant part:

Crown [. . .] and Revance [. . .] today announced that they have entered into a merger agreement pursuant to which the companies seek to merge the two complementary organizations.

**Under the terms of the agreement, which has been unanimously approved by Revance's Board of Directors, Crown will commence a tender offer to acquire all outstanding shares of Revance's common stock for $6.66 per share in cash**, representing a total enterprise value of $924 million. The purchase price represents a premium of 89% over Revance's closing market price on August 9, 2024, and a 111% premium to Revance's 60-day volume-weighted average price.

"This is a significant step forward in Crown's vision to become a fully integrated global aesthetics and skincare company, bringing innovative solutions to physicians, patients and consumers in the incredibly dynamic aesthetics and skincare market," said Jeff Bedard, founder and Chief Executive Officer of Crown. "Revance has an impressive track record in developing innovative aesthetics offerings that will complement Crown's innovative line of skincare products. As a combined company, we have the opportunity to create a comprehensive portfolio of high-growth products for all stages of life, and we will be committed to investing

9

in education, training, and practice support for aesthetics providers across the United States."

Upon completion of the transaction, Crown Laboratories expects to be one of the leading global aesthetics and skincare companies in an attractive, high-growth market, with an industry-leading portfolio of 10+ cutting-edge skin health and aesthetic brands, and one of the largest distribution footprints in skincare across medical, retail and e-commerce channels.

[Defendant] Foley[] said, "Over the past several years, Revance has brought to the market innovative aesthetic and therapeutic offerings that have elevated patient and physician experiences. We are excited about this transaction and to be joining forces with Crown Laboratories, which will enable us to broaden our provider network as well as provide us with an expanded portfolio of products. We also believe that the merger provides substantial value for our stockholders. Crown shares our commitment to innovation and scale and will help us accelerate our growth. Scale and product breadth are important factors in the markets in which we compete and, by combining with Crown, we will be able to offer our customers a more compelling range of products and services while, at the same time, benefiting from the combined strength of our collective commercial organizations."

(Emphasis added).

33.    The statements referenced in ¶¶ 25-32 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Revance was in material breach of the Distribution Agreement; (ii) the foregoing subjected the Company to an increased risk of litigation, as well as monetary and reputational harm; (iii) all the foregoing increased the risk that the Tender Offer would be delayed and/or amended; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

34.    On September 23, 2024, the Company disclosed in a filing on Form 8-K with the SEC, in relevant part, that:

*On August 16, 2024, Revance Therapeutics, Inc. (the "Company" or "Revance") received a notice to remedy alleged material breaches, including breaches of the maximum levels of buffer stock and required efforts to promote and sell Teoxane products, under the Company's exclusive distribution agreement with Teoxane SA ("Teoxane"), dated January 10, 2020, as amended (the "Distribution Agreement")*. The Company denies the alleged material breaches asserted in the notice, does not believe that the asserted allegations constitute material breaches under the terms of the Distribution Agreement and intends to defend itself vigorously. The Company is engaged in discussions with Teoxane regarding the notification. These discussions could result in various outcomes, including but not limited to, the Company and Teoxane agreeing to modify certain terms of the Distribution Agreement, including the Company's minimum purchase obligations thereunder or the Company or Teoxane seeking remedies under the Distribution Agreement, including Teoxane seeking to terminate the Distribution Agreement. The Distribution Agreement continues to be in full force and effect.

*In light of these discussions, on September 19, 2024, Revance, Crown Laboratories, Inc. ("Crown") and Reba Merger Sub, Inc. ("Merger Sub," and together with Crown, the "Buyer Parties") agreed to extend the date by which Merger Sub is obligated to commence the tender offer for all of the outstanding shares of common stock of the Company (the "Offer") pursuant to the previously announced Agreement and Plan of Merger, dated as of August 11, 2024, by and among the Buyer Parties and the Company (the "Merger Agreement"), to October 4, 2024 or such other date as may be mutually agreed to between the Company and the Buyer Parties*. The Company's ongoing discussions with Teoxane and the Buyer Parties could result in delays to the consummation of the Offer or in the Company or the Buyer Parties seeking remedies in accordance with the terms of the Merger Agreement.

(Emphasis added).

35.     On this news, Revance's stock price fell $0.445 per share, or 7.66%, to close at

$5.365 per share on September 23, 2024.

36.     Then, on December 9, 2024, Revance disclosed in a filing on Form 8-K with the

SEC filing, in relevant part, that:

On December 7, 2024, Crown Laboratories, Inc., a Delaware corporation ("**Parent**"), Reba Merger Sub, Inc., a Delaware corporation and wholly owned subsidiary of Parent ("**Merger Sub**," and together with Parent, the "**Buyer Parties**"), and Revance Therapeutics, Inc., a Delaware corporation ("Revance" or the "**Company**"), entered into an Amended and Restated Agreement and Plan of Merger (the "**A&R Merger Agreement**"), pursuant to which Parent will cause

Merger Sub to commence a tender offer (as it may be amended from time to time as permitted by the A&R Merger Agreement, the "**Offer**") on December 12, 2024 to purchase all of the outstanding shares of common stock, par value $0.001 per share, of the Company (the "**Company Common Stock**," each a "**Share**" and collectively, the "**Shares**") at a price of ***$3.10 per Share*** (such amount per Share, the "**Offer Price**"), in cash, without interest. As soon as practicable following the consummation of the Offer, on the terms and subject to the conditions set forth in the A&R Merger Agreement, Merger Sub will be merged with and into the Company (the "**Merger**"), with the Company surviving as a wholly owned subsidiary of Parent. The A&R Merger Agreement amends and restates the Agreement and Plan of Merger (the "Original Agreement"), dated as of August 11, 2024, by and among the Company and the Buyer Parties.

(Emphasis added).

37.     Market analysts were quick to comment on the reduced Tender Offer purchase price.  For example, on December 9, 2024, *Reuters* published an article entitled "Revance agrees to lower take-private offer by Crown Labs," which stated, in relevant part:

Crown Laboratories would buy the anti-wrinkle injection maker Revance Therapeutics[], opens new tab at a roughly 50% lower price compared to an original agreement signed in August, the companies said on Monday, sending the latter's stock tumbling 20%.

The lowered takeover price follows months of delay in the deal after Revance, which makes a rival to AbbVie's (ABBV.N), opens new tab blockbuster product Botox, faced a dispute with its partner Teoxane.

As per the current agreement, Crown will buy all of Revance's outstanding shares for $3.10 per share, or $325.20 million according to Reuters' calculations. The previous agreement was for $6.66 per share or $924 million.

Revance received a notice in September for breaching the maximum allowed buffer stock levels and not adequately promoting and selling Teoxane's dermal fillers, as required by their distribution agreement.

\*\*\*

"***This significant devaluation is a reflection of multiple forced errors, starting with the failed launch strategy for Daxxify and ensuing reputational damage to Revance's relationships to the surprise merger announcement near all-time lows, then leading to accusations of breach of contract with Teoxane***," said Stifel analyst Annabel Samimy.

12

(Emphasis added).

38.     On this news, Revance's stock price fell $0.79 per share, or 20.68%, to close at $3.03 per share on December 9, 2024.

39.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

40.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Revance securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Revance securities were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Revance or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

43. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

44. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Revance;

- whether the Individual Defendants caused Revance to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Revance securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

14

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

46.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

47.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Revance securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Revance securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v.*

*United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Revance securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Revance securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described

16

above, including statements made to securities analysts and the media that were designed to inRevance the market for Revance securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Revance's finances and business prospects.

54.     By virtue of their positions at Revance, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Revance, the Individual Defendants had knowledge of the details of Revance's internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Revance. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Revance's businesses, operations, future financial condition and future prospects. As a result of the

17

dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Revance securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Revance's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Revance securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Revance securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Revance securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Revance securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Revance securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

60.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61.     During the Class Period, the Individual Defendants participated in the operation and management of Revance, and conducted and participated, directly and indirectly, in the conduct of Revance's business affairs.  Because of their senior positions, they knew the adverse non-public information about Revance's misstatement of income and expenses and false financial statements.

62.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Revance's financial condition and results of operations, and to correct promptly any public statements issued by Revance which had become materially false or misleading.

63.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Revance disseminated in the marketplace during the Class Period concerning Revance's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Revance to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Revance within the meaning

19

of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Revance securities.

64. Each of the Individual Defendants, therefore, acted as a controlling person of Revance. By reason of their senior management positions and/or being directors of Revance, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Revance to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Revance and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Revance.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: January 3, 2025                                Respectfully submitted,

20

BRAMLETT LAW OFFICES
*By:*

*s/Paul Kent Bramlett*
PAUL KENT BRAMLETT
TN SUP CT #7387/MS SUP CT #4291
ROBERT PRESTON BRAMLETT
TN SUP CT #25895
40 Burton Hills Blvd., Suite 200
P. O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
Facsimile: 866.816.4116
PKNASHLAW@aol.com
Robert@BramlettLawOffices.com

POMERANTZ LLP
Jeremy A. Lieberman (*pro hac vice*
application forthcoming)
J. Alexander Hood II (*pro hac vice*
application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

WOHL & FRUCHTER LLP
Joshua E. Fruchter (*pro hac vice* application
forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

21