CASSANDRA MATNEY, Individually and on
Behalf of All Others Similarly Situated,

Plaintiff,

vs.

REVANCE THERAPEUTICS, INC., MARK J.
FOLEY, and TOBIN C. SCHILKE,

Defendants.

Civil Action No. 3:25-cv-0018

CLASS ACTION

Judge Eli J. Richardson
Magistrate Judge Jeffrey S. Frensley

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
INSTITUTIONAL INVESTORS FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF THEIR SELECTION OF COUNSEL**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF THE ACTION.........................................................................................3

ARGUMENT.....................................................................................................................5

I.     The PSLRA Standard for Appointing Lead Plaintiff...........................................5

II.    The Institutional Investors Are The Most Adequate Plaintiff ............................6

     A.     The Institutional Investors' Motion Is Timely...........................................6

     B.     The Institutional Investors Have The Largest Financial Interest In The Relief Sought By The Class ........................................................................7

     C.     The Institutional Investors Otherwise Satisfy Rule 23's Typicality and Adequacy Requirements ...........................................................................7

           1.     The Institutional Investors' Claims Are Typical of Those of the Class.............................................................................................8

           2.     The Institutional Investors Will Fairly and Adequately Protect the Interests of the Class .................................................................9

     D.     The Institutional Investors Are Precisely The Type Of Lead Plaintiff Envisioned By The PSLRA ..................................................................10

III.    The Court Should Approve The Institutional Investors' Selection Of Counsel ...............12

CONCLUSION...............................................................................................................17

i

# TABLE OF AUTHORITIES

CASES                                                                                        PAGE(S)

*Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*,
  No. 20-cv-4534, 2020 WL 6710429 (S.D. Ohio Nov. 16, 2020) ............................................. 16

*Franchi v. SmileDirectClub, Inc.*,
  No. 19-cv-962, 2020 WL 6479561 (M.D. Tenn. Jan. 27, 2020) ...................................... 7, 8, 12

*French v. CBL & Assocs. Props., Inc.*, No.,
  16-cv-165, 2016 WL 7668501 (E.D. Tenn. Sept. 26, 2016)........................................ 7, 8, 9, 12

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................................. 12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).................................................................................................. 2

*Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*,
  357 F. Supp. 2d 1027 (S.D. Ohio 2020) ....................................................................... 9, 10, 12

**Statutes**

15 U.S.C. § 78j(b) ..................................................................................................................... 1
15 U.S.C. § 78t(a) ..................................................................................................................... 1
15 U.S.C. § 78u-4(a)(3) .................................................................................................... *passim*
15 U.S.C. § 78u-4(a)(I) ............................................................................................................ 5

**Rules**

Fed. R. Civ. P. 23.............................................................................................................. 2, 6, 8, 9

**Regulations**

17 C.F.R. § 240.10b-5............................................................................................................... 1

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)........................................................................ 10

Proposed Lead Plaintiff The Arbitrage Fund, AltShares Merger Arbitrage ETF, AltShares Event-Driven ETF, iMGP Alternative Strategies Fund (collectively, the "Water Island Funds"), and Chicago Capital Management, LP ("Chicago Capital," and together with the Water Island Funds, the "Institutional Investors") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an order: (1) appointing the Institutional Investors as Lead Plaintiff for a class (the "Class") of all persons and entities that purchased or otherwise acquired Revance Therapeutics, Inc. ("Revance" or the "Company") securities between February 29, 2024 and December 6, 2024, inclusive (the "Class Period") in the above-captioned securities class action (the "Action"); (2) approving their selection of Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Saxena White P.A. ("Saxena White") as Lead Counsel and Stranch, Jennings & Garvey, PLLC ("SJ&G") as Liaison Counsel for the Class; and (3) granting any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

This is a securities class action lawsuit brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) against: (1) Revance;  (2) Mark J. Foley, the Company's Chief Executive Officer ("CEO"); and (3) Tobin C. Schilke, the Company's Chief Financial Officer ("CFO") (collectively, "Defendants").

The PSLRA directs the Court to appoint as Lead Plaintiff the "most adequate plaintiff," *i.e.*, the movant that has demonstrated the "largest financial interest" in the litigation and has also

made a prima facie showing that it meets the typicality and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).

The Institutional Investors respectfully submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff on behalf of the Class.  The Institutional Investors satisfy all the prerequisites for lead plaintiff appointment.  As set forth below, the Institutional Investors incurred a loss of approximately $7,598,721 as calculated under the prevailing last-in-first-out ("LIFO") loss calculation method on their purchases of Revance securities, representing the largest known financial interest in the relief sought by the Class.[1]

The Institutional Investors also meet the typicality and adequacy requirements of Rule 23 because their claims are typical of those of absent Class members and they will fairly and adequately represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  The Institutional Investors are also an ideal Lead Plaintiff to represent the Class, as they are each sophisticated institutions with significant experience investing in publicly traded securities, and include institutions with experience serving in a leadership role in other complex securities litigation matters.

In addition, as set forth in greater detail in their Joint Declaration submitted herewith, the Institutional Investors fully understand the Lead Plaintiff's obligations under the PSLRA and are

---

[1] The Institutional Investors' transactions in Revance securities during the Class Period are set forth in the certifications attached as Exhibit A to the Declaration of J. Gerard Stranch IV in Support of the Institutional Investors' Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Stranch Decl."), filed concurrently herewith.  A chart setting forth the calculation of the Institutional Investors' losses is attached as Exhibit B to the Stranch Decl.

2

willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action. *See* Stranch Decl., Ex. C.

The Institutional Investors also respectfully request that the Court approve their selection of Entwistle & Cappucci and Saxena White to serve as Lead Counsel, and SJ&G to serve as Liaison Counsel for the Class. Entwistle & Cappucci and Saxena White are leading national law firms that specialize in representing institutional investors in securities and shareholder litigation. Entwistle & Cappucci and Saxena White have substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this Circuit and throughout the nation, and have the expertise and resources to prosecute litigation of this complexity and scale. Similarly, SJ&G has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level.

Accordingly, the Institutional Investors respectfully request that the Court appoint them as Lead Plaintiff and otherwise grant their motion.

## SUMMARY OF THE ACTION

Based in Nashville, Tennessee, Revance is a biotechnology company that develops, manufactures, and commercializes neuromodulators for various aesthetic and therapeutic indications in the U.S. and internationally.

In January 2020, Revance entered into a distribution agreement (the "Distribution Agreement") with dermal filler producer Teoxane SA ("Teoxane"), pursuant to which Teoxane granted Revance "the exclusive right to import, market, promote, sell and distribute" certain Teoxane products in exchange for 2,500,000 shares of Revance common stock, subject to Revance meeting certain requirements.

3

In August 2024, Revance and skincare product company Crown Laboratories, Inc. ("Crown") jointly announced that they had entered into a merger agreement (the "Merger Agreement") where Crown would acquire all outstanding shares of Revance's common stock for $6.66 per share (the "Tender Offer").

Throughout the Class Period, the Company's SEC filings only generally discussed requirements under the Distribution Agreement and that Revance's failure to meet those requirements would give Teoxane the right of termination, while not sufficiently stating the known and/or foreseeable risks facing the Company, including to the Tender Offer, from its already existing breaches of the Distribution Agreement.

The Action alleges that, during the Class Period, Defendants made false and misleading statements regarding Revance's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Revance was in material breach of the Distribution Agreement; (ii) the foregoing subjected the Company to an increased risk of litigation, as well as monetary and reputational harm; (iii) all the foregoing increased the risk that the Tender Offer would be delayed and/or amended; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

Defendants began to reveal the truth on September 23, 2024, when Revance disclosed in an SEC filing that it "received a notice to remedy alleged material breaches, including breaches of the maximum levels of buffer stock and required efforts to promote and sell Teoxane products, under the Company's exclusive distribution agreement with Teoxane SA," and advised that the Tender Offer had been delayed until at least October 4, 2024. On this news, Revance's stock price fell $0.445 per share, or 7.66%, to close at $5.365 per share on September 23, 2024.

4

Thereafter, on December 9, 2024, Revance disclosed in an SEC filing that Crown and Revance had amended the Merger Agreement and that Crown would shortly commence the Tender Offer to acquire all outstanding shares of Revance's common stock for $3.10 per share in cash—a drop of over 50% in the purchase price. On this news, Revance's stock price fell $0.79 per share, or 20.68%, to close at $3.03 per share on December 9, 2024.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Institutional Investors and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.        The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(I); *see also* 15 U.S.C. § 78u-4(a)(3)(B). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff class—
>
> (I)       of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)      That, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

5

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the "person or group of persons" who: (1) filed a complaint or filed a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## II. The Institutional Investors Are The Most Adequate Plaintiff

The Institutional Investors respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the largest financial interest of any qualified movant, and satisfy Rule 23's typicality and adequacy requirements.

### A. The Institutional Investors' Motion Is Timely

On January 3, 2025, notice regarding the pending nature of this case was published on *AccessWire*, a widely circulated, national, business-oriented news reporting wire service. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); Notice, Stranch Decl., Ex. D. Thus, pursuant to the PSLRA, any member of the proposed Class may apply to be appointed Lead Plaintiff within 60 days after publication of the notice, i.e., on or before March 4, 2025. The Institutional Investors have thus filed this motion within the required time frame.

6

**B.      The Institutional Investors Have The Largest Financial Interest In The Relief Sought By The Class**

The Institutional Investors should be appointed Lead Plaintiff because they have the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" so long as that movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Franchi v. SmileDirectClub, Inc.*, No. 19-cv-962, 2020 WL 6479561, at *3-4 (M.D. Tenn. Jan. 27, 2020) (finding that the movant claiming the largest loss had "the largest financial interest in [the] litigation"); *French v. CBL & Assocs. Props.*, *Inc.*, No. 16-cv-165, 2016 WL 7668501, at *2 (E.D. Tenn. Sept. 26, 2016) (same).

During the Class Period, the Institutional Investors sustained a loss of approximately $7,598,721 on a LIFO basis on their transactions in Revance securities. *See* Stranch Decl., Exs. A, B. The Institutional Investors are unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the action and also satisfies the typicality and adequacy requirements of Rule 23. Accordingly, the Institutional Investors have the largest financial interest of any qualified movant seeking Lead Plaintiff status and, because they satisfy the applicable requirements of Rule 23, as discussed below, is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

**C.      The Institutional Investors Otherwise Satisfy Rule 23's Typicality and Adequacy Requirements**

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable;

7

(2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at this stage of the litigation, a lead plaintiff movant need only "make a prima facie showing that it meets the typicality and adequacy requirements of Rule 23." *SmileDirectClub*, 2020 WL 6479561, at *3.

### 1. The Institutional Investors' Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied when "claims arise from the same events, practices, or course of conduct, and are based on the same legal theories as the claims of other class members." *French*, 2016 WL 7668501, at *3; *see also SmileDirectClub*, 2020 WL 6479561, at *3 (finding lead plaintiff movant had satisfied the typicality requirement as the movant's claims arose "from the same event or practice or course of conduct that gives rise to the claims of other class members and involve the same legal theory") (internal quotation omitted).

The typicality requirement is satisfied here because the Institutional Investors, which are not subject to any unique or special defenses, seek the same relief and advance the same legal theories as the other Class members. Like all members of the Class, the Institutional Investors: (1) purchased Revance securities during the Class Period; (2) at prices that were artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged thereby when the truth was revealed. *See French*, 2016 WL 7668501, at *3 (finding lead plaintiff movant's claims were "typical of those of the class because, like all class members, [movant] claims that [d]efendants violated federal securities laws and that it purchased [issuer's] securities during the class period at artificially inflated prices, thereby suffering damages"). As

such, the Institutional Investors' claims are typical of the Class's claims and satisfy Rule 23(a)(3)'s typicality requirement.

### 2. The Institutional Investors Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it will "fairly and adequately represent[] the interests of the class." *Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2005). The adequacy requirement is satisfied if "(1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation." *Id*.

Here, the Institutional Investors will fairly and adequately represent the interests of the proposed Class. The Institutional Investors' interests are aligned with those of the other Class members and are not antagonistic in any way, and there are no facts to suggest any actual or potential conflict of interest exists between the Institutional Investors and the other Class members. As institutional investors with a substantial financial interest in the litigation, the Institutional Investors have the resources, experience, and incentive to faithfully represent the Class and vigorously prosecute the litigation. *See French*, 2016 WL 7668501, at *3 (an institutional investor's substantial financial stake in the litigation ensured it had the incentive to vigorously prosecute the class claims); *Fannie Mae*, 357 F. Supp. 2d at 1035 (appointing group of two "well-grounded and sophisticated institutional investors that can commit substantial resources to this litigation").

The Institutional Investors have further demonstrated their adequacy through their selection of Entwistle & Cappucci and Saxena White as proposed Lead Counsel for the Class. As discussed below, *see infra* Section III, Entwistle & Cappucci and Saxena White are highly qualified and experienced in the area of securities class action litigation and have repeatedly

demonstrated their ability to effectively prosecute complex securities class actions and other forms of shareholder litigation. Accordingly, the Institutional Investors satisfy the adequacy requirement.

### D. The Institutional Investors Are Precisely The Type Of Lead Plaintiff Envisioned By The PSLRA

The Institutional Investors—which include five institutional investors consisting of the four Water Island Funds and Chicago Capital—also satisfy the PSLRA's goal of encouraging institutional investors to "take the reins" in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 755 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions"); *see also Fannie Mae*, 357 F. Supp. 2d at 1035 (noting the PSLRA's "expressed preference" for institutional investors). The Institutional Investors have the ability, resources, and incentive to vigorously represent the claims of the Class and supervise Class counsel. *See* Stranch Decl., Ex. C ¶ 10. Appointing the Institutional Investors as Lead Plaintiff for the Class would satisfy the PSLRA's aim of having the plaintiff class represented by institutional investors with a significant stake in the outcome of this litigation.

The Institutional Investors also understand the fiduciary duties of a lead plaintiff, are willing to oversee the vigorous prosecution of the Action, and have pledged to "provid[e] testimony at deposition and trial, if necessary." Stranch Decl., Ex. A. In their Joint Declaration, the Institutional Investors detail their backgrounds, including the Water Island Funds' significant relevant experience in selecting and overseeing counsel in securities class actions. Stranch Decl., Ex. C ¶¶ 2-9. The Joint Declaration also explains how and why the Institutional Investors decided to collaborate in this litigation. Specifically, before seeking Lead Plaintiff appointment, the

10

Institutional Investors considered the merits of the claims against Defendants, their losses caused by Defendants' wrongdoing, and their proposed litigation strategy. *See id.* ¶¶ 9-10. In addition to these considerations, the Institutional Investors each independently expressed an interest in seeking to cooperate with like-minded, sophisticated investors in seeking appointment as Lead Plaintiff. *See id.* ¶¶ 10-11.

Recognizing that this litigation will be best guided by institutional investors and principals who lead such investors that are familiar with and/or understand the requirements attendant upon a fiduciary, the Institutional Investors determined to join together to seek appointment as Lead Plaintiff. *See id.* ¶¶ 8-10. Based on the Institutional Investors' understanding that working together would allow for the sharing of experiences and resources, they believed that partnering would add substantial value to the prosecution of this Action and would benefit the Class. *See id.* ¶¶ 8, 11, 17.

As set forth in their Joint Declaration, the Institutional Investors have demonstrated their commitment to working cohesively in the prosecution of this Action. *See id.* ¶¶ 12-16. The Joint Declaration also details the steps that the Institutional Investors have already taken (and will continue to take) to ensure the vigorous prosecution of this Action and to oversee counsel. *See id.* Specifically, before seeking appointment as Lead Plaintiff, representatives from the Institutional Investors convened and participated in a conference call and discussed together, among other things, the strengths of the claims against Defendants and their ability and incentive to vigorously represent the claims of the Class. *See id.* ¶¶ 12-13. The Institutional Investors understand the duties of a Lead Plaintiff pursuant to the PSLRA, including, among other things, the lead plaintiff process and the Institutional Investors' common goals and strategy for the joint prosecution of this litigation. *See id.* The collaboration of the Institutional Investors in this litigation follows their

shared goals and interests in protecting and maximizing the assets of the Institutional Investors and the Class and ensuring the transparency of statements by public companies in connection with corporate events. *See id.* ¶¶ 7, 10.

In sum, the Institutional Investors have demonstrated their willingness, resources, and commitment to working closely with one another to supervise proposed counsel for the Class and obtain the best possible recovery for the Class. Thus, the Class would benefit from the Institutional Investors' leadership of this litigation.

### III. The Court Should Approve The Institutional Investors' Selection Of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *French*, 2016 WL 7668501, at *3. The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(a); *see Fannie Mae*, 357 F. Supp. 2d at 1034 ("'The district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, not the court, the power to select a lawyer for the class'") (quoting *In re Cavanaugh*, 306 F.3d 726, 732 n.11 (9th Cir. 2002)); *SmileDirectClub*, 2020 WL 6479561, at *5 (finding "no reason to disturb [presumptive lead plaintiff's] choice of counsel"). The Institutional Investors respectfully submit that their selection of Entwistle & Cappucci and Saxena White as Lead Counsel for the Class and SJ&G as Local Counsel for the Class should be approved. *See* Stranch Decl., Exs. E (Entwistle & Cappucci firm resume) & F (Saxena White firm resume). Entwistle & Cappucci and Saxena White currently serve together as co-lead counsel in several pending actions: *In re EngageSmart, Inc. Sec. Litig.*, No. 24-cv-1083 (D. Del.), *In re Focus Financial Partners, Inc. Sec. Litig.*, No. 1:23-cv-1466 (D. Del.), *In re Emisphere Technologies, Inc. Sec. Litig.*, No. 2:23-cv-20898 (D.N.J.), and *Water Island Event-Driven Fund v. MaxLinear, Inc.*, No. 3:23-cv-1035 (S.D. Cal.).

12

As reflected in its firm resume, Entwistle & Cappucci possesses extensive experience litigating securities class actions, having successfully prosecuted some of the largest and highest-profile securities class actions in history (*See* Stranch Decl., Ex. E). Entwistle & Cappucci has distinguished itself as one of the nation's premier complex litigation firms, and currently serves as Lead Counsel in numerous high-profile securities class actions pending throughout the country.

Entwistle & Cappucci's recent successes include *In re Alta Mesa Resources, Inc. Securities Litigation*, No. 19-cv-00957 (S.D. Tex.), in which the firm served as court-appointed co-lead counsel on behalf of a class of investors in Alta Mesa Resources, Inc. The *Alta Mesa* case, which asserted claims pursuant to Sections 10(b), 14(a) and 20(a) of the Exchange Act in connection with the downfall of Alta Mesa Resources shortly after it went public through a merger with a Special Purpose Acquisition Company ("SPAC"), is one of the few securities class actions to reach trial in recent years. The $126.3 million settlement, reached after three weeks of jury trial, is the largest recovery ever on behalf of investors in a SPAC.

Additional cases in which Entwistle & Cappucci has served in a leadership capacity and obtained significant recoveries on behalf of the respective classes include:

- *Cobalt International Energy, Inc. Securities Litigation*, 14-cv-3428 (NFA) (S.D. Tex.), in which Entwistle & Cappucci prosecuted federal securities law claims against oil and gas company Cobalt International Energy, Inc. and related defendants. Entwistle & Cappucci served as co-lead counsel and recovered $169.35 million in cash, in addition to $220 million payable from director and officer liability policies that is currently being litigated on behalf of a class of investors;

- *San Antonio Fire & Police Pension Fund v. Dole Food Company, Inc.*, No. 15-cv-1140 (D. Del.), in which Entwistle & Cappucci was appointed co-lead counsel in a securities class action brought on behalf of former investors in Dole Food Company, Inc. The action alleged a fraudulent scheme to artificially depress the price of Dole's common stock and resulted in a $74 million settlement for the class of Dole investors;

13

- *In re Pattern Energy Grp. Inc. Sec. Litig*, No. 20-275-MH-JLH (D. Del.), where Entwistle & Cappucci, co-lead counsel on behalf of investors in a federal action concerning the dissemination of a false and misleading proxy statement in connection with the merger of Pattern Energy and Canada Pension Plan Investment Board, negotiated a $100 million settlement of claims jointly with the plaintiffs in a related action pending in the Delaware Court of Chancery;

- *In re Resideo Technologies, Inc. Securities* Litigation, No. 19-cv-02863 (D. Minn), in which Entwistle & Cappucci served as co-lead counsel on behalf of a class of common stock investors in Resideo Technologies, Inc. After defeating defendants' motion to dismiss the complaint, the firm reached a court-approved settlement of $55 million on behalf of the investor class;

- *In re MF Global Holdings Ltd. Investment Litigation*, No. 1:12-md-2338-VM (S.D.N.Y.), in which Entwistle & Cappucci – appointed co-lead counsel for the worldwide class of commodities investors – worked with the trustee appointed under the Securities Investor Protection Act to recover all $1.6 billion in net equity lost by commodity customers after the collapse of MF Global; and

- *In re: Royal Ahold NV Securities Litigation*, No. 1:03-md-1539-CCB (D. Md.), in which Entwistle & Cappucci served as lead counsel representing the Public Employees' Retirement Association of Colorado as lead plaintiff, recovering a $1.1 billion settlement of the action, representing approximately 40% of estimated provable damages.

Likewise, Saxena White has substantial experience prosecuting securities class action and has achieved significant recoveries on behalf of investors as lead or co-lead counsel in securities class actions and other forms of complex shareholder litigation. *See* Stranch Decl., Ex. F (Saxena White firm resume). Saxena White's track record in securities litigation includes: the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.); the $65 million recovery in *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Cos. Inc.*, No. 18-cv-871 (D. Minn.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-0953 (N.D. Cal.) (pending final approval); the $53.3 million recovery in

14

*Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Retirement System v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.); the $31.9 million recovery in *In re Perrigo Company plc Securities Litigation*, No. 19-cv-70 (S.D.N.Y.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 21-cv-444 (E.D. Va.); the $30 million recovery in *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.); the $28.5 million recovery in *In re FibroGen, Inc. Securities Litigation*, No. 21-cv-2623 (N.D. Cal.); the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (N.D. Ala.); the $28 million recovery in *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-cv-2400 (S.D.N.Y.); the $15.5 million recovery in *City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Credit Suisse Group AG*, No. 17-cv-10014 (S.D.N.Y.); the $11 million recovery in *Keippel v. Health Ins. Innovations, Inc.*, 19-cv-421 (M.D. Fla.); and the $2.75 million recovery in *In re AtriCure, Inc. Securities Litigation*, No. 08-cv-867 (S.D. Ohio).

Moreover, Saxena White achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.). Additionally, Saxena White achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 2:20-cv-04534 (S.D. Ohio). Indeed, Saxena White was selected as Co-Lead Counsel for the *FirstEnergy* matter not only for its "impressive" and

15

Case 3:25-cv-00018    Document 28    Filed 03/04/25    Page 18 of 24 PageID #: 412

"considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 20-cv-4534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020). Saxena White would staff this litigation with a diverse team of qualified and capable attorneys that reflects the diversity of the Class.

Moreover, the Institutional Investors have selected SJ&G to serve as Liaison Counsel for the Class. SJ&G has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level. *See* Stranch Decl., Ex. G (SJ&G Firm resume). For example, founding partner Gerard Stranch was the lead trial attorney and managed over 20 attorneys plus paralegals and clerks for the Sullivan Baby Doe opioids case against Purdue Pharmaceuticals, Mallinckrodt, Endo Health Solutions and Endo Pharmaceuticals, Inc. (*Staubus v. Purdue Pharma LP*, No. C41916-C (Tenn. Cir. Ct., Sull. Cnty.)), which resulted in two bankruptcies that included negotiated multi-billion-dollar national settlement deals for Purdue Pharma and Mallinckrodt, and a default judgment on liability against Endo for repeated discovery violations. The remaining claims against Endo in the landmark case settled as jury selection was beginning for $35 million, the largest per capita opioid recovery against Endo by multiple orders of magnitude.[2] In sum, given its history with securities class actions in this District, SJ&G will capably serve the Class.

Entwistle & Cappucci, Saxena White, and SJ&G have the skill, knowledge, and experience that will enable the Institutional Investors to prosecute this action effectively and expeditiously. Thus, the Court may be assured by appointing the Institutional Investors as Lead Plaintiff and

---

[2] For this work, Mr. Stranch and his opioid litigation team were honored as the "Tennessee Trial Lawyer of the Year" by the Tennessee Trial Lawyers Association.

approving their selection of Lead Counsel and Liaison Counsel that the Class will receive the highest caliber of representation. Accordingly, the Court should approve the Institutional Investors' selection of Entwistle & Cappucci and Saxena White to serve as Lead Counsel and SJ&G to serve as Liaison Counsel for the Class.

## CONCLUSION

For the reasons discussed above, the Institutional Investors respectfully request that the Court: (1) appoint them as Lead Plaintiff; (2) approve their selection of Entwistle & Cappucci and Saxena White as Lead Counsel and SJ&G as Liaison Counsel for the Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: March 4, 2025

Respectfully submitted,

**STRANCH, JENNINGS & GARVEY PLLC**

By: */s/ J. Gerard Stranch IV*
J. Gerard Stranch IV, BPR 23045
The Freedom Center
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com

*Liaison Counsel for Proposed Lead Plaintiff the Institutional Investors and Proposed Liaison Counsel for the Class*

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice* forthcoming)
Robert N. Cappucci (*pro hac vice* forthcoming)
Brendan J. Brodeur (*pro hac vice* forthcoming)
230 Park Avenue, 3rd Floor
New York, NY 10169
Tel.: (212) 894-7200
Fax: (212) 894-7272

vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
bbrodeur@entwistle-law.com

-and-

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice* forthcoming)
Callie D. Crispin (*pro hac vice* forthcoming)
500 West 2nd Street, Suite 1900
Austin, TX 78701
Tel.: (512) 710-5960
Fax: (212) 894-7278
aentwistle@entwistle-law.com
ccrispin@entwistle-law.com

**SAXENA WHITE P.A.**
David J. Schwartz (*pro hac vice* forthcoming)
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
dschwartz@saxenawhite.com
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the Institutional Investors and Proposed Lead Counsel for the Class*

18

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 4, 2025, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all

registered users, as follows:

J. Alexander Hood , II
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
212-661-1100
Email: ahood@pomlaw.com

Jeremy A. Lieberman
Pomerantz LLP (NY Office)
600 Third Avenue
20th Floor
New York, NY 10016
212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com

Joshua E. Fruchter
Wohl & Fruchter LLP
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
(845) 290-6818
Email: jfruchter@wohlfruchter.com

Paul Kent Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200
P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: pknashlaw@aol.com

Robert P. Bramlett
Bramlett Law Offices
40 Burton Hills Blvd.
Suite 200

P O Box 150734
Nashville, TN 37215
(615) 248-2828
Fax: (615) 254-4116
Email: robert@bramlettlawoffices.com

James A. Holifield, Jr.
Holifield & Janich PLLC
11907 Kingston Pike
Suite 201
Knoxville, TN 37934
865-566-0115
Fax: 865-566-0119
Email: aholifield@holifieldlaw.com

Adam M. Apton
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, New York 10004
Tel. (212) 363-7500
Fax: (212) 363-7500
Email: apton@zlk.com

Christopher R. Fredmonski
Skadden, Arps, Slate, Meagher & Flom LLP
(New York)
One Manhattan West
New York, NY 10001
212-735-3275
Email: christopher.fredmonski@skadden.com

Christopher E. Thorsen
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC (Nash)
1600 West End Avenue
Suite 2000
Nashville, TN 37203
(615) 244-2582
Email: cthorsen@bakerdonelson.com

Jeffrey S. Geier
Skadden, Arps, Slate, Meagher & Flom LLP
(New York)
One Manhattan West
New York, NY 10001
212-735-3806

20

Email: jeffrey.geier@skadden.com

Jenness E. Parker
Skadden, Arps, Slate, Meagher & Flom, LLP
One Rodney Square
P O Box 636
Wilmington, DE 19899-0636
302-651-3183
Email: jenness.parker@skadden.com

Susan L. Saltzstein
Skadden, Arps, Slate, Meagher & Flom LLP
(New York)
One Manhattan West
New York, NY 10001
212-735-3000
Email: susan.saltzstein@skadden.com

/s/ J. Gerard Stranch IV
J. Gerard Stranch IV

21