**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| IN RE REVANCE THERAPEUTICS, INC. SECURITIES LITIGATION | C.A. No. 3:25-cv-0018-EJR<br><br>District Judge Eli J. Richardson<br>Mag. Judge Jeffrey S. Frensley |
| --- | --- |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Revance Therapeutics, Inc., Mark J. Foley, and Tobin C. Schilke respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss in support of their Motion to Dismiss (ECF No. 51). Filed concurrently with this Memorandum of Law is a Declaration of Jordan D. Peterson in Support of Defendants' Motion to Dismiss (ECF No. 53), attaching all exhibits referenced herein.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ..................................................................................................3

A. Revance's Business and Its Distribution Agreement with Teoxane. ..........3

B. Revance Describes Its Quarterly Performances in February, May, and August 2024..........................................................................4

C. Revance Announces a Planned Merger with Crown. ................................5

D. Teoxane Sends Revance a Notice of Alleged Contract Breaches. .............5

E. The Tender Offer Is Extended While Revance Negotiates with Teoxane and Crown....................................................................6

F. Revance Resolves the Dispute with Teoxane. ..........................................7

G. Revance and Crown Reach an Agreement on Amended Merger Terms. ...........................................................................................8

H. Plaintiffs Are Appointed Lead Plaintiffs and File the Operative Complaint...........................................................................................9

ARGUMENT & AUTHORITIES ..........................................................................10

I. Plaintiffs' Claims Are Subject to Exacting Pleading Standards. ..........................10

II. Plaintiffs Fail To Plead an Actionable Misrepresentation or Omission. ...............10

A. The Quarterly Earnings Statements Are Not Actionable. ........................11

1. Plaintiffs Have Not Alleged That Any Statements Were False. .........................................................................12

2. Immaterial Corporate Optimism Is Non-Actionable Puffery. ....................................................................................12

3. Plaintiffs Have Not Alleged an Actionable Omission. .................13

B. Revance's Merger Announcement Is Not Actionable. ............................16

C. Revance Had No Duty To Disclose the Teoxane Breach Notice Sooner Than It Did. .................................................................17

    D. Defendants Made No Actionable Statements Regarding the Tender Offer .......... 19

1. The Extension Announcements Are Not Actionable. .......... 19

2. Plaintiffs Fail To State a Claim Concerning Revance's Q3 Disclosures. .......... 22

III. Plaintiffs Fail To Adequately Allege Scienter. .......... 23

A. Viewed Holistically, Plaintiffs' Scienter Allegations Fail .......... 23

1. Plaintiffs Do Not Plead the Helwig Factors .......... 23

2. Plaintiffs' Theory of Scienter Is Neither Cogent nor Compelling. .......... 24

3. Plaintiffs Do Not Allege Known Falsity. .......... 25

B. Plaintiffs' Boilerplate Scienter Allegations Fail. .......... 27

1. Plaintiffs' "Core Operations" Theory Is Deficient. .......... 27

2. Purported Information Access Does Not Show Scienter. .......... 28

3. Conclusory Motive Allegations Cannot Support Scienter. .......... 29

4. Hindsight Cannot Show Scienter. .......... 29

5. Plaintiffs Cannot Repurpose Alleged Omissions as Evidence of Scienter. .......... 30

C. Non-Fraudulent Inferences of Intent Are More Compelling. .......... 31

IV. Plaintiffs Fail To Plead Loss Causation. .......... 31

V. Plaintiffs Fail To State a "Scheme" Claim. .......... 34

VI. Plaintiffs Fail To State a Section 20(a) Claim. .......... 34

**CONCLUSION .......... 34**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Almost Fam., Inc. Sec. Litig.*,
2012 WL 443461 (W.D. Ky. Feb. 10, 2012) ..... 32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 9

*Ashland, Inc. v. Oppenheimer & Co.*,
648 F.3d 461 (6th Cir. 2011) ..... 30

*In re Bank of Am. Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013) ..... 18

*Benzon v. Morgan Stanley Distribs., Inc.*,
420 F.3d 598 (6th Cir. 2005) ..... 21

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015) ..... 20

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. USB AG*,
752 F.3d 173 (2d Cir. 2014) ..... 13

*In re Comshare Inc. Sec. Litig.*,
183 F.3d 542 (6th Cir. 1999) ..... 29

*D.E. & J Ltd. P'ship v. Conaway*,
284 F. Supp. 2d 719 (E.D. Mich. 2003) ..... 9, 28

*Darby v. Century Bus. Serv., Inc.*,
96 F. App'x 277 (6th Cir. 2004) ..... 29

*In re Diebold Sec. Litig.*,
2008 WL 3927467 (N.D. Ohio Aug. 22, 2008), *aff'd sub nom. Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th Cir. 2009) ..... 24

*Doshi v. Gen. Cable Corp.*,
2015 WL 366644 (E.D. Ky. Jan. 27, 2015), *aff'd*, 823 F.3d 1032 (6th Cir. 2016) ..... 28

*Doshi v. Gen. Cable Corp.*,
386 F. Supp. 3d 815 (E.D. Ky. 2019) ..... 27

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) ..... 24, 30, 34

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ........................................................................................ 1, 10, 31, 33

*In re EveryWare Glob., Inc. Sec. Litig.*,
175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 859 F.3d 325 (6th Cir. 2017) .................................27

*In re Express Scripts Holding Co. Sec. Litig.*,
2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017), *aff'd*, 773 F. App'x 9 (2d Cir. 2019).......................................................................................................................17

*In re Express Scripts Holdings Co. Sec. Litig.*,
773 F. App'x 9 (2d Cir. 2019) ........................................................................... 14, 15

*In re Federal-Mogul Corp. Sec. Litig.*,
166 F. Supp. 2d 559 (E.D. Mich. 2001) ...........................................................................27

*In re Ford Motor Co. Sec. Litig.*,
381 F.3d 563 (6th Cir. 2004) ........................................................................... 12, 13

*Freeburg v. Wolf*,
42 F. App'x 715 (6th Cir. 2002) ...........................................................................17

*Gordon v. Royal Palm Real Est. Inv. Fund I, LLP*,
2020 WL 2836312 (E.D. Mich. May 31, 2020).......................................................34

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) (en banc), *abrogated on other grounds by Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................. 23, 24

*In re Humana Inc. Sec. Litig.*,
2000 U.S. Dist. LEXIS 21671 (W.D. Ky. Nov. 7, 2000), *aff'd sub nom.*, *Freeburg v. Wolf*, 42 F. App'x 715 (6th Cir. 2002) ....................................... 21, 29

*Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*,
583 F.3d 935 (6th Cir. 2009) ...........................................................................*passim*

*JRS Partners, GP v. Leech Tishman Fuscaldo & Lamp, LLC*,
615 F. Supp. 3d 750 (M.D. Tenn. 2022), *aff'd in relevant part*, 2024 WL 2874575 (6th Cir. June 7, 2024) ........................................................... 26, 31

*In re KBC Asset Mgmt. N.V.*,
572 F. App'x 356 (6th Cir. 2014) ........................................................... 32, 33

*In re Keithley Instruments, Inc. Sec. Litig.*,
268 F. Supp. 2d 887 (N.D. Ohio. 2002) ...........................................................9

*Kolominsky v. Root, Inc.*,
100 F.4th 675 (6th Cir. 2024) .......... 19, 20

*Lubbers v. Flagstar Bancorp. Inc.*,
162 F. Supp. 3d 571 (E.D. Mich. 2016) .......... 14, 22

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) .......... 10, 14, 15, 18

*Martin v. GNC Holdings, Inc.*,
2017 WL 3974002 (W.D. Pa. Sept. 8, 2017), *aff'd*, 757 F. App'x 151 (3d Cir. 2018) .......... 33

*Mosaic Fin. Ltd. v. Mut. S'holder Servs., LLC*,
767 F. Supp. 3d 619 (N.D. Ohio 2025) .......... 28

*Nasyrova v. Immunomedics, Inc.*,
2015 WL 382846 (D.N.J. Jan. 28, 2015) .......... 17

*Newtyn Partners LP v. Alliance Data Sys. Corp.*,
2025 WL 872967 (S.D. Ohio Mar. 20, 2025) .......... 17, 30

*Nguyen v. Endologix, Inc.*,
962 F.3d 405 (9th Cir. 2020) .......... 24, 25

*OFI Asset Mgmt. v. Cooper Tire & Rubber*,
834 F.3d 481 (3d Cir. 2016) .......... 21

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) .......... *passim*

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015) .......... 15

*Pittman v. Unum Grp.*,
861 F. App'x 51 (6th Cir. 2021) .......... 25, 27

*Ret. Sys. v. Ernst & Young, LLP*,
622 F.3d 471 (6th Cir. 2010) .......... 16, 30

*Ret. Sys. v. Stryker Corp.*,
865 F. Supp. 2d 811 (W.D. Mich. 2012) .......... 29

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) .......... 30

*Sapssov v. Health Mgmt. Assocs., Inc.*,
22 F. Supp. 3d 1210 (M.D. Fla. 2014), *aff'd*, 608 F. App'x 855 (11th Cir. 2015)....................33

*In re Sofamor Danek Grp., Inc.*,
123 F.3d 394 (6th Cir. 1997)....................13

*Stein v. U.S. Xpress Enters., Inc.*,
2020 WL 3584800 (E.D. Tenn. June 30, 2020)....................27

*Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
83 F.4th 514 (6th Cir. 2023)....................*passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................*passim*

*In re Wash. Prime Grp., Inc. Sec. Litig.*,
2024 WL 1307103 (S.D. Ohio Mar. 27, 2024)....................31

*Zaluski v. United Am. Healthcare Corp.*,
527 F.3d 564 (6th Cir. 2008)....................12, 14, 16

**Statutes**

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*....................*passim*

## PRELIMINARY STATEMENT

This lawsuit is an effort by a group of investment funds to improperly convert the federal securities laws into insurance against a risky trading strategy that did not pan out. But the securities statutes do "not [] provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). Plaintiffs[1] tried to capitalize on the spread between the market price for Revance stock and the premium offered by the announced merger with Crown Laboratories, Inc.—a tender offer at $6.66 per share to be followed by a cash-out merger. This deal price was not guaranteed, and Revance repeatedly cautioned investors that the Crown deal could be subject to delays or modifications, including with respect to the tender offer price. And that is exactly what happened.

After Revance announced the deal with Crown in August 2024, Revance received a notice alleging breach of a distribution agreement from one of its strategic partners, Teoxane S.A.[2] That notice—which simply triggered a cure period and did not terminate the agreement—delayed the Revance-Crown merger as Revance worked to resolve the dispute with Teoxane and discussed with Crown whether and how the merger could proceed. Revance repeatedly disclosed these efforts and related risks, such as the potential for further delays and modified deal terms, including the tender offer price. Revance and Teoxane ultimately resolved their dispute in October 2024 without litigation and without Teoxane terminating the distribution agreement. Revance and Crown later agreed to modify the deal terms in December 2024. The merger closed in February

---

1 Plaintiffs are The Arbitrage Fund, AltShares Merger Arbitrage ETF, AltShares Event-Driven ETF, and Chicago Capital Management, LP. *See* Consol. Class Action Compl. (the "Complaint" or "Compl."), ECF No. 48 ¶¶ 24-25.

2 The timing of Teoxane's breach notice is suspect, as Teoxane later submitted a competing offer to acquire Revance. *See* Ex. X (Jan. 8, 2025 Schedule 14D-9A). All references to "Ex. _" are references to the exhibits to the Declaration of Jordan D. Peterson in Support of Defendants' Motion to Dismiss, submitted concurrently with this Memorandum of Law.

2025, and stockholders were cashed out at $3.65 per share. Apparently disappointed that their speculative trading strategy failed, Plaintiffs now claim "fraud" and ask this Court to relieve them from the consequences of their trades. The Complaint, however, comes nowhere close to satisfying the stringent pleading standards imposed by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

***First***, Plaintiffs fail to plead an actionable misrepresentation or omission. Lacking a clear theory of fraud, Plaintiffs adopt a scattershot approach and assert that dozens of different statements made during the nine-month Class Period were misleading for different reasons. Many of the alleged misrepresentations concern Revance's sales of products under the Teoxane distribution agreement. Yet Plaintiffs do not plead, as they must, particularized facts showing that any of these statements were false when made, and moreover, many are inactionable statements of opinion and non-specific corporate optimism. Instead, Plaintiffs contend that the challenged statements were misleading because Revance failed to disclose that it purportedly was breaching its agreement with Teoxane. But the law is well-settled that Revance had no duty to confess to unadjudicated allegations of wrongdoing. And Plaintiffs utterly fail to show how the alleged omissions rendered any actual statements misleading.

Plaintiffs next hinge their claims on additional omission-based theories—that Revance should have disclosed Teoxane's breach notice sooner than it did, and that Revance should have disclosed a play-by-play of its negotiations with Teoxane and Crown (and predicted the outcome of those negotiations) when Revance announced agreed extensions to the Crown merger. But Revance had no duty to disclose Teoxane's breach notice at all, much less a duty to disclose the details of ongoing contract negotiations about which the outcome was uncertain. And Plaintiffs again fail to show how any affirmative statements were rendered misleading by the purported

omissions. Instead, Plaintiffs argue that Revance's disclosures were misleading in hindsight based on the ultimate outcome. The PSLRA "forbids such alchemy." *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 938 (6th Cir. 2009) ("*ISDC*").

***Second***, Plaintiffs fail to plead any facts supporting the requisite "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). The Complaint's scienter allegations are wholly conclusory and unsupported by particularized facts necessary to show that Defendants made each alleged misrepresentation with the intent to defraud investors, as the PSLRA requires. Plaintiffs also do not offer any cogent theory of malintent, and certainly not one that is "at least as compelling" as any inference of nonfraudulent intent. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

***Third***, Plaintiffs fail to adequately allege loss causation. None of the Plaintiffs' five alleged "corrective disclosures" revealed any "truth" regarding Revance's purported past fraud or contradict any of Revance's prior statements.

***Fourth***, Plaintiffs fail to plead "scheme liability" under Rule 10b-5 and "control person" liability under Section 20(a).

At bottom, each of Plaintiffs' asserted claims fails as a matter of law. Defendants therefore respectfully submit that the Complaint should be dismissed.

## BACKGROUND[3]

### A. Revance's Business and Its Distribution Agreement with Teoxane.

Revance is a pharmaceutical company with a focus on injectable therapeutic and aesthetic

[3] The well-pleaded facts in the Complaint are accepted as true solely for purposes of this motion. *See Tellabs*, 551 U.S. at 322.

products. Compl. ¶¶ 27, 33-34. At all relevant times, Mark Foley and Tobin Schilke (the "Individual Defendants") served as Revance's CEO and CFO, respectively. *Id.* ¶¶ 28-29.

Revance markets and sells Daxxify, an injectable product it developed for years and launched to market in 2023. *Id.* ¶¶ 33, 39. Since 2020, Revance also has marketed and sold RHA filler products under a distribution agreement with Teoxane (the "Teoxane Agreement"). *Id.* ¶ 34. The Teoxane Agreement had an initial term of ten years and required Revance to meet certain minimum purchase commitments, maintain a specified percentage of inventory on hand (*i.e.*, "buffer stock"), expend specified amounts on the marketing and promotion of RHA products, and adhere to certain "brand guidelines." *Id.* ¶¶ 35-37. The Teoxane Agreement provided a 60-day cure period for a party to address any alleged breaches of the agreement, and no party could terminate the agreement before the cure period expired. *Id.* ¶ 60.

**B. Revance Describes Its Quarterly Performances in February, May, and August 2024.**

Through press releases and earnings calls on February 28, May 9, and August 8, 2024, Revance discussed its quarterly financial results and made statements concerning, among other things, its sales of RHA fillers pursuant to the Teoxane Agreement (the "Quarterly Earnings Statements"). *Id.* ¶¶ 43-51. For example, the February 28 press release stated that the "RHA Collection continues to be the fastest-growing filler by market share out of the six brands on the U.S. market." *Id.* ¶ 148. The next quarter, Foley stated on an earnings call that "we continued to grow our filler market share and ended Q1 with a 9.8% share, up from 9.1% in Q4." *Id.* ¶ 152. And the August 8 press release stated that the "RHA Collection continued to outpace the competition against the backdrop of a soft filler market." *Id.* ¶ 160. Defendants attributed the RHA Collection's performance to, among other things, "deeper and broader accounts penetration," the "commercial team's ability to execute," and "the quality of the product." *Id.* ¶¶ 148, 152-53, 156, 160.

### C. Revance Announces a Planned Merger with Crown.

On August 12, 2024, Revance announced that it had entered into a merger agreement with Crown (the "Merger Agreement"), pursuant to which Crown would commence a tender offer to purchase all outstanding shares of Revance's common stock a price of $6.66 per share (the "Tender Offer"). Ex. H (Aug. 12, 2024 Form 8-K).[4] Revance "expect[ed]" the Tender Offer to commence on August 30, 2024 ("unless extended in accordance with the terms" of the Merger Agreement), and close before the end of 2024. *Id*. The Form 8-K cautioned that statements other than historical facts (*e.g.*, what the company "expects") are forward-looking and that "[a]ctual results could differ… including… the expected timing of the [Tender] Offer and the Merger, the possibility that the Merger will not be completed, … [and] the occurrence of any event, change or other circumstances that could give rise to the termination of the Merger Agreement." *Id*.

### D. Teoxane Sends Revance a Notice of Alleged Contract Breaches.

Four days after the merger announcement, Teoxane sent Revance a notice to remedy alleged breaches of the Teoxane Agreement (the "Breach Notice"). Compl. ¶ 61. The notice asserted violations of the provisions of the Teoxane Agreement concerning "maximum levels of buffer stock and required efforts to promote and sell Teoxane products," both curable breaches (if valid allegations). Ex. K (Sept. 23, 2024 Form 8-K). Revance "denie[d] the alleged material breaches asserted in the notice" and stated that it "intend[ed] to defend itself vigorously." *Id*. Under the Teoxane Agreement, Revance had 60 days, or until October 15, 2024, to cure or otherwise

---

4 Plaintiffs base their claims on Revance's public filings, including the August 12, 2024 Form 8-K. These public filings are incorporated by reference into the Complaint. Fed. R. Civ. P. 10(c). The Court can consider the full contents of any of these filings—whether referenced explicitly or not in the Complaint—on a Rule 12(b)(6) motion. *Tellabs*, 551 U.S. 308 at 322.

resolve the issues identified in the Breach Notice before Teoxane could attempt to exercise any purported right to terminate the agreement. Compl. ¶ 61.

**E. The Tender Offer Is Extended While Revance Negotiates with Teoxane and Crown.**

Following its receipt of the Breach Notice, Revance attempted to negotiate a resolution with Teoxane. Compl. ¶ 62. Revance also communicated regularly with Crown about the Breach Notice and included Crown in tri-party meetings with Teoxane. *Id.* In light of these ongoing discussions, Revance and Crown agreed to extend the deadline for Crown to commence the Tender Offer "to September 13, 2024 or such other date as may be agreed," and Revance disclosed the agreed extension on August 28, 2024. Ex. I (Aug. 28, 2024 Form 8-K).

Discussions between Revance, Teoxane, and Crown continued past September 13, and the Tender Offer did not commence on that date. Compl. ¶ 66. On September 23, 2024, Revance disclosed that it had received the Breach Notice and that it was engaged in "ongoing discussions" with Teoxane and Crown regarding the Breach Notice and the Merger Agreement. Ex. K (Sept. 23, 2024 Form 8-K). Revance stated that it "denie[d] the alleged material breaches asserted in the notice," and disclosed that its discussions with Teoxane "could result in various outcomes," including the parties "agreeing to modify certain terms of the" Teoxane Agreement or "Teoxane seeking to terminate the [Teoxane Agreement]." *Id.* Revance also disclosed that it had agreed with Crown to extend the deadline for Crown to commence the Tender Offer "to October 4, 2024 or such other date as may be mutually agreed to" by the parties. *Id.* Revance cautioned that its "ongoing discussions with Teoxane and [Crown] could result in delays to the consummation of the" Tender Offer or in either party "seeking remedies" under the Merger Agreement. *Id.*

Discussions between Revance and Teoxane continued into October, and Revance disclosed additional agreed extensions of Crown's deadline to commence the Tender Offer. Compl. ¶¶ 71, 73. Each time, Revance cautioned investors that discussions were ongoing and could result in

delays or disputes. *See, e.g.*, Ex. L (Oct. 4, 2024 Form 8-K); Ex. M (Oct. 18, 2024 Form 8-K). And on October 18, 2024, Revance further cautioned investors that its "ongoing discussions with Teoxane and [Crown] could result" in Crown "seeking remedies in accordance with, and modifications to" the Merger Agreement. Ex. M (Oct. 18, 2024 Form 8-K).

**F. Revance Resolves the Dispute with Teoxane.**

On October 28, 2024, Revance announced that it had resolved the dispute with Teoxane. Compl. ¶ 89. The agreed resolution involved: (i) amending the Teoxane Agreement to include revised brand guidelines and medical training materials, updated buffer stock methodology, and new minimum purchase commitments; (ii) authorizing Teoxane to be the exclusive distributor of Daxxify in New Zealand and Australia; and (iii) entering into a settlement and release agreement wherein Teoxane "expressly acknowledged that there are no items currently in dispute" (collectively, the "Amended Teoxane Agreements"). Ex. N (Oct. 28, 2024 Form 8-K).

At the same time, Revance disclosed that "in light of [its] entry into the [Amended] Teoxane Agreements," it had agreed with Crown to extend the deadline for Crown to commence the Tender Offer "to November 1, 2024 or such other date as may be mutually agreed." *Id.* Revance cautioned that its "ongoing discussions with [Crown] could result in further delays" or in Crown "seeking remedies in accordance with, and modifications to, the terms of the Merger Agreement, including offer price." *Id.* On November 1, 2024, Revance announced another agreed extension to "November 12, 2024 or such other date as may be mutually agreed" and repeated its warning that Crown could "seek[] remedies in accordance with, and modifications to, the terms of the Merger Agreement, including offer price." Ex. O (Nov. 1, 2024 Form 8-K).

Later that week, Revance filed its Form 10-Q summarizing its third quarter results. Ex. P (Nov. 7, 2024 Form 10-Q at 9, 32). Consistent with the nature of a quarterly update, Revance disclosed in its accompanying press release that it had entered into the Merger Agreement with

Crown on August 11, 2024, and that the agreement required Crown to commence the Tender Offer at $6.66 per share. *Id.* The Form 10-Q also included a bolded risk disclosure about the Crown deal:

> **There are uncertainties as to the timing of the Offer and the Merger, including the risk that the Offer or the Merger may not be completed in a timely manner or at all, or may be completed on modified terms that are less favorable.**

*Id*. Revance further disclosed that Crown had "expressed dissatisfaction with [Revance's] entry into the [Amended] Teoxane Agreements and the terms of such agreements." *Id.* Revance warned that "[w]hile the parties continue their discussions, Crown may assert claims related to the Merger Agreement or take other action in connection with the Company's entry into the [Amended] Teoxane Agreements, including by seeking to unilaterally terminate the Merger Agreement or to otherwise reach a settlement." *Id.* Revance again cautioned that "[t]here could also be further delays" or Crown could seek "modifications to[] the terms of the Merger Agreement, including Offer Price." *Id.*

**G. Revance and Crown Reach an Agreement on Amended Merger Terms.**

Revance announced additional agreed extensions to Crown's deadline to commence the Tender Offer six more times between November 7 and December 5, 2024. Compl. ¶¶ 102-08. Each time Revance cautioned that its "ongoing discussions with [Crown] could result in further delays," or in either party "seeking remedies in accordance with, and modifications to, the terms of the Merger Agreement, including offer price." Exs. Q-V (Form 8-Ks).

On December 9, 2024, Revance announced that it reached an agreement with Crown and entered an Amended and Restated Agreement and Plan of Merger. *See* Ex. W (Dec. 9, 2024 Form 8-K). Under the amended agreement, Crown would commence the Tender Offer at $3.10 per share. *Id.* The Tender Offer commenced on December 12, 2024. Ex. Z (Feb. 6, 2025 Form 8-K).

On January 8, 2025, Revance disclosed that it received an unsolicited offer from Teoxane

to acquire Revance for $3.60 per share. Ex. X (Jan. 8, 2025 Schedule 14D-9A). On January 21, 2025, Revance announced it had reached an agreement with Crown to increase the Tender Offer price to $3.65 per share. Ex. Y (Jan. 21, 2025 Form 8-K). That price was higher than Revance's stock price in the seven trading days prior to the original announcement of the merger on August 12, 2024. *See* Ex. BB (listing closing share prices all below $3.65 from August 1-9, 2024).[5] The Tender Offer expired on February 4, 2025. Ex. Z (Feb. 6, 2025 Form 8-K). The merger closed two days later, and Revance's shareholders were cashed out at $3.65 per share. *Id.*

**H. Plaintiffs Are Appointed Lead Plaintiffs and File the Operative Complaint.**

Plaintiffs are five private investment funds. Compl. ¶¶ 24-26; *see also* ECF No. 29-1 at 2. Plaintiffs first purchased shares of Revance common stock in August 2024, after Revance announced the planned merger with Crown, and purchased additional shares in September, October, November, and December 2024—including after Revance disclosed the Breach Notice, after the Teoxane dispute had been resolved, and after Revance announced extensions to the deadline for Crown to commence the tender offer. ECF No. 29-1 at 4, 7.

After being appointed lead plaintiffs, Plaintiffs filed the Complaint on June 18, 2025, on behalf of a putative class of "all purchases [sic] of Revance securities during the period of February 29, 2024 through December 6, 2024, inclusive." Compl. ¶ 213. Plaintiffs allege that they were defrauded by Defendants' Class Period statements and omissions. *Id.* ¶ 145. Plaintiffs assert claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5.

---

5 The Court may consider historical stock prices on a motion to dismiss. *See, e.g.*, *D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003); *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 896 n.6 (N.D. Ohio. 2002).

## ARGUMENT & AUTHORITIES

### I. Plaintiffs' Claims Are Subject to Exacting Pleading Standards.

Ordinarily, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its fact. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). But "[t]he PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure [] impose a heightened pleading standard on [Plaintiffs'] securities-fraud claims." *Teamsters Local 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524 (6th Cir. 2023); *see also Tellabs*, 551 U.S. at 313 (describing the governing pleading standards as "exacting").

"To satisfy Rule 9(b), a plaintiff's complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Teamsters*, 83 F.4th at 524-25 (quotations and citation omitted). "Bolstering [Rule 9(b)'s] rule of specificity, the PSLRA imposes further pleading requirements," *ISDC*, 583 F.3d at 943, which the Sixth Circuit has described as an "elephant-sized boulder blocking [securities claims]." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014). "The PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs*, 551 U.S. at 313; *see also* 15 U.S.C. § 78u-4(b)(2).

Under this heavy pleading burden, Plaintiffs must adequately allege six elements: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Dura Pharms.*, 544 U.S. at 341-42. Here, Plaintiffs have failed to plead a material misrepresentation or omission, scienter, and loss causation.

### II. Plaintiffs Fail To Plead an Actionable Misrepresentation or Omission.

First, Plaintiffs' claims fail because they do not plead any actionable misrepresentation or

omission. "A misrepresentation is an affirmative statement that is misleading or false." *Omnicare*, 769 F.3d at 470. "Pure omissions," or failures to disclose information, "are not actionable." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 266 (2024). Instead, to plead an actionable omission, a plaintiff must identify a prior disclosure that is "inaccurate, incomplete, or misleading" without the omitted information. *Omnicare*, 769 F.3d at 471. If the alleged omission concerns so-called "soft information" (*e.g.*, "predictions and matters of opinion"), the omission is actionable "only if it is virtually as certain as hard facts ***and*** contradicts the prior statement." *Id.* at 470-71 (emphasis added). "Hard" facts are those that are "objectively verifiable," such as "historical information." *Id.* at 470.

Here, Plaintiffs do not allege a single false statement. Instead, they contend that all of the challenged Class Period statements were misleading by omission—specifically, Revance's failure to disclose that it was purportedly breaching the Teoxane Agreement and the "negative implications thereof" for the Crown deal. Compl. ¶ 1; *see also id.* ¶¶ 147-93. Each of the alleged omissions concerns quintessential *soft* information for which there is no disclosure duty, and Plaintiffs fail to identify any disclosure that is misleading by virtue of the alleged omissions.[6]

**A. The Quarterly Earnings Statements Are Not Actionable.**

Plaintiffs first allege that Revance misled investors in the Quarterly Earnings Statements—issued before Revance announced the Merger Agreement with Crown—in which Defendants discussed the performance of its RHA Collection of fillers sold under the Teoxane Agreement. Compl. ¶¶ 147-62. These statements allegedly were misleading because Defendants did not disclose that the sales growth was purportedly attributable to "improper sales and marketing

[6] Because Plaintiffs challenge dozens of statements, the attached Appendix (Ex. A) lists each alleged misrepresentation and identifies the applicable argument sections for why the challenged statement is not actionable.

practices that ran afoul of FDA regulations and breached the Teoxane Agreement." Compl. ¶ 150; *see* ¶¶ 154-55, 157-58, 161-62. None of the Quarterly Earnings Statements supports a viable claim.

**1. Plaintiffs Have Not Alleged That Any Statements Were False.**

Plaintiffs do not plead any particularized facts demonstrating that any of the Quarterly Earnings Statements were false when made. *See Omnicare,* 769 F.3d at 478 (plaintiffs must "allege[] facts that, if proven, would support findings that these statements … were objectively false or misleading"). For example, Plaintiffs do not allege any facts showing that the RHA Collection was not "the fastest-growing filler by market share out of the six brands on the U.S. market" or "sitting at about 10% market share" at the end of 2023. Compl. ¶ 148. Nor do Plaintiffs allege facts showing that Revance did not "continue[] to grow [its] filler market share" in the first quarter or 2024 or "end[] Q1 with a 9.8% share, up from 9.1% in Q4." *Id.* ¶ 152. Their failure to allege facts showing these statements to be false is dispositive. *See Omnicare*, 769 F.3d at 478.

**2. Immaterial Corporate Optimism Is Non-Actionable Puffery.**

In addition, most of the Quarterly Earnings Statements are "generalized statements of optimism that are not capable of objective verification" and thus are not actionable. *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004); *ISDC*, 583 F.3d at 943. For example, Plaintiffs challenge statements that the RHA Collection contributed to a "blockbuster opportunity in aesthetics," had "healthy share growth," and provided a "stable foundation." Compl. ¶¶ 148, 153, 160. "Such statements are either mere corporate puffery or hyperbole that a reasonable investor would not view as significantly changing the general gist of available information, and thus, are not material, even if they were misleading." *Ford Motor Co.*, 381 F.3d at 570 (statements that Ford makes "quality a top priority" were "mere corporate puffery"); *see also Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 574 (6th Cir. 2008) (saying brand is "viable" was "immaterial puffery"). The same is true for the characterizations of the "Teoxane partnership" as

"nice" and of Teoxane as "well known" and "highly regarded." Compl. ¶¶ 149, 156. None of these statements is objectively verifiable, and "no reasonable investor could find them important to the total mix of information available." *Ford Motor Co.*, 381 F.3d at 571.

**3. Plaintiffs Have Not Alleged an Actionable Omission.**

Plaintiffs' omissions theory fails too. Plaintiffs do not plead a duty to disclose and do not plead any nexus between the alleged omissions and the actual statements made by the Defendants.

a. ***Defendants Had No Duty To Disclose the Alleged Omissions.***

To start, "[b]efore liability for non-disclosure can attach, the defendant must have violated an affirmative duty of disclosure." *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). Here, there is no duty to disclose "soft" information like alleged contractual breaches or legal violations (*i.e.*, FDA regulations). *ISDC*, 583 F.3d at 945 (no "duty to disclose uncharged, unadjudicated wrongdoing" or "opine about the legality of [its] own actions"); *accord City of Pontiac Policemen's & Firemen's Ret. Sys. v. USB AG*, 752 F.3d 173, 184 (2d Cir. 2014).

*Sofamor Danek* is instructive. There, the Sixth Circuit held that a company had no duty to disclose that it was purportedly "engaging in illegal promotion of its products" because the "legality" of its conduct "was a matter of opinion" that "simply d[id] not come with[] [a] duty of disclosure." *Sofamor*, 123 F.3d at 401-02. Dispositive here is that Plaintiffs do not (and cannot) allege that Revance ***both*** opined that its promotional and sales activities were legal ***and*** failed to disclose a contradictory "hard fact," such as the initiation of a regulatory action during the Class Period.[7] *See id.* at 402; *see also ISDC*, 583 F.3d at 945 (company had no duty to disclose purported

[7] Plaintiffs do not allege, for example, that the FDA questioned Revance's sales practices; investigated, warned, or sanctioned Revance; or charged Revance with any violations.

"involvement in 'illegal' activities" despite making "several general statements that it complied with state law and regulations").

Also meritless is Plaintiffs' contention that Revance should have disclosed that it was *purportedly* breaching the Teoxane Agreement. *Zaluski* is on point. There, the plaintiffs alleged that a company failed to disclose that certain payments it made violated the company's contract with the State of Tennessee and gave the State a right to terminate the contract. *Zaluski*, 527 F.3d at 567. The Sixth Circuit, affirming dismissal of the case, concluded that the alleged omission concerned "the potential consequences of the[] payments" (*i.e.*, a contractual breach), and not the payments themselves, and held that "these consequences are the type of predictions and soft information that do not give rise to a duty of disclosure." *Id.* at 574-75. The same is true here. Revance had no duty to opine that its promotional and sales activities purportedly breached the Teoxane Agreement or predict that Teoxane might later send the Breach Notice. *See id.*

b. ***The Alleged Omissions Lack Any Nexus to the Quarterly Earnings Statements.***

Plaintiffs have also failed to identify any Quarterly Earnings Statements that are contradicted by the purported omissions. *See Omnicare*, 769 F.3d at 471 (omissions must be "virtually as certain as hard facts" and "contradict[] the prior statement"). Put differently, "there must be a relationship between the omission and the statement itself." *Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 580 (E.D. Mich. 2016) (citation omitted). This is so because an omission must be "necessary to make the statements made not misleading." *Macquarie Infrastructure Corp.*, 601 U.S. at 264 (cleaned up).

The Second Circuit's decision in *Express Scripts* is instructive. *See In re Express Scripts Holdings Co. Sec. Litig.*, 773 F. App'x 9 (2d Cir. 2019). There, the defendant company had been served with two breach notices from its key contractual partner. *See id.* at 13. After receiving the breach notices, the company still publicly characterized the contractual relationship as "great,"

"very, very solid," and "business as usual." *Id*. The Second Circuit held that "no reasonable investor would find these statements false, misleading, or incomplete" because the parties were engaged in ongoing negotiations and the company had "made a number of statements acknowledging the possibility that negotiations could fail." *Id.*

This case presents an even stronger basis for dismissal than did *Express Scripts* because Revance received the Breach Notice from Teoxane ***after*** it made the Quarterly Earnings Statements. *Compare* Compl. ¶ 57, *with id.* ¶¶ 147-49, 152-53, 156, 160. Moreover, Plaintiffs do not (and cannot) connect the dots between the alleged omissions and the Quarterly Earnings Statements. For example, Plaintiffs assert that Revance misleadingly stated that the RHA Collection was the "fastest growing filler" by omitting that its sales practices purportedly "ran afoul of FDA regulations and breached the Teoxane Agreement." Compl. ¶ 150. But the growth rate of the RHA Collection is in no way qualified by Revance's contractual or legal compliance. *See Macquarie*, 601 U.S. at 263 (omissions must concern "critical qualifying information" for actual representations). Likewise, there is no relationship whatsoever between Foley's description of Teoxane as "well known" and "experience[d]" and Plaintiffs' assertions that Teoxane was purportedly "livid with Revance." Compl. ¶¶ 149, 151, 156, 158.

There also is no nexus between the alleged omissions and the Individual Defendants' opinions that the performance of the RHA Collection was attributable to the "quality of the products" and the "commercial team's ability to execute." Compl. ¶¶ 148, 152-53, 156, 160. Furthermore, these opinions are by definition "soft information," meaning Plaintiffs must plead facts showing that the statements were "made with knowledge of [their] falsity." *Omnicare*, 769 F.3d at 470. This is "no small task" for Plaintiffs, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015), and, as shown below (Part III.A.3), Plaintiffs have

failed to plead that Defendants' shared these opinions with actual knowledge that they were false.[8]

### B. Revance's Merger Announcement Is Not Actionable.

Revance announced its entry into the Merger Agreement on August 12, 2024, and attached a copy of the Merger Agreement to the Form 8-K announcing the merger. Compl. ¶ 163. In the Merger Agreement, Revance represented to Crown that it was not in breach or default of any "Material Contract" and knew of no circumstances that would constitute a breach or default. *Id.* ¶ 164. This statement is not actionable. Plaintiffs concede that this representation to Crown predated Revance's receipt of the Breach Notice by four days. *See id.* ¶ 165. A company has "no duty to disclose what it ha[s] not yet discovered or concluded." *Zaluski*, 527 F.3d at 575. And as shown below (Part III.A.3), Plaintiffs have not pleaded particularized facts showing that Revance made this representation with "actual knowledge that it was false." *ISDC*, 583 U.S. at 943.[9]

Plaintiffs also assert that the announcement was misleading because Defendants purportedly "knew of serious undisclosed risks that the Tender Offer would be delayed or renegotiated." Compl. ¶ 167-68. But Plaintiffs do not plead any particularized facts showing that the Tender Offer would be delayed or renegotiated as of the date it was announced, much less facts showing that Defendants had preordained that it would. Plaintiffs cannot state a claim under the PSLRA based on hindsight. *See La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 484-85 (6th Cir. 2010) (dismissing "classic fraud by hindsight case" because "the fact that the statements later turned out to be false is irrelevant"). Moreover, the merger announcement

---

8 The Sixth Circuit has held that the "actual knowledge" component for challenging alleged misrepresentations concerning "soft information" should be evaluated as part of the scienter analysis rather than the misrepresentation analysis. *See Omnicare*, 769 F.3d at 470-71.

9 For similar reasons, Plaintiffs fail to plead facts showing that when Revance disclosed the Breach Notice on September 23, 2024, it misrepresented that it "d[id] not believe that the asserted allegations constitute[d] material breaches under the terms of the [Teoxane] Agreement." Compl. ¶ 173.

expressly disclosed the risks that Plaintiffs now contend were concealed, including that "the expected timing of the [Tender] Offer" could change, "the possibility that the Merger will not be completed," and that "the occurrence of any event, change or other circumstance" could lead to different outcomes than anticipated. Ex. H (Aug. 12, 2024 Form 8-K).

### C. Revance Had No Duty To Disclose the Teoxane Breach Notice Sooner Than It Did.

Plaintiffs next allege that Revance misled investors by failing to disclose the Breach Notice immediately upon receiving it. Compl. ¶¶ 8, 61-65, 68. Plaintiffs are wrong. There is "no legal duty" to "update the public on the status" of negotiations with respect to a material contract "until the ***outcome*** of the negotiations [becomes] as certain as hard facts." *Freeburg v. Wolf*, 42 F. App'x 715, 716 (6th Cir. 2002). Courts consistently view a party's receipt of a contractual breach notice as a component of contractual negotiations for which there is no disclosure duty. *See, e.g.*, *In re Express Scripts Holding Co. Sec. Litig.*, 2017 WL 3278930, at *12 (S.D.N.Y. Aug. 1, 2017) (no duty to disclose receipt of "two formal notices of breach of contract" during negotiation period), *aff'd*, 773 F. App'x 9 (2d Cir. 2019); *Nasyrova v. Immunomedics, Inc.*, 2015 WL 382846, at *6 (D.N.J. Jan. 28, 2015) (no duty to "disclose disagreements in the course of a contract's performance," including receipt of a "notice of breach"). Indeed, Plaintiffs admit that the Breach Notice triggered a 60-day cure period, during which time Revance and Teoxane could, and in fact did, reach a negotiated resolution. Compl. ¶¶ 61, 68, 71, 89. For this reason, courts have consistently held that a ***termination notice*** is required to trigger a disclosure duty. *See, e.g.*, *Newtyn Partners LP v. Alliance Data Sys. Corp.*, 2025 WL 872967, at *13-14 & n.5 (S.D. Ohio Mar. 20, 2025) (no duty to disclose without "an express, formal notice of termination"); *Immunomedics, Inc.*, 2015 WL 382846, at *6-8 (same). Plaintiffs concede that Teoxane could not try to terminate the Teoxane Agreement until October 15, 2024, at the earliest, foreclosing any omission claim on

the premise that Revance should have immediately disclosed the Breach Notice. Compl. ¶ 61.[10]

Plaintiffs' claims also fail for a second, independent reason: Plaintiffs have not identified an actual statement that was rendered false or misleading by the omission. *See Omnicare*, 769 F.3d at 471 (omission actionable only where there is *both* a duty to disclose *and* the omission would render an affirmative statement false or misleading). Plaintiffs challenge only two statements that Revance made between receiving the Breach Notice on August 16 and disclosing the Breach Notice on September 23: (1) the August 28 announcement that Crown's deadline to commence the Tender Offer was extended, and (2) disclosure of Foley's memorandum to Revance employees announcing the establishment of the "Integration Management Office." Compl. ¶¶ 169, 171. Plaintiffs do not contend that either of these statements was objectively false. And neither statement mentions the Teoxane Agreement, so they cannot be misleading by omission. *See Macquarie*, 601 U.S. at 264-65. Plaintiffs' contention that these statements were rendered misleading by the failure to "disclos[e] the significant risk that the Tender Offer would be cancelled, significantly delayed, or completely renegotiated," Compl. ¶¶ 170, 172, likewise fails. Revance already had disclosed the risks related to the expected timing of the Tender Offer and the merger, Ex. H (Aug. 12, 2024 Form 8-K), and it reiterated those risks in the August 28 extension announcement. Ex. I (Aug. 28, 2024 Form 8-K). "Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *In re Bank of Am. Sec. Litig.*, 980 F. Supp. 2d 564, 577 (S.D.N.Y. 2013).

---

[10] The case law is consistent with the instructions to Items 1.01 and 1.02 of Form 8-K, which require disclosure of only an issuer's entry into or termination of a material definitive agreement. Ex. AA (Form 8-K Instructions at 9). The instructions are clear that "[n]o disclosure is required solely by reason of [Item 1.02 to Form 8-K] during negotiations or discussions regarding termination of a material definitive agreement ***unless and until the agreement has been terminated***." *Id.*

### D. Defendants Made No Actionable Statements Regarding the Tender Offer.

Finally, Plaintiffs allege that Revance misled investors about the true state of affairs concerning the Tender Offer through a series of announcements accurately reporting that the Tender Offer had been extended and its accurate summary of events that occurred in the third quarter of 2024. *See* Compl. ¶¶ 181, 184, 18, 189-90, 192. These contentions similarly fail.

#### 1. The Extension Announcements Are Not Actionable.

Plaintiffs allege that each of the announced agreed extensions of Crown's deadline to commence the Tender Offer after Revance disclosed the Breach Notice was misleading because the announcements purportedly "downplay[ed] the serious risks facing the Tender Offer" and gave false impressions that the Tender Offer would commence shortly. *E.g.*, Compl. ¶ 186. Plaintiffs' claims require ignoring both the actual disclosures and the context in which they were made, and fail for those reasons. *See Kolominsky v. Root, Inc.*, 100 F.4th 675, 688 (6th Cir. 2024) (stating the "unremarkable proposition that statements must be analyzed in context").

To start, Revance never told investors that the Tender Offer absolutely would commence on a certain future date. Starting with the initial merger announcement and the first extension, Revance said only what it *expected* would happen and acknowledged that extensions were possible. *See* Ex. H (Aug. 12, 2024 Form 8-K); *see also* Ex. I (Aug. 28, 2024 Form 8-K) (Tender Offer may commence on "such other date as may be agreed"). Each subsequent announcement acknowledged the possibility of further extensions.

Nor can it be said that Revance concealed the "risks facing the Tender Offer." Compl. ¶ 186. On September 23, 2024, Revance disclosed that it was engaged in "ongoing discussions with Teoxane and [Crown]" concerning the Breach Notice and cautioned that these discussions "could result in delays to the consummation of the [Tender] Offer" or in Crown "seeking remedies in accordance with the terms of the Merger Agreement." Ex. K (Sept. 23, 2024 Form 8-K).

Plaintiffs admit that Revance disclosed that the repeated agreed extensions of Crown's deadline to commence the Tender Offer were "in light of" these discussions. *E.g.*, Compl. ¶ 176. Plaintiffs also admit that after Revance disclosed its entry into the Amended Teoxane Agreements on October 24, 2024, Revance repeatedly disclosed that it was engaged in "ongoing discussions" with Crown "in light of [its] entry into the Teoxane Agreements," and that these discussions "could result in further delays" or Crown seeking "modifications to[] the terms of the Merger Agreement, including offer price." *E.g.*, Compl. ¶¶ 184. 187, 192.

In selectively quoting Revance's November 7, 2024 Form 10-Q, Plaintiffs conspicuously fail to acknowledge the robustness of Revance's risk disclosure concerning the Tender Offer:

> **There are uncertainties as to the timing of the [Tender] Offer and the Merger, including the risk that the Offer or the Merger may not be completed in a timely manner or at all, or may be completed on modified terms or terms that are less favorable.**
>
> … There can be no assurance that the [Tender] Offer and the Merger will be completed in the currently contemplated timeframe, or at all, or on the same terms as originally contemplated by the parties, including at the original Offer Price.... Crown has expressed dissatisfaction with our entry into the Teoxane Agreements and the terms of such agreements. … Crown may… seek[] to unilaterally terminate the Merger Agreement… There could also be further delays to the commencement or consummation of the [Tender] Offer, or in… [Crown] seeking remedies in accordance with, and modifications to, the terms of the Merger Agreement, including Offer Price.

Ex. P (Nov. 7, 2024 Form 10-Q at 48).

Ignoring this context, Plaintiffs contend that statements informing investors that the terms of the Merger Agreement "could" change were misleading because Crown had indicated that it "would" not commence the Tender Offer at the agreed $6.66 offer price (despite that no agreement to revise the price had been reached). Compl. ¶¶ 186, 188, 193. The Sixth Circuit has repeatedly rejected this type of semantic quibbling. *See Kolominsky*, 100 F.4th at 687 (rejecting argument that a risk disclosure is actionable if the risk warned of allegedly "had already occurred"); *Bondali v.*

*Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015) ("[C]autionary statements are 'not actionable to the extent plaintiffs contend that defendants should have disclosed risk factors 'are' affecting financial results rather than 'may' affect financial results.'"); *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 612 (6th Cir. 2005) (rejecting as a "semantic quibble" argument that prospectus was misleading for disclosing that brokers "***may***" receive different compensation when brokers allegedly did earn more).

Insofar as Plaintiffs contend that Revance should have provided real-time updates about its ongoing discussions with Crown, including Crown's purported "repudiation of the $6.66 per share offer," Compl. ¶ 209, Plaintiffs' claims fail as a matter of law for the reasons discussed above. *See* Part II.C. *See also In re Humana Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 21671, at *12 (W.D. Ky. Nov. 7, 2000) (no "duty to update the public on the status of contract negotiations," including that new contract "wasn't going to be as good of a contract as in the past"), *aff'd sub nom.*, *Freeburg v. Wolf*, 42 F. App'x 715 (6th Cir. 2002). The Third Circuit's *OFI* decision is on point. *See OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016). In *OFI*, the court held that a party to a merger agreement had no duty to disclose that the buyer had demanded a purchase-price reduction based on developments that post-dated the merger announcement, which purportedly "placed the consummation of the merger in peril." *Id.* at 504-05. The court reasoned that the plaintiff had failed to allege that any affirmative statement was rendered misleading by the alleged omission of the requested price reduction. *See id.* at 505. The same is true here.[11]

[11] Plaintiffs also assert that Revance's statement that it denied the allegations in the Breach Notice would "defend itself vigorously" was misleading because Revance ultimately entered into the Amended Teoxane Agreements. *E.g.*, Compl. ¶ 173-75. This amounts to another impermissible effort to plead fraud by hindsight, as Plaintiffs allege no facts showing that Revance did not intend to defend itself vigorously. *See* Parts III.A.3, III.B.4. And the Amended Teoxane Agreements do not state that Revance believed it had breached the contract. Ex. N (Oct. 28, 2024 Form 8-K).

### 2. Plaintiffs Fail To State a Claim Concerning Revance's Q3 Disclosures.

Finally, Plaintiffs allege that on November 7, 2024, Revance falsely told investors in its Third Quarter Form 10-Q, a Form 8-K filed the same day, and a related press release that Crown would commence the Tender Offer at $6.66 per share when Revance knew that Crown "would not commence a tender offer 'at a price of $6.66 per share.'" Compl. ¶¶ 189-91. Plaintiffs selectively quote and mischaracterize these documents; the filings and accompanying press release made no promises about the anticipated Tender Offer. Instead, those disclosures simply recapped Revance's third quarter, while simultaneously disclosing the risks that the Tender Offer may not occur or may occur on different terms.

For example, the press release attached to the Form 8-K stated, under the heading "Third Quarter Highlights and Subsequent Updates," that Revance and Crown had entered into the Merger Agreement and delayed the commencement of the Tender Offer:

> During the quarter, Revance and Crown ... announced that they had entered into a merger agreement ... ***Under the terms of the agreement***, ... Crown will commence a tender offer to purchase all of Revance's outstanding shares of common stock, at a price of $6.66 per share, in cash. As a result of discussions between the Company and Teoxane ... regarding an alleged breach of the [Teoxane Agreement], the parties extended the date by which the tender offer must be commenced.

Ex. CC (Nov. 7, 2024 Form 8-K) (emphasis added). It is clear that Revance was describing the terms of the existing agreement entered into during the previous quarter, not representing to shareholders that the deal would go forward at the $6.66 per share offer price. Moreover, the simultaneously filed 10-Q expressly cautioned investors that Revance and Crown could modify the merger terms, "including price," or abandon the merger altogether. Ex. P (Nov. 7, 2024 Form 10-Q). Plaintiffs may "not 'pluck' disclosures out of their context" and challenge "their truth in a vacuum." *Lubbers*, 162 F. Supp. 3d at 578.

## III. Plaintiffs Fail To Adequately Allege Scienter.

Plaintiffs' claims fail for the independent reason that Plaintiffs do not "state with particularity facts giving rise to a ***strong inference*** that the [Defendants] acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A)—*i.e.*, a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319. This requirement is "exacting," *id.* at 313, and "not easily satisfied," *Omnicare*, 769 F.3d at 461. The Court may "allow[] the complaint to go forward 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference.'" *Id.* at 473 (citing *Tellabs*, 551 U.S. at 324).

### A. Viewed Holistically, Plaintiffs' Scienter Allegations Fail.

The Court must consider "all [scienter] allegations holistically," and "on a defendant-by-defendant basis." *Teamsters*, 83 F.4th at 526. "The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Tellabs*, 551 U.S. at 310.

#### 1. Plaintiffs Do Not Plead the *Helwig* Factors

In analyzing scienter, courts in the Sixth Circuit consider "a non-exhaustive list of [nine] factors," often called the "*Helwig* Factors," which are "probative of securities fraud." *Teamsters*, 83 F.4th at 526 (citing *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (en banc), *abrogated on other grounds by Tellabs*, 551 U.S. at 317-18, 322-23).[12] Courts have observed that

[12] The factors are: (1) suspicious insider trading; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. *See Teamsters*, 83 F.4th at 526.

"[t]he more of these factors that are present, the stronger the inference that the defendant [acted] with the requisite state of mind." *Omnicare*, 769 F.3d at 473. Conversely, "the absence of these factors indicates the absence of scienter." *In re Diebold Sec. Litig.*, 2008 WL 3927467, at *7 (N.D. Ohio Aug. 22, 2008), *aff'd sub nom. Konkol v. Diebold, Inc.*, 590 F.3d 390 (6th Cir. 2009).

Here, Plaintiffs attempt to allege ***only one*** of the nine factors, namely, divergence of internal reports and external statements on the same subject. As discussed below, this factor does not support an inference of scienter because Plaintiffs do not plead facts showing that either of the Individual Defendants had actual knowledge of such reports. *See* Part III.A.3. But even adequately pleading one *Helwig* factor (which Plaintiffs do not do) is insufficient to establish a strong inference of scienter. *See Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1041-42 (6th Cir. 2016) (two of nine factors insufficient to support inference of scienter).

**2. Plaintiffs' Theory of Scienter Is Neither Cogent nor Compelling.**

At the outset, the inference of scienter advanced by Plaintiffs is nonsensical and lacks any "basis in logic or common experience." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020). Under Plaintiffs' theory, Revance's top executives devised a plan in the first quarter of 2024 to mislead ***investors*** in the hopes of duping ***Crown*** into buying Revance. Compl. ¶ 1. To carry out this plan, Defendants disclosed accurate growth and revenue figures for three consecutive quarters in 2024, including with respect to the RHA Collection. Then, Revance entered into the Merger Agreement with Crown, despite knowing full well that the deal would never happen because Revance had secretly been violating FDA regulations and breaching the Teoxane Agreement since February 2024, notwithstanding the intense regulatory scrutiny in which Revance operated. Compl. ¶¶ 163-68. And when Teoxane served the Breach Notice, Revance concealed from investors the fact that it was engaged in active negotiations with both Teoxane and Crown, including through "tri-party meetings," *id.* ¶ 62, in the hopes of inducing its shareholders to tender

their shares at a $6.66 offer price that Defendants knew Crown would never pay. *Id.* ¶ 201.

According to Plaintiffs, the Individual Defendants apparently engaged in this scheme without any alleged financial incentive whatsoever, in the form of insider stock sales or otherwise. *See id.* ¶¶ 194-203. And they hoped to accomplish their scheme by repeatedly disclosing both that Revance was engaged in discussions with Crown and Teoxane and that the Crown deal could fall apart or proceed on different terms than the ones originally announced, including with respect to the offer price. "This is 'hardly the sort of behavior one would expect from the perpetrator of securities fraud.'" *Pittman v. Unum Grp.*, 861 F. App'x 51, 57 (6th Cir. 2021); *see also Endologix*, 962 F.3d at 415 (where theory "does not resonate in common experience," "the PSLRA neither allows nor requires [courts] to check [their] disbelief at the door").

**3. Plaintiffs Do Not Allege Known Falsity.**

Because the core of Plaintiffs' theory is that Defendants omitted "soft" information (*e.g.*, alleged FDA violations, alleged breaches of contract, specifics of contract negotiations), Plaintiffs bear the heightened burden of "plead[ing] facts showing that the defendants knowingly misrepresented or omitted [material] facts to deceive, manipulate, or defraud the public." *Omnicare*, 769 F.3d at 472; *accord ISDC*, 583 F.3d at 946. This assessment of knowledge must proceed on a defendant-by-defendant basis; conclusory allegations about defendants collectively are not sufficient. *Teamsters*, 83 F.4th at 526; *Omnicare*, 769 F.3d at 476.

Plaintiffs do not allege any particularized facts that either Individual Defendant made any statements "knowing they were false." *Omnicare*, 769 F.3d at 481. Contrary to what the Complaint suggests, "scienter [can] not be inferred simply by virtue of [the Individual Defendants'] senior positions within [Revance]; instead, [Plaintiffs] 'must allege specific facts or circumstances suggestive of their knowledge.'" *Teamsters*, 83 F.4th at 531 (citation omitted). Likewise, "[g]eneralized descriptions of internal meetings ... do not contribute to a cogent, compelling

inference of scienter," especially where the "plaintiffs do not identify any particularized account showing [what] executives knew during the class period." *Id.*

What is more, while the Complaint attempts to corroborate Plaintiffs' contention that Revance had been breaching the Teoxane Agreement with unverified statements from a handful of "former employees ('FE') of Revance," Compl. ¶ 117, not one of the FEs is "identified as having *any* contact or interaction with any of the [Individual] Defendants," let alone during the Class Period. *Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009). Indeed, only FE 2 is alleged to have "reported directly to the C-Suite," but she "left the Company in January 2024" before the Class Period even started. Compl. ¶ 121 & n.3. And while FE5 allegedly attended "monthly meetings" with unspecified "high-level employees," the Complaint conspicuously does not allege that either of the Individual Defendants were in attendance. *Id.* ¶ 140.[13]

At most, Plaintiffs' allegations show that Revance had reduced its marketing force in 2024, decided to handle creative media for the RHA Collection in-house, certain low-level former employees "felt" that various promotional practices were "shady," and certain regions were not hitting their sales targets in "early 2024." *Id.* ¶¶ 119-44. These allegations hardly establish with the requisite particularity that Revance had violated the law or breached any provision of the Teoxane Agreement at any time during the Class Period, much less that either of the Individual Defendants ***knew*** that this was the case and sought to defraud the public about it. *See, e.g., JRS*

---

[13] In *Omnicare*, the Sixth Circuit rejected more particularized pleadings than Plaintiffs' as still insufficient under Rule 9(b) and the PSLRA. In that case, plaintiffs relied on the confidential witness allegations of a company's former Chief Compliance Officer (CCO) who alleged he had "brought *compliance related concerns* to the attention of [the executive who uttered the alleged misstatement] and other [company] executives." 769 F.3d at 482-83. The Sixth Circuit explained that plaintiffs "failed to elaborate ... upon the nature of the concerns" that the former CCO had related to the executive and, "[m]ore importantly, ... the [c]omplaint failed to provide any specifics regarding the timing of the [alleged] conversation." *Id.*

*Partners, GP v. Leech Tishman Fuscaldo & Lamp, LLC,* 615 F. Supp. 3d 750, 773-74 (M.D. Tenn. 2022) (Richardson, J.) (dismissing securities fraud claim when it was "not inferable" that individual defendant "was even aware that he was making false statements or [] disregarding the most current factual information"), *aff'd in relevant part*, 2024 WL 2874575 (6th Cir. June 7, 2024); *accord In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 852 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 859 F.3d 325 (6th Cir. 2017).

**B. Plaintiffs' Boilerplate Scienter Allegations Fail.**

To distract from the lack of scienter allegations, Plaintiffs proffer five conclusory "Additional Allegations of Scienter" for why the Individual Defendants (and Revance, by implication) acted with scienter. Compl. ¶¶ 194-203. None of these boilerplate, circumstantial allegations satisfy the PSLRA's "exacting" pleading standards. *Tellabs*, 551 U.S. at 313.

**1. Plaintiffs' "Core Operations" Theory Is Deficient.**

Plaintiffs argue that the Individual Defendants must have known that their Class Period statements were false or misleading when made because "the Teoxane Agreement and sales of RHA were critical to Revance's revenue and viability." Compl. ¶ 195. These conclusory allegations that the purported omissions concern the company's "core operations" do not show that the Individual Defendants knowingly made false statements. *See In re Federal-Mogul Corp. Sec. Litig.*, 166 F. Supp. 2d 559, 564 (E.D. Mich. 2001) (plaintiffs must plead facts that "raise a strong inference that Defendants acted knowingly"). The "fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent." *Pittman*, 861 F. App'x at 55; *see also Doshi v. Gen. Cable Corp.*, 386 F. Supp. 3d 815, 838 (E.D. Ky. 2019) (core operations allegations "d[id] not establish" that company "actually knew [its] statements were false"); *Stein v. U.S. Xpress Enters., Inc.*, 2020 WL 3584800, at *36, *39 (E.D. Tenn. June 30,

2020) (rejecting scienter inference that "hinge[d] fundamentally on the presumption that high-level executives generally know information about a company's core operations").

**2. Purported Information Access Does Not Show Scienter.**

Plaintiffs speculate that Defendants must have known that their statements were misleading because "Defendants had access to internal reports showing that Revance was not selling sufficient RHA products," all "employees above the title of 'manager'... could access" the company's sales tracking database, and Revance "held monthly meetings" concerning RHA products. Compl. ¶¶ 199, 202. But "[a] plaintiff's scienter allegations ... cannot hinge only on the presumption that a defendant generally knows information or has access to certain information because of that individual's position in the company." *Mosaic Fin. Ltd. v. Mut. S'holder Servs.*, LLC, 767 F. Supp. 3d 619, 647 (N.D. Ohio 2025) (citations omitted); *D.E. & J Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 743 (E.D. Mich. 2003) ("[C]ourts have routinely rejected the attempt to plead scienter based on allegations that because of the defendants' ... positions, they had access to information concerning the company's adverse financial outlook.") *aff'd*, 133 F. App'x 994 (6th Cir. 2005). The same is true for "[g]eneralized descriptions of internal meetings." *Teamsters Loc.*, 83 F.4th at 531. Instead, a complaint "must allege specific facts or circumstances suggestive of their knowledge," *id.*, such as an individual defendant's receipt of "current-in-time reports of objective data" that contradicts his or her public statements. *Mosaic*, 767 F.Supp.3d at 647.

Here, while Plaintiffs assert that the Individual Defendants "could" access certain data, Compl. ¶ 202, Plaintiffs do not allege (i) any specific meeting that either of the Individual Defendants actually attended, (ii) what specific data or information any Individual Defendant actually reviewed, (iii) when they reviewed it, or (iv) how that data or information showed that the statements challenged in the Complaint were false when made. Plaintiffs' failures prevent any inference of fraudulent intent. *See, e.g.*, *Doshi v. Gen. Cable Corp.*, 2015 WL 366644, at *6 (E.D.

Ky. Jan. 27, 2015) (rejecting "access to information" argument when plaintiffs "d[id] not specify any instance where [d]efendants gained relevant knowledge ... and disregarded it"), *aff'd*, 823 F.3d 1032 (6th Cir. 2016); *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 834 & n.9 (W.D. Mich. 2012) (no inference of scienter when plaintiffs "fail[ed] to allege the existence of any internal [company] documents that contradicted" the alleged misrepresentations and no confidential witnesses could "testify as to what [d]efendants knew"). Speculation that "Defendants undoubtedly knew that Teoxane was 'livid with Revance'" will not do. Compl. ¶ 200.

**3. Conclusory Motive Allegations Cannot Support Scienter.**

Plaintiffs allege that "Defendants were motivated to hide the underlying breaches of the Teoxane Agreement to secure the Tender Offer price of $6.66 per share." *Id.* ¶ 201. But "claims of motive and opportunity do not, without more, suffice to give rise to a 'strong inference' of scienter." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999). Plaintiffs allege no facts to support this conjecture, such as the Individual Defendants standing to receive incentive compensation tied to the Tender Offer price. *Cf.*, *Darby v. Century Bus. Serv., Inc.*, 96 F.App'x 277, 282-83 (6th Cir. 2004) (allegation that defendants "had a motive to inflate the company's stock price" were insufficient); *Humana*, 2000 U.S. Dist. LEXIS 21671, at *18-19 (motives "which are quite common in the world of corporations" are insufficient).

**4. Hindsight Cannot Show Scienter.**

Plaintiffs assert that Revance's entry into the Amended Teoxane Agreements and purported insistence on a release of liability when it agreed to modified merger terms with Crown is indicative of fraud. Compl. ¶¶ 196-97. According to Plaintiffs, Revance would not have agreed to the supposed "one-sided" agreements with Teoxane or needed a release from Crown if "there were no breaches of the Teoxane Agreement." *Id.* ¶¶ 76, 105. "Finding scienter based on such allegations would be equivalent to the classic fraud by hindsight case where a plaintiff alleges that

the fact that something turned out badly must mean defendant knew earlier that it would turn out badly." *Ernst & Young*, 622 F.3d at 485. "Such allegations cannot give rise to a strong inference of scienter." *Doshi*, 823 F.3d at 1044. Wholly lacking from the Complaint are "***any*** facts explaining why or how" the Defendants knew that Revance was materially breaching the Teoxane Agreement during the Class Period or that they "possessed advance, non-public knowledge" that negotiations following Revance's receipt of the Breach Notice inevitably would lead to the Amended Teoxane Agreements and the amended Merger Agreement. *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 470 (6th Cir. 2011) (emphasis added).[14]

**5. Plaintiffs Cannot Repurpose Alleged Omissions as Evidence of Scienter.**

Plaintiffs assert that the Court should infer scienter from the mere fact of Defendants' failure to immediately disclose the Breach Notice upon receipt and Crown's purported repudiation of the $6.66 Tender Offer price. Compl. ¶¶ 198, 203. A material omission and scienter are separate elements, and the PSLRA requires that courts dismiss complaints that fail to sufficiently plead both elements. *See* 15 U.S.C. § 78u-4(b)(3). And as shown above, Defendants had no duty to disclose the Breach Notice or Crown's requested price reduction, undermining any inference of scienter. *See, e.g.*, *Newtyn Partners*, 2025 WL 872967, at *19 (no inference of scienter from non-disclosure when "Defendants had no duty to disclose" the alleged omission).

---

[14] Plaintiffs make much of the fact that Revance sought a release as part of resolving these disputes. Compl. ¶¶ 16, 105, 115, 193. But that is a prudent business practice, not an indication of scienter. It would make little sense for a company to resolve a dispute while leaving itself exposed to additional potential claims or liabilities arising from that same dispute. And insofar as Plaintiffs appear to contest the wisdom of Revance's entry into the Amended Teoxane Agreements, *see id.* ¶¶ 10-11, 75-87, the securities laws provide no cause of action. *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977) (securities laws do not "regulate transactions which constitute no more than internal corporate mismanagement").

### C. Non-Fraudulent Inferences of Intent Are More Compelling.

Inferences of non-fraudulent intent are far more compelling than the tortured theories of scienter offered by the Complaint. *See Tellabs*, 551 U.S. at 323 ("[T]he court must take into account plausible opposing inferences."); *see also JRS Partners*, 615 F. Supp. 3d at 774 ("any inference of scienter that could be made [was] no more plausible than a readily apparent non-fraudulent explanation for the alleged facts"). The obvious and more plausible opposing inference from the Complaint is that the Defendants were legitimately optimistic about the performance of the RHA Collection in the three quarters leading up to the merger announcement, and that they did not believe Revance was materially breaching the Teoxane Agreement. Compl. ¶¶ 43-51, 57. Once the Teoxane dispute arose, Defendants worked diligently to reach a resolution with Teoxane and involved Crown in tri-party discussions. Cognizant that the Tender Offer would not commence on the expected timing, Revance announced agreed extensions of Crown's deadline to commence the Tender Offer and transparently disclosed that the delays were the result of ongoing discussions with Teoxane and Crown concerning the Breach Notice, and later discussions with Crown concerning the Amended Teoxane Agreements. *Id.* ¶¶ 68, 71, 94, 102-07. Ultimately, the Crown deal was not as favorable for shareholders as originally anticipated, but one that Defendants believed was in the best interests of Revance's shareholders. *Id.* ¶¶ 52, 109. Nothing about this plausible opposing narrative suggests an intent by Defendants to defraud.

## IV. Plaintiffs Fail To Plead Loss Causation.

Plaintiffs' claims fail for the independent reason that Plaintiffs did not adequately plead loss causation, *i.e.*, a "causal connection between the material misrepresentation and the loss." *Dura Pharm.*, 544 U.S. at 342. Plaintiffs must allege (among other things) "that an economic loss occurred *after* the truth behind the misrepresentation or omission became known to the market," *ISDC*, 583 F.3d at 944, and that "the subject of the fraudulent statement or omission was the cause

of the actual loss suffered." *In re Wash. Prime Grp., Inc. Sec. Litig.*, 2024 WL 1307103, at *11 (S.D. Ohio Mar. 27, 2024). Disclosures that reveal "nothing more than a risk, *a possibility*, that [d]efendants may have made misrepresentations" do not suffice. *In re Almost Fam., Inc. Sec. Litig.*, 2012 WL 443461, at *13 (W.D. Ky. Feb. 10, 2012).

Plaintiffs attempt to plead loss causation using a corrective disclosure theory, alleging five different corrective disclosures. *See* Compl. ¶¶ 204-11. A "corrective disclosure" is an event revealing the truth behind a prior false statement, whether through a party's formal statement admitting to the truth or a third party uncovering the truth and informing the market. *See In re KBC Asset Mgmt. N.V.,* 572 F.App'x 356, 360 (6th Cir. 2014). None of the Complaint's five alleged corrective disclosures adequately plead loss causation.

Two of Plaintiffs' five purported "corrective disclosures" revealed nothing to the market at all. Plaintiffs allege that Revance's stock price declined in the five trading days following September 13, 2024, when Crown failed to commence the Tender Offer as originally anticipated. Compl. ¶ 206. That alleged failure—the possibility of which was previously disclosed—did not "reveal" that any of Defendants' prior statements were false or misleading when made. *ISDC*, 583 F.3d at 944. Plaintiffs concede as much and admit that this purported "corrective disclosure" only "signified to the market that something was amiss." Compl. ¶ 206. But something "amiss" does not identify any fraud that was revealed. The same is true for the supposed "corrective disclosure" on October 25, 2024, when "the Tender Offer again failed to commence" as anticipated. *Id.* at 208.

Plaintiffs likewise fail to plead what specific fraud the remaining three alleged corrective disclosures ***revealed*** to the market. *See Almost Fam.*, 2012 WL 443461, at *13 ("Because this Court fails to identify any disclosure of fraud on behalf of the Defendants, Plaintiffs have not satisfied the[] pleadings standards of loss causation."). For instance, Plaintiffs contend that

Revance's disclosure of the Breach Notice "partially revealed the truth, including that the Crown Tender Offer was at risk and that Revance's prior statements touting its RHA sales and its compliance with the Teoxane Agreement were inaccurate." Compl. ¶ 207. But disclosure of a notice asserting unproven breaches does not establish that Revance actually had breached the Teoxane Agreement. *Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *18 (W.D. Pa. Sept. 8, 2017) ("allegations of unproven misconduct" in a third party's civil complaint "[are] not a corrective disclosure"), *aff'd*, 757 F. App'x 151 (3d Cir. 2018); *Sapssov v. Health Mgmt. Assocs., Inc.*, 22 F.Supp.3d 1210, 1231 (M.D. Fla. 2014) (same), *aff'd*, 608 F.App'x 855 (11th Cir. 2015). Nor did Revance's disclosure correct any of the statements about RHA sales contained in earlier Quarterly Earnings Statements.

Plaintiffs also erroneously allege that the disclosure of the new Tender Offer price "admitted that the lower merger consideration was specifically due to 'Revance receiving notice from Teoxane alleging breach' leading to the Amended Teoxane Agreement 'which revisions are expected to have a material impact on Revance's future profitability and cash flows.'" Compl. ¶ 210. But Revance had previously disclosed that the Tender Offer terms could be modified, or that the Tender Offer could fail to go forward altogether, due to Revance's and Crown's ongoing discussions following receipt of the Breach Notice. "The problem with [plaintiff's] theory is that ... the alleged corrective disclosures [] were old news." *KBC Asset Mgmt.*, 572 F.App'x at 360.[15]

---

[15] Plaintiffs also fail to plead loss causation and economic loss for potentially large portions of the putative class. The Complaint defines the "Class" as comprising "all purchases [sic] of Revance securities during the period of February 29, 2024 through December 6, 2024." Compl. ¶ 213. By definition, the "Class" includes (i) stockholders who bought and sold during the Class Period without a loss, (ii) stockholders who bought stock below the Tender Offer price and who were cashed out in the merger at a higher price, and (iii) stockholders who sold their stock before any purported "corrective disclosure." As a matter of law, these putative class members have no claim. *See* 15 U.S.C. § 78u-4(b)(4), (e); *Dura Pharms.*, 544 U.S. at 342-43.

## V. Plaintiffs Fail To State a "Scheme" Claim.

Plaintiffs' securities claims are unambiguously premised on alleged misstatements and omissions. *See e.g.*, Compl. ¶¶ 145, 228-29. Under SEC Rule 10b-5, alleged misstatements are actionable under Rule 10b-5(b). *See* 17 C.F.R. § 240.10b-5(b). But in a cursory recital of their claim, Plaintiffs reference Rule 10b-5(a) and (c) as well. *See* Compl. ¶ 226. Because the Complaint offers no allegations to sustain a separate "scheme" claim, any claim under Rule 10b-5(a) and (c) fails as a matter of law. *Gordon v. Royal Palm Real Estate Inv. Fund I, LLP*, 2020 WL 2836312, at *5 (E.D. Mich. May 31, 2020) (dismissing claim that did not allege "fraudulent scheme, separate and apart from" claim that defendants "failed to disclose or misrepresented certain information").

## VI. Plaintiffs Fail To State a Section 20(a) Claim.

Plaintiffs' failure to plead a violation of Section 10(b) requires dismissal of their Section 20(a) claims. *Doshi* 823 F.3d at 1045; *ISDC* 583 F.3d at 947.

## CONCLUSION

Plaintiffs do not identify actionable misstatements, have not adequately pleaded a strong inference of scienter, fail to sufficiently allege loss causation, and do not state a scheme claim or a Section 20(a) claim. Defendants respectfully request that this case be dismissed.

[*Remainder of page deliberately blank.*]

Dated: August 28, 2025

Respectfully submitted:

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

*/s/ Christopher E. Thorsen*
Christopher E. Thorsen (BPR 21049)
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
(615) 726-5600
cthorsen@bakerdonelson.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

Susan L. Saltzstein (*pro hac vice*)
Jeffrey S. Geier (*pro hac vice*)
Christopher R. Fredmonski (*pro hac vice*)
One Manhattan West
New York, New York 10001
(212) 735-3000
susan.saltzstein@skadden.com
jeffrey.geier@skadden.com
christopher.fredmonski@skadden.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Jenness E. Parker (*pro hac vice*)
One Rodney Square
920 N. King St.
Wilmington, Delaware 19801
(302) 651-3000
jenness.parker@skadden.com

*Counsel for Defendants Mark J. Foley and Tobin C. Schilke*

**RILEY & JACOBSON, PLC**

*/s/ Milton S. McGee, III*
Milton S. McGee, III (BPR 024150)
1960 West End Avenue Nashville, TN 37203
(615) 320-3700
tmcgee@rjfirm.com

**KIRKLAND & ELLIS LLP**

*/s/ Jordan D. Peterson*
Jordan D. Peterson, P.C. (*pro hac vice*)
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jordan.peterson@kirkland.com

*Counsel for Defendant Revance Therapeutics, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I electronically filed a copy of the foregoing document with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to all parties registered with the Court's electronic filing system.

*/s/ Jordan D. Peterson*