# EXHIBIT 1

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

---

# SCHEDULE TO

**Tender Offer Statement under Section 14(d)(1) or 13(e)(1)**
**of the Securities Exchange Act of 1934**

---

# REVANCE THERAPEUTICS, INC.

**(Name of Subject Company (issuer))**

---

# REBA MERGER SUB, INC.

**(Offeror)**
**a wholly-owned subsidiary of**

---

# CROWN LABORATORIES, INC.

**(Parent of Offeror)**

# CROWN HOLDINGS INTERCO LLC

**(Other)**

# CROWN LABORATORIES HOLDINGS, INC.

**(Other)**

**(Names of Filing Persons (identifying status as offeror, issuer or other person))**

---

**Common stock, $0.001 par value per share**
**(Title of Class of Securities)**

**761330109**
**(CUSIP Number of Class of Securities)**

---

**Shellie Hammock**
**Executive Vice President and General Counsel**
**Crown Laboratories, Inc.**
**207 Mockingbird Lane**
**Johnson City, TN 37604**
**Telephone: (423) 926-4413**
**(Name, address, and telephone numbers of person authorized to receive notices and communications on behalf of filing persons)**

---

***Copy to:***

[PAGES OMITTED]

- the 90th day after a Qualifying Termination unless prior to the 90th day after a Qualifying Termination, Revance commenced a suit, action or other legal proceeding against Crown alleging a Parent Termination Fee is due and owing or against the Guarantors that amounts are due and owing from the Guarantors pursuant to the Limited Guarantee (a "Qualifying Suit"), subject to additional terms in the Limited Guarantee; and
- the payment or satisfaction of the Guaranteed Obligations due and payable to Revance under the Limited Guarantee.

This summary does not purport to be complete and is qualified in its entirety by reference to the full text of the Limited Guarantee, a copy of which has been filed as Exhibit (d)(5) to the Schedule TO and which is incorporated herein by reference.

**10. Background of the Offer; Past Contacts or Negotiations with Revance**

***Background of the Offer***

The following is a description of contacts between representatives of Crown and Revance that resulted in the execution of the Original Merger Agreement (as defined below), the A&R Merger Agreement and the agreements related to the Offer as well as certain additional matters occurring after the execution of the Original Merger Agreement and disclosed to Crown by Revance that resulted in the execution of the A&R Merger Agreement and the agreements related to the Offer. For a review of Revance's additional activities, please refer to the Schedule 14D-9 that will be filed by Revance with the SEC and mailed to Revance stockholders

On November 13, 2023, a representative from Crown and Hildred Capital Management, LLC ("Hildred Capital") contacted Mr. Foley, expressing their interest in a meeting to discuss potential collaboration opportunities.

On November 27, 2023, Mr. Foley participated in an initial discussion with a representative of Hildred Capital following an industry conference in New York. During the meeting, the parties engaged in general discussions regarding Revance's industry and business as well as Hildred Capital's portfolio company, Crown. Hildred Capital expressed interest in considering a potential strategic transaction with, or investment in, Revance.

On January 29, 2024, Hildred Capital, the majority shareholder of Crown, executed a non-disclosure agreement with Revance (the "Hildred NDA") in connection with its consideration of a potential strategic transaction with, or investment in, Revance. The Hildred NDA contained customary terms, including a limited standstill providing that Hildred Capital may not, among other things, solicit proxies to vote or seek to advise any person with respect to the voting of any of Revance's securities, and also included "don't ask don't waive" provisions with respect to the limited standstill provisions, except Hildred Capital would be permitted to make direct private solicitations directly to the Revance Board after making the same solicitation to Revance management.

On February 8, 2024, Mr. Foley held a meeting with representatives of Hildred Capital and during such meeting, representatives of Hildred Capital again expressed interest in a potential strategic transaction with Revance, including an acquisition of the aesthetics segment of Revance or an acquisition of the whole company, and discussed generally how such a transaction might be structured.

On February 25, 2024, the Revance Board authorized Revance management to share a preliminary projected profit and loss statement prepared by Revance management for the fiscal years 2024 through 2026 with Hildred Capital and Crown.

In late March, representatives of Crown indicated that they had engaged a financial advisor and had begun their diligence process in connection with a potential strategic transaction with Revance. Representatives of Crown indicated that an indication of interest would be forthcoming.

On April 3, 2024, Revance received a non-binding proposal from Crown indicating Crown's interest in pursuing an acquisition of Revance for $9.25 per share in cash, which indicated that Crown's proposed offer price would be subject to completion of customary due diligence (the "April Proposal"). The April Proposal represented a 105% premium to the closing stock price of Revance's Shares on April 2, 2024, the last trading day prior to the April Proposal. The April Proposal was based on certain assumptions made by Crown, including its review of publicly available information, information provided to date, and preliminary discussions with Revance.

On April 12, 2024, the Revance Board authorized Centerview to inform Crown's financial advisor, PJT Partners LP ("PJT"), that Revance would grant Crown access to further diligence materials. After representatives of Centerview presented a list of potential third parties to the Revance Board, the Revance Board also authorized Centerview and Revance management to continue to seek interest from such third parties in a potential strategic transaction with Revance.

In May 2024, Crown continued to conduct its due diligence review and held several diligence calls with representatives of Revance.

On May 31, 2024, Mr. Foley met with representatives of Crown, and during such meeting, representatives of Crown indicated that they planned to submit a revised proposal to acquire Revance for $6.25 per share.

On June 3, 2024, Revance received a revised non-binding offer letter from Crown, indicating Crown's continued interest in acquiring Revance, for a proposed offer price of $6.25 per share in cash (the "June 3 Proposal") on a fully diluted basis, subject to completion of due diligence, noting that Crown had substantially completed diligence on topics related to value. The June 3 Proposal represented a 120% premium to Revance's closing stock price of Revance's Shares on May 31, 2024, the last trading day prior to the June 3 Proposal. The June 3 Proposal did not contain any indication of retaining Revance management post-closing of the Transaction.

On June 3, 2024, Mr. Foley met with a representative of Crown to further discuss the June 3 Proposal. The representative of Crown noted that the updated offer reflected the results of Crown's due diligence conducted to date and that such diligence had resulted in reductions in the assumed operating performance of the business, reductions in assumed commercial cost synergies and increases in certain risks related to the business and its two primary products.

On June 7, 2024, Mr. Foley informed a representative of Hildred Capital of the Revance Board's view that the June 3 Proposal was insufficient.

On June 19, 2024, Mr. Foley met with a representative of Crown. The representative of Crown indicated that a revised proposal would be forthcoming in the near-term.

On June 21, 2024, Mr. Foley received an oral offer from a representative of Crown indicating Crown's interest in acquiring Revance for $6.50 per share in cash. The representative of Crown noted that this offer would be their "final" offer.

Later on June 21, 2024, Revance received a final non-binding offer letter from Crown indicating Crown's interest in acquiring Revance for $6.50 per share in cash, representing a fully diluted equity value of $719 million based on Crown's modeling of Revance's capitalization (the "June 21 Proposal"), subject to completion of confirmatory due diligence. The $6.50 per share pricing in the June 21 Proposal represented a 126% premium to the closing stock price of Revance's Shares on June 20, 2024, the last trading day prior to the June 21 Proposal. The June 21 Proposal also indicated that Crown would be obtaining debt financing in connection with the potential strategic transaction. The June 21 Proposal did not contain any indication of retaining Revance management post-closing of the transaction.

On June 25, 2024, Mr. Foley met with a representative of Crown. Mr. Foley indicated that Revance was willing to proceed with the acquisition, but that the offer price per share would need to be updated to reflect Revance's latest available internal capitalization information and requested that the transaction include a contingent value right tied to Revance's revenue.

On June 26, 2024, a representative of Centerview met with a representative of PJT to indicate Revance was willing to proceed with the acquisition, but that the offer price per share would need to be updated to reflect Revance's latest available internal capitalization information and requested that the transaction include a contingent value right tied to Revance's revenue. The representative of PJT indicated that Crown would be updating its final offer price per share based on updated capitalization information to be provided by Revance, but that Crown rejected the inclusion of a contingent value right.

On June 29, 2024, Revance provided Hildred Capital, Crown and their advisors access to an expanded online data room.

On July 4, 2024, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), Revance's outside legal counsel sent the initial draft of the Original Merger Agreement to Kirkland & Ellis LLP, counsel to Crown ("Kirkland").

On July 17, 2024, Kirkland provided to Skadden a markup of the draft Original Merger Agreement, following which discussions and negotiations among representatives of Kirkland and Skadden continued until the signing of the Original Merger Agreement on August 11, 2024. The parties exchanged revised drafts of the Original Merger Agreement during this time and negotiated several key points, including the Revance Board's ability to change its recommendation and terminate the Original Merger Agreement to accept a Superior Offer (as defined in the Original Merger Agreement), the termination fees payable by Revance and Crown, the debt financing covenants and the treatment of Revance equity awards for non-executive officer employees.

On July 21, 2024, Skadden provided to Kirkland a revised markup of the Original Merger Agreement.

On July 23, 2024, Skadden provided to Kirkland the initial draft of the Original Company Disclosure Letter (the "Original Company Disclosure Letter").

On July 25, 2024, Kirkland provided to Skadden a revised markup of the Original Merger Agreement.

On July 26, 2024, Kirkland provided to Skadden a markup of the Original Company Disclosure Letter, following which discussions and negotiations among representatives of Kirkland and Skadden continued until the signing of the Original Merger Agreement on August 11, 2024. The parties exchanged revised drafts of the Original Company Disclosure Letter during this time.

On July 29, 2024, Kirkland provided to Skadden the initial drafts of the equity commitment letter ("Original Equity Commitment Letter") and limited guarantee ("Original Limited Guarantee").

Between July 29, 2024 and August 11, 2024, representatives of Skadden and Kirkland resolved the material open terms in the Original Equity Commitment Letter and Original Limited Guarantee.

On August 5, 2024, Skadden sent a revised draft of the Original Merger Agreement to Kirkland.

Between August 5 and August 11, 2024, representatives of Skadden and Kirkland resolved the material open terms in the draft Original Merger Agreement, including the termination fees, the debt financing covenants and the treatment of Revance equity awards for non-executive officer employees.

Also on August 6, 2024, Skadden received drafts of the debt commitment letter (the "Original Debt Commitment Letter") and Fee Letter (the "Fee Letter") from Kirkland, following which, discussions and negotiations among representatives of Kirkland and Skadden continued until the signing of the Original Merger Agreement on August 11, 2024. The parties exchanged revised drafts of the Original Debt Commitment Letter

and Fee Letter during this time and negotiated the commitment period for the debt and the Outside Date (as defined in the Original Merger Agreement) and the contemplated debt financing.

On August 7, Skadden received a draft of the Sixth Amendment to the ABL Credit Agreement (the “Credit Agreement Amendment”) from Kirkland.

Between August 7, 2024 and August 11, 2024, representatives of Skadden and Kirkland resolved the material open terms in the Credit Agreement Amendment.

On August 10, 2024, Skadden sent a revised draft of the Original Merger Agreement to Kirkland.

On August 10, 2024, a representative of Centerview met with a representative of PJT to discuss the offer price per share based on Revance’s latest available internal capitalization information. The representative of PJT confirmed that based on the fully diluted equity value offer of $719 million, the final price per share based on updated capitalization information is $6.66 per share (the “Original Offer Price”).

On August 11, 2024, Revance, Merger Sub and Crown executed the Original Merger Agreement and announced the Transactions prior to the opening of trading on Nasdaq on August 12, 2024.

On August 16, 2024, Revance received a notice from Teoxane SA (“Teoxane”) claiming alleged breaches (the “Teoxane Notice”), concerning, among other things, purported material breaches of provisions governing the maximum level of buffer stock and requirements surrounding the promotion and sale of Teoxane products, under the Revance’s exclusive distribution agreement with Teoxane, dated January 10, 2020, as amended (the “Distribution Agreement”). Revance disputed the Teoxane Notice, including that Revance did not believe that it was in breach of the asserted allegations or that the alleged breaches constituted a material breach under the terms of the Distribution Agreement.

Between August 20, 2024 and October 24, 2024, Revance and certain of its advisors, communicated with Teoxane regarding the Teoxane Notice and negotiated modified terms to the Distribution Agreement. During this period, Revance and Crown communicated regularly and Revance received Crown’s input with respect to the ongoing discussions with Teoxane, and Revance considered such input in its negotiations with Teoxane. These modifications were negotiated both to resolve the dispute as well as to resolve the parties ongoing negotiations regarding the minimum purchase commitment for 2025 through 2029, which was required pursuant to the Distribution Agreement.

In light of the ongoing communications with Teoxane and related factors, on August 27, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer.

On August 28, 2024, Revance filed a Form 8-K with the SEC (the “August 28 8-K”). The August 28 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to September 13, 2024 or such other date as may have been agreed to between Revance and Crown.

Between August 28, 2024 and September 19, 2024, Revance had multiple communications and discussions with Teoxane regarding the Teoxane Notice, including in-person meetings with Teoxane in Geneva, Switzerland. The in-person meetings included a tri-party meeting with Crown, Revance and Teoxane.

On September 19, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer.

On September 23, 2024, Revance filed a Form 8-K with the SEC (the “September 23 8-K”). The September 23 8-K reflected that Revance had received the Teoxane Notice and disclosed that in light of ongoing discussions with Teoxane regarding the Teoxane Notice, Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to October 4, 2024 or such other date as may have been agreed to between Revance and Crown.

On October 3, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer.

On October 4, 2024, Revance filed a Form 8-K with the SEC (the "October 4 8-K"). The October 4 8-K reflected that in light of ongoing discussions with Teoxane regarding the Teoxane Notice, Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to October 18, 2024 or such other date as may have been agreed to between Revance and Crown.

On October 17, 2024, Crown conveyed its view to Revance that Crown's ability to move forward with the Merger was dependent on successful resolution of the outstanding claims by Teoxane as well as Crown's approval of any material amendments to the Distribution Agreement, which was required pursuant to the terms of the Original Merger Agreement (such approval not to be unreasonably withheld, conditioned or delayed).

On October 18, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer. Revance filed a Form 8-K with the SEC (the "October 18 8-K"). The October 18 8-K reflected that in light of ongoing discussions with Teoxane regarding the Teoxane Notice, Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to October 25, 2024 or such other date as may have been agreed to between Revance and Crown.

On October 24, 2024, Revance communicated the terms of the Sixth Amendment to the Distribution Agreement (the "Sixth Amendment") and the Exclusive Distribution Agreement for DAXXIFY® in Australia and New Zealand (the "ANZ Distribution Agreement") to Crown and sought their approval pursuant to the terms of the Original Merger Agreement. Crown withheld such approval, including because it was Crown's view that, with respect to the Sixth Amendment, the Sixth Amendment (i) increased the minimum payments due to Teoxane, beyond projected sales levels for the Teoxane products, (ii) created risk that the Distribution Agreement could be terminated by Teoxane prior to completion of the remaining license term, (iii) provided operating terms more burdensome than the prior arrangement under the Distribution Agreement and (iv) with respect to the ANZ Distribution Agreement, such agreement provided Teoxane with rights for the Australian market on terms that were highly unfavorable to Revance.

On October 24, 2024, Revance and Teoxane entered into the Sixth Amendment. The Sixth Amendment, among other things, (i) established minimum purchase commitments through 2029, (ii) updated and clarified certain branding guidelines, (iii) established a marketing task force to review promotional materials, (iv) established a medical education task force to promote the exchange of best practices, (v) deemed the breach of certain provisions under the Distribution Agreement material breaches for purposes of early termination, including the failure to adhere to branding guidelines and timely delivery of certain reports and (vi) amended Revance's minimum and maximum buffer stock requirements to align with Revance's new purchase commitments. Concurrent with the Sixth Amendment, Revance and Teoxane entered into the ANZ Distribution Agreement, pursuant to which Teoxane will act as Revance's exclusive distributor and licensee in Australia and New Zealand of certain products containing DaxibotulinumtoxinA-lanm, including DAXXIFY®, for the treatment of (i) temporary improvements in appearance of glabellar lines and other indications related to altering cosmetic appearance and (ii) cervical dystonia. The ANZ Distribution Agreement would continue in full force and effect until December 31, 2040

Also on October 24, 2024, Revance and Teoxane entered into a Settlement and Release Agreement (the "Settlement Agreement" and together with the Sixth Amendment and the ANZ Distribution Agreement, the "Teoxane Agreements"), pursuant to which Teoxane (i) waived any right to terminate the Distribution Agreement with respect to any breaches that may have occurred, existed or arose on or prior to the date of the Settlement Agreement and (ii) expressly acknowledged that there are no items currently in dispute between Teoxane and Revance.

On October 25, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions in light of Revance's entry into the Teoxane

Agreements, which could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price.

On October 28, 2024, Revance filed a Form 8-K with the SEC (the "October 28 8-K"). The October 28 8-K reflected the Teoxane Agreements. The October 28 8-K also reflected that in light of ongoing discussions with Crown regarding the Teoxane Agreements, Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to November 1, 2024 or such other date as may have been agreed to between Revance and Crown.

On October 30, 2024, representatives of Revance spoke with representatives of Crown, who indicated that Crown was unwilling to commence the Offer set forth in the Original Merger Agreement and that Crown would provide to Revance a non-binding term sheet reflecting proposed amended transaction key terms which Crown indicated would reflect Crown's view of the then current value of Revance based on Crown's view of Revance's recent performance, market conditions and the impact of Revance entering into the Sixth Amendment and ANZ Distribution Agreement, including Crown's belief that the period for which the Distribution Agreement would remain in place was uncertain.

Also on October 30, 2024, Revance received a non-binding term sheet from Crown which included amended transaction key terms (the "October 30 Proposal"), including, among other things, (i) a payment to stockholders at the closing of the Merger (the "Closing") of $2.25 per share in cash (the "$2.25 Share Amount"), (ii) $0.50 per share in cash to be held back to cover all costs and expenses in connection with all stockholder litigation related to the A&R Merger Agreement and transactions contemplated thereby (the "Litigation Holdback"), (iii) a contingent value right payment tied to certain performance metrics related to the Distribution Agreement for an aggregate value up to $3.25 per share (the "3.25 CVR") and (iv) a limited release of claims related to the A&R Merger Agreement.

On October 31, 2024, Mr. Foley spoke with a representative of Crown to discuss the October 30 Proposal.

On November 1, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions in light of Revance's entry into the Teoxane Agreements, which the Revance Board believed could potentially result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price.

Also on November 1, 2024, Revance filed a Form 8-K with the SEC (the "November 1 8-K"). The November 1 8-K reflected that in light of ongoing discussions with Crown regarding the Teoxane Agreements, Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to November 12, 2024 or such other date as may have been agreed to between Revance and Crown.

On November 4, 2024, Revance sent Crown a non-binding counter proposal to the October 30 Proposal (the "November 4 Proposal") which included, among other things, (i) a payment to stockholders at Closing of $5.50 per share in cash and (ii) a contingent value right payment for an aggregate value up to $2.00 per share, which tied the payment of such contingent value right directly to the Distribution Agreement remaining in place for each contract year.

Also on November 4, 2024, Mr. Foley spoke with a representative of Crown and received feedback from Crown that the November 4 Proposal was unacceptable.

On November 8, 2024, Mr. Foley received an oral counteroffer from a representative of Crown (the "November 8 Proposal"). The November 8 Proposal included, among other things, (i) a payment to stockholders at Closing of $3.00 per share in cash and (ii) removal of the Litigation Holdback concept and any contingent value right construct. Representatives of Crown indicated that they had removed the contingent value right construct due to the complexity of such construct.

On November 12, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions between the parties, which the Revance Board believed could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price.

Also on November 12, 2024, Revance filed a Form 8-K with the SEC (the "November 12 8-K"). The November 12 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to November 19, 2024 or such other date as may have been agreed to between Revance and Crown.

On November 14, 2024, Revance sent Crown a non-binding proposal (the "November 14 Proposal"), which included, among other things, (i) a payment to stockholders at Closing of $3.00 per share in cash (the "$3.00 Share Amount"), (ii) a contingent value right for an aggregate value up to $1.50 per share tied to the payment of such contingent value right directly tied to the Distribution Agreement remaining in place for the final two contract years, (iii) a Company Termination Fee equal to 4% of the equity value of Revance and a Parent Termination Fee equal to 6% of the equity value of Revance, both calculated based on the $3.00 Share Amount and (iv) a mutual full release of claims based in common law, tort, fraud, contract or domestic law, related to the Offer, the Merger, the A&R Merger Agreement and arising out of Revance's relationship with Teoxane.

On November 15, 2024, Revance received from Crown a non-binding proposal (the "November 15 Proposal") which included, among other things, (i) a payment to stockholders at Closing of $3.10 per share in cash (the "$3.10 Share Amount"), (ii) no contingent value right payment, (iii) an uncapped excess settlement fee amount payable upon Revance's payment of the Company Termination Fee and (iv) a limited release of claims related to the A&R Merger Agreement.

On November 16 and November 17, 2024, Mr. Foley had conversations with a representative of Crown, regarding, among other topics, the November 15 Proposal and Crown's one-week extension request.

On November 17, 2024, representatives of Revance had a conversation with representatives of Crown and indicated that the Revance Board would not move forward with a revised deal if the proposal (i) did not include a full waiver of claims and (ii) included the repayment of Crown's transaction fees in the event of an unsuccessful tender offer process.

On November 18, 2024, Revance sent Crown a non-binding proposal (the "November 18 Proposal") which included, among other things, (i) a payment to stockholders at Closing of $3.25 per share in cash (the "$3.25 Share Amount"), (ii) no contingent value right payment, (iii) no repayment of Crown's transaction fees in the event of an unsuccessful tender offer process, (iv) a Company Termination Fee equal to 4% of the equity value of Revance and a Parent Termination Fee equal to 6% of the equity value of Revance, both calculated based on the $3.25 Share Amount and (v) a mutual release of claims related to the A&R Merger Agreement.

Also on November 18, 2024, Mr. Foley had a conversation with a representative of Crown, regarding, among other topics, the November 18 Proposal.

Also on November 18, 2024, representatives of Skadden, on behalf of Revance, had a conversation with representatives of Kirkland, on behalf of Merger Sub and Crown and reaffirmed that the reimbursement of expenses and anything less than a full waiver of claims would not be acceptable to the Revance Board.

On November 19, 2024, Revance received an oral counteroffer from a representative of Crown (the "November 19 Proposal"). The November 19 Proposal included, among other things, (i) a payment to stockholders at Closing of $3.10 per share in cash, (ii) no contingent value right payment, (iii) no repayment of Crown's transaction fees in the event of an unsuccessful tender offer process and (iv) a full release of claims against Revance related to the Offer, the Merger, the Original Merger Agreement and/or any amendments thereto and Revance's relationship with Teoxane, including any contracts between Revance and Teoxane.

Also on November 19, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions between the parties, which could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price. Revance filed a Form 8-K with the SEC (the "November 19 8-K"). The November 19 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to November 26, 2024 or such other date as may have been agreed to between Revance and Crown.

On November 21, 2024, Skadden sent the initial draft of the A&R Merger Agreement to Kirkland, following which discussions and negotiations among representatives of Kirkland and Skadden continued until the signing of the A&R Merger Agreement on December 7, 2024. The parties exchanged revised drafts of the A&R Merger Agreement during this time and negotiated several key points, including the release of claims related to the A&R Merger Agreement.

On November 22, 2024, Skadden sent the initial draft of the amended and restated company disclosure letter (the "A&R Company Disclosure Letter") to Kirkland, following which discussions and negotiations among representatives of Kirkland and Skadden continued until the signing of the A&R Merger Agreement on December 7, 2024. The parties exchanged revised drafts of the A&R Company Disclosure Letter during this time.

Also on November 25, 2024, the U.S. District Court for the District of Delaware ruled in favor of Revance on the motion for summary judgment ("Allergan Summary Judgment") to exclude lost profits from the outstanding patent litigation with Allergan Pharmaceuticals Ireland ("Allergan"). The patent litigation with Allergan remains outstanding.

Also on November 25, 2024, Kirkland provided to Skadden the initial drafts of the Equity Commitment Letter and Limited Guarantee. Between November 25, 2024 and December 7, 2024, representatives of Skadden and Kirkland exchanged revised drafts of the Equity Commitment Letter and Limited Guarantee.

On November 26, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions between the parties, which could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price. Revance filed a Form 8-K with the SEC (the "November 26 8-K"). The November 26 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to November 29, 2024 or such other date as may have been agreed to between Revance and Crown.

On November 29, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions between the parties, which could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price. Revance filed a Form 8-K with the SEC (the "November 29 8-K"). The November 29 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to December 3, 2024 or such other date as may have been agreed to between Revance and Crown.

On December 1, 2024, the Revance Board held a meeting at which it, among other things, authorized Mr. Foley and certain of Revance's advisors to engage with Crown on the status of open items related to the A&R Merger Agreement.

On December 3, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions between the parties, which could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price. Revance filed a Form 8-K with the SEC (the "December 3 8-K").

The December 3 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to December 5, 2024 or such other date as may have been agreed to between Revance and Crown.

On December 4, 2024, the Revance Board held a meeting at which it, amongst other things, authorized its advisors to engage with Crown on the status of open items related to the A&R Merger Agreement and request additional time to evaluate the draft A&R Merger Agreement.

On December 5, 2024, Revance, Merger Sub and Crown agreed to extend the date by which Merger Sub was obligated to commence the Offer due to ongoing discussions between the parties, which could result in Revance, Merger Sub or Crown seeking remedies in accordance with, and modifications to the Original Merger Agreement, including the Original Offer Price. Revance filed a Form 8-K with the SEC (the "December 5 8-K"). The December 5 8-K reflected that Crown, Merger Sub and Revance agreed to extend the date by which Merger Sub was obligated to commence the Offer to December 9, 2024 or such other date as may have been agreed to between Revance and Crown.

On December 7, 2024, Revance, Merger Sub and Crown executed the A&R Merger Agreement and announced the Transactions.

On December 11, 2024, Revance, Merger Sub and Crown executed the Amendment to the A&R Merger Agreement (the "Amendment to the A&R Merger Agreement") to, among other things, clarify the mechanism for calculating the Expiration Time.

On December 12, 2024, Revance filed a Form 8-K with the SEC announcing the Amendment to the A&R Merger Agreement.

On December 12, 2024, Crown commenced the Offer.

**11. The A&R Merger Agreement; Other Agreements**

***A&R Merger Agreement***

The following is a summary of certain provisions of the A&R Merger Agreement. The summary does not purport to be complete and is qualified in its entirety by reference to the A&R Merger Agreement itself which has been filed as Exhibit (d)(1) to the Schedule TO and is incorporated herein by reference. Copies of the A&R Merger Agreement and the Schedule TO, and any other filings that Crown or Merger Sub makes with the SEC with respect to the Offer, may be obtained in the manner set forth in Section 8 — "Certain Information Concerning Crown, Merger Sub and Certain Related Parties" Stockholders and other interested parties should read the A&R Merger Agreement for a more complete description of the provisions summarized below. Capitalized terms used in this Section 11 and not otherwise defined in this Offer to Purchase have the respective meanings set forth in the A&R Merger Agreement.

The A&R Merger Agreement has been filed with the SEC and incorporated by reference herein to provide investors and stockholders with information regarding the terms of the A&R Merger Agreement. It is not intended to modify or supplement any factual disclosures about Crown, Merger Sub or Revance. The representations, warranties and covenants contained in the A&R Merger Agreement were made only as of specified dates for the purposes of such agreement, were solely for the benefit of Crown, Merger Sub and Revance and may be subject to qualifications and limitations agreed upon by Crown, Merger Sub and Revance. In particular, in reviewing the representations, warranties and covenants contained in the A&R Merger Agreement and any description thereof contained or incorporated by reference herein, it is important to bear in mind that such representations, warranties and covenants were negotiated with the principal purpose of allocating risk between Crown, Merger Sub and Revance, rather than establishing matters as facts. Such representations,

[PAGES OMITTED]

IN WITNESS WHEREOF, the Parties have caused this Amendment to be executed and delivered by their respective duly authorized officers as of the date first written above.

**CROWN LABORATORIES, INC.**

By: /s/ Jeffery A. Bedard
Name: Jeffrey A. Bedard
Title: Chief Executive Officer

**REBA MERGER SUB, INC.**

By: /s/ Jeffery A. Bedard
Name: Jeffrey A. Bedard
Title: Chief Executive Officer

**REVANCE THERAPEUTICS, INC.**

By: /s/ Mark Foley
Name: Mark J. Foley
Title: President & Chief Executive Officer

[*Signature Page to the Amendment to the A&R Merger Agreement*]