# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| IN RE REVANCE THERAPEUTICS, INC. SECURITIES LITIGATION | C.A. No. 3:25-cv-0018-EJR<br><br>District Judge Eli J. Richardson<br>Mag. Judge Jeffrey S. Frensley |

## <u>Reply In Support of Defendants' Motion to Dismiss</u>

Defendants Revance Therapeutics, Inc., Mark J. Foley, and Tobin C. Schilke respectfully

submit this Reply in Support of Defendants' Motion to Dismiss in support of Defendants' Motion

to Dismiss (ECF No. 51).

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT AND AUTHORITIES....................................................................................... 2

I.     Plaintiffs Do Not Plead An Actionable Misrepresentation Or Omission. ......................... 2

     A.     The Quarterly Earnings Statements Are Not Actionable...................................... 2

     B.     Neither the Merger Announcement Nor the August 28 or September 5 Statements Are Actionable. ................................................................................. 4

     C.     Defendants' Post-Breach-Notice Statements Are Not Actionable. ....................... 6

II.    Plaintiffs Do Not Plead A Strong Inference Of Scienter. ................................................... 7

     A.     Plaintiffs Fail to Allege "Divergence Between Internal Reports and External Statements" (Factor Two) or "Disregard of the Most Current Factual Information" (Factor Six)................................................................................. 7

     B.     Plaintiffs' "Temporal Proximity" (Factor Three) Arguments Fail. ........................ 8

     C.     Plaintiffs Do Not Allege "Bribery by a Top Company Official" (Factor Four)........................................................................................................ 9

     D.     There Was No "Ancillary Lawsuit Charging Fraud" (Factor Five). ..................... 9

     E.     Plaintiffs Do Not Allege Misleading "Accounting Information" (Factor Seven). ...................................................................................................... 9

     F.     Plaintiffs Fail to Allege "Self-Interested Motivation" (Factor Nine). .................. 10

III.   Plaintiffs Do Not Plead "Scheme" Or "Control Person" Liability. ................................. 10

CONCLUSION.................................................................................................................... 10

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Chamberlain v. Reddy Ice Holdings, Inc.*,
  757 F. Supp. 2d 683 (E.D. Mich. 2010)................................................................................4, 6

*City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ..................................................................................................6

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014).....................................................................................................5

*Doshi v. Gen. Cable Corp.*,
  823 F.3d 1032 (6th Cir. 2016) .............................................................................................2, 9

*Dougherty v. Esperion Therapeutics, Inc.*,
  905 F.3d 971 (6th Cir. 2018) ..................................................................................................8

*Franchi v. SmileDirectClub, Inc.*,
  633 F. Supp. 3d 1046 (M.D. Tenn. 2022)................................................................................7

*Frank v. Dana Corp.*,
  646 F.3d 954 (6th Cir. 2011) ..................................................................................................8

*Freeburg v. Wolf*,
  42 F. App'x 715 (6th Cir. 2002) ..............................................................................................5

*Grae v. Corrections Corp. of Am.*,
  2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017).....................................................................7

*Helwig v. Vencor, Inc.*,
  251 F.3d 540 (6th Cir. 2001) ........................................................................................3, 5, 7, 9

*In re CBL & Assocs. Props., Inc. Sec. Litig.*,
  2022 WL 1405415 (E.D. Tenn. May 3, 2022).........................................................................4

*In re FirstEnergy Corp.*,
  2022 WL 681320 (S.D. Ohio Mar. 7, 2022)..........................................................................10

*In re Ford Motor Co. Sec. Litig.*,
  381 F.3d 563 (6th Cir. 2004) ..................................................................................................3

*In re Huntington Bancshares Inc. Sec. Litig.*,
  674 F. Supp. 2d 951 (S.D. Ohio 2009) ................................................................................8, 9

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ..............................................................................7, 10

*In re Sofamor Danek*,
123 F.3d 394 (6th Cir. 1997) ..............................................................................3, 5

*Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, *("ISDC")*,
583 F.3d 935 (6th Cir. 2009) ..............................................................................3, 4

*Konkol v. Diebold, Inc.*,
590 F.3d 390 (6th Cir. 2009) ..........................................................................7, 8, 9

*Lim v. Hightower*,
2025 WL 2965692 (6th Cir. Oct. 21, 2025)........................................................3, 5

*La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*,
622 F.3d 471 (6th Cir. 2010) .................................................................................1

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024)................................................................................................3

*Padilla v. Community Health Systems, Inc.*,
2022 WL 3452318 (M.D. Tenn. Aug. 17, 2022) .....................................................4

*Pittman v. Unum Grp.*,
861 F. App'x 51 (6th Cir. 2021) .............................................................................2

*Plymouth Cty. Ret. Assoc. v. Viewray, Inc.*,
556 F.Supp.3d 772 (N.D. Ohio 2021)...................................................................10

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ...............................................................................10

*Sarafin v. BioMimetic Therapeutics, Inc.*,
2013 WL 139521 (M.D. Tenn. Jan. 10, 2013), *aff'd, sub nom. Kuyat v. BioMimetic Therapeutics, Inc.*,747 F.3d 435 (6th Cir. 2014).................................................8

*Teamsters, Local 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*,
83 F.4th (6th Cir. 2023) ......................................................................................9, 10

*Zaluski v. United Am. Healthcare Corp.*,
527 F.3d 564 (6th Cir. 2008) ..............................................................................3, 4

Case 3:25-cv-00018     Document 57     Filed 12/05/25     Page 4 of 16 PageID #: 2021

## PRELIMINARY STATEMENT

Plaintiffs' Response[1] confirms that Plaintiffs' theory of securities fraud just does not add up—it is untethered from Defendants' *actual* statements, and unsupported by competent factual allegations. For example, Plaintiffs argue that the Quarterly Earnings Statements were misleading—*though Plaintiffs concede they are factually accurate*—because Revance failed to disclose that it had obtained its sales via allegedly illegal marketing practices. Resp. at 2, 16-22. But no legal or regulatory authority has ever accused Revance of violating any law or regulation (not to mention proven any such accusation), and Plaintiffs do not allege otherwise. Plaintiffs also continue to mischaracterize Revance's summary of "terms" of the Merger Agreement in 2024 Q3 disclosures as a "false[] asser[tion]" that the Tender Offer "will commence" at $6.66 per share. Resp. at 3. Yet Defendants unequivocally informed investors in those same disclosures of the "significant risks and uncertainties" associated with the Tender Offer, including that it may not be completed at all or that it could be completed at a different price. *See, e.g.*, ECF No. 53-19 at 53.

At bottom, this is a "classic fraud by hindsight case" that the PSLRA prohibits. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 484 (6th Cir. 2010). The PSLRA prohibits fraud based on the premise "that the fact that something turned out badly must mean defendant knew earlier that it would turn out badly." *Id.* Plaintiffs argue that because Teoxane served Revance with a Breach Notice alleging unproven, curable contractual breaches on August 16, 2024, Defendants' preceding Quarterly Earnings Statements must have been fraudulent. Resp. at 16. Similarly, Plaintiffs argue that Defendants must have fraudulently induced *Crown* to enter into

---

[1] Throughout this Reply, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 54) is referred to as the "Response" or "Resp.," and the Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF No. 52) is referred to as the "Memo." Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Memo, all emphasis is added, and internal citations and quotation marks are omitted.

the Merger Agreement on August 12, 2024, because Revance and Crown later amended that agreement to reflect a lower price. And, according to Plaintiffs, Defendants must have known that the merger would never close on the terms originally agreed to and defrauded investors by failing to divulge that knowledge. All "these allegations amount to impermissible fraud by hindsight." *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1044 (6th Cir. 2016).

Instead, considered holistically, the most cogent and compelling inference from the facts alleged is "more consistent with a company playing a constant game of catch-up than with fraud." *Pittman v. Unum Grp.*, 861 F. App'x 51, 57 (6th Cir. 2021). The more plausible inference from the Complaint is that Defendants did not believe Revance was materially breaching the Teoxane Agreement leading up to the Crown deal (through purported legal violations or otherwise) and then reacted in real-time to subsequent developments, including Teoxane's Breach Notice and the ensuing negotiations with Teoxane and Crown. While the ultimate tender offer price was not as favorable as the one originally agreed, the federal securities laws do not operate as a hedge against investment losses. Accordingly, Defendants request dismissal of the Complaint with prejudice.

**ARGUMENT AND AUTHORITIES**

**I.     Plaintiffs Do Not Plead an Actionable Misrepresentation or Omission.**

**A.     The Quarterly Earnings Statements Are Not Actionable.**

Plaintiffs maintain that the Quarterly Earnings Statements were false because "Revance was in material breach of [the Teoxane] Agreement." Resp. at 16. Despite Plaintiffs' claims of "falsity," Plaintiffs clearly are asserting an omission-based claim because they identify no affirmative statement that was objectively false.[2] Memo at 12. Thus, Plaintiffs must plead specific

---

[2] Plaintiffs stating that they "do not allege that Defendants are liable for any pure omissions," Resp. at 19, n. 7, is simply an attempt by Plaintiffs to argue themselves out of a legal standard they cannot satisfy.

2

facts showing that Defendants' statements "omitt[ed] critical qualifying information." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 263 (2024). They have not.

As a threshold matter, Plaintiffs fail to explain how Defendants' generic characterizations of the RHA Collection's share growth as "healthy" or the Teoxane relationship as "nice," for example, Compl. ¶¶ 149, 153, are any more objective or "concrete," Resp. at 22, than the statements that the Sixth Circuit has found to be inactionable corporate optimism. *See* Memo at 12-13*; Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 574-75 (6th Cir. 2008); *In re Ford Motor Co. Sec. Litig.,* 381 F.3d 563, 570-71 (6th Cir. 2004).[3]

Nor can Plaintiffs escape that the alleged omissions concern quintessential "soft" information (*i.e.*, alleged contractual breaches and legal violations) for which there is no disclosure duty. *See* Memo at 13-16 (citing *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009) ("*ISDC*"); *Zaluski*, 527 F.3d at 567, 574-75; *In re Sofamor Danek*, 123 F.3d 394, 400-02 (6th Cir. 1997))*; see also Lim v. Hightower*, 2025 WL 2965692, *9 (6th Cir. Oct. 21, 2025) (affirming dismissal of claim alleging that company failed to disclose its receipt of a letter accusing it of breaching joint venture agreement). Plaintiffs cannot brush aside *ISDC*, *Sofamor Danek*, *Zaluski,* and the recently decided *Lim*—which are on point and controlling—by proclaiming without any supporting authority that the "alleged contractual breaches" here were a "hard reality" triggering a disclosure duty. Moreover, Plaintiffs allege that Teoxane did not even serve the Breach Notice (much less a termination notice) until *after* Defendants made the Quarterly Earnings Statements. Compl. ¶ 61. Resp. at 20. Moreover, this case presents a stronger case for dismissal than did *ISDC* and *Zaluski*

---

[3] Plaintiffs erroneously rely on *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001). *See* Resp. at 21. That case concerned allegedly misleading "earnings projections," *Helwig*, 251 F.3d at 554, and not unverifiable, "generalized statements of optimism." *Ford Motor Co.*, 381 F.3d at 570.

3

because none of the Quarterly Earnings Statements concern Revance's legal or contractual compliance. *ISDC*, 583 F.3d at 945-46; *Zaluski*, 527 F.3d at 568.[4]

Finally, Plaintiffs are wrong to assert that Defendants misleadingly attributed the success of the RHA Collection to product quality and the "team's ability to execute." Resp. at 16-19.[5] Contrary to Plaintiffs' contention, Defendants' statements undeniably were "opinions." *Id.* at 18 n.5; *see, e.g.*, Compl. ¶ 156 ("*[W]e believe* when we go in or able to win business, we win . . . based on the quality of the product."). And Plaintiffs do not plead, as they must, facts showing that Defendants *knew* these statements were false when made. *See* Memo at 25-27. Moreover, describing Teoxane as "very well known, highly regarded," Compl. ¶ 156, hardly qualifies as "touting" a "key relationship," distinguishing Plaintiffs' cases. *See* Resp. at 19-20.[6]

### B. Neither the Merger Announcement Nor the August 28 or September 5 Statements Are Actionable.

Next, Plaintiffs assert that Defendants "falsely claimed [Revance was] in full compliance with the Teoxane Agreement while concealing the [Breach] Notice from investors for weeks."

---

[4] The cases that Plaintiffs cite are distinguishable for this reason. *See, e.g.*, *In re CBL & Assocs. Props., Inc. Sec. Litig.*, 2022 WL 1405415, *7 (E.D. Tenn. May 3, 2022) (company stated that pending RICO class action was "without merit" even though court had already "ruled that the class plaintiffs' claims were sufficient to withstand summary judgment"); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 693 (E.D. Mich. 2010) (defendants "expressly disavow[ed]" entering into anticompetitive agreements and attributed financial success to "lawful competition").

[5] Plaintiffs' allegations that Revance's sales practices violated FDA regulations are entirely conclusory. The Complaint contains no allegations that the FDA or any legal authority challenged Revance's alleged marketing and sales practices—no allegation of an investigation, a warning letter, a lawsuit, or criminal charges, let alone adjudication of the practices. The unverified opinions of certain low-level former employees do not satisfy the PSLRA's demand for particularized facts. *See* Memo at 26-27.

[6] This case is a far cry from *Padilla v. Community Health Systems, Inc.*, 2022 WL 3452318 (M.D. Tenn. Aug. 17, 2022), where the company stated "[w]e believe that we collect substantially all of our third-party insured receivables" despite being aware of "growing problems with [certain] aged receivables," "debts related to co-pays and deductibles," and "disputed payments from third-party payors." *Id.* at *22-23.

Resp. at 16. Plaintiffs tie this theory of fraud to Revance's representation *to Crown* in the Merger Agreement that Revance was in compliance with its "Material Contracts." *Id.* at 22. But the allegations in the Breach Notice are just that: *allegations*; they are not proof that Revance had breached the Teoxane Agreement at all, much less that Revance lied to Crown in the Merger Agreement *prior* to receiving the Breach Notice. Plaintiffs also do not (and cannot) dispute that "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *see also Sofamor Danek*, 123 F.3d at 401.[7]

And in erroneously asserting that Revance should have disclosed the Breach Notice upon receipt, Resp. at 23-25, Plaintiffs again fail to grapple with Sixth Circuit precedent—this time, *Freeburg v. Wolf*, 42 F. App'x 715 (6th Cir. 2002). Indeed, the Sixth Circuit recently affirmed that there is no duty to disclose receipt of a letter from a contractual counterparty asserting breach of contract that "precipitated negotiations" and "quickly resulted in a new agreement." *Lim*, 2025 WL 2965692, at *9 ("[O]nly upon the execution of the [amended agreement] did the outcome of the negotiations become as certain as hard facts.") (quoting *Freeburg*, 42 F. App'x at 716). As for Plaintiffs' "half-truth" theory, neither the August 28 nor September 5 statements said anything about the Teoxane relationship or provided assurances about the Crown deal. *Cf. Helwig*, 251 F.3d at 560 (defendants chose to "speak[] on an emerging issue"). Moreover, the August 28 extension disclosure reiterated previously disclosed risks related to "the expected timing of the offer and the merger" and "the possibility that the merger will not be completed." ECF No. 53-12 at 3.

---

[7] Equally meritless is Plaintiffs' contention that Revance's entry into the Amended Teoxane Agreements on October 28, 2024, and Amended and Restated Agreement and Plan of Merger on December 9, 2024, are proof of Revance's breaches of the Teoxane Agreement. Resp. at 23.

## C.     Defendants' Post-Breach-Notice Statements Are Not Actionable.

Despite Plaintiffs' claim that Defendants "falsely represented that the Tender Offer remained on track at the original offer price," Resp. at 16, no reasonable investor reviewing the ***ten announced extensions*** between August 28 and December 9 could have been misled into believing that the Tender Offer was on track—a representation that Revance *never* made. *See* Compl. ¶¶ 64, 68, 73, 90, 94, 102, 107. Indeed, Revance repeatedly disclosed that the extensions were "in light of" ongoing discussions between Revance, Crown, and Teoxane, *id.* ¶ 176, and that these discussions "could result in further delays" or Crown seeking "modifications to[] the terms of the Merger Agreement, including offer price," *e.g.*, *id.* ¶¶ 184, 187, 192.[8]

Plaintiffs' claims also are belied by the transparent, robust risk disclosure contained in Revance's November 7, 2024 Form 10-Q, which the Response ignores. *Compare* Memo at 20, *with* Resp. at 25-27. Notably, and again contrary to the Response (at 25), this quarterly report disclosed both the terms of the Amended Teoxane Agreements and Revance's belief that there was "substantial doubt about [its] ability to continue as a going concern." ECF No. 53-19 at 48, 53. Plaintiffs cannot state a claim by contorting Revance's disclosures to say something that they do not. *Compare* Resp. at 26, *with* Memo at 22. Indeed, Revance *never* stated, much less "repeatedly," that "the Tender Offer was set to commence imminently" at $6.66 per share. Resp. at 27. Nor can Plaintiffs state a claim by continuing to disregard Sixth Circuit precedent. *Compare* Memo at 20-

---

[8] To be clear, Revance was under no duty to disclose the details of those ongoing discussions so long as the outcome remained unclear or undetermined, even if an investor might have been interested in the details. *Chamberlain,* 757 F. Supp. 2d at 707 ("a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact"). Limitations on the duty to disclose are necessary because "corporations might otherwise face potential second-guessing in a subsequent disclosure suit, a regime that would threaten to deluge investors with marginally useful information and would damage corporations' legitimate needs to keep some information nonpublic." *City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005).

21 (collecting apposite Sixth Circuit cases), *with* Resp. at 26-27.[9]

## II. Plaintiffs Do Not Plead a Strong Inference of Scienter.

Plaintiffs do not contest that they must "plead sufficient facts showing that [Revance] or the Individual Defendants" made the alleged misrepresentations "*knowing* they were false, with the intent to defraud the public." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 481 (6th Cir. 2014). But Plaintiffs do not do so, and the Response's attempt to shoehorn the Complaint's thin scienter allegations into unsupported interpretations of "seven of the nine *Helwig* factors" likewise fails. *See* Resp. at 28.[10]

### A. Plaintiffs Fail to Allege "Divergence Between Internal Reports and External Statements" (Factor Two) or "Disregard of the Most Current Factual Information" (Factor Six).

Repetition of conclusory averments—including that the purported FDA violations and contractual breaches were "widespread," "well-known," and "Company-wide," Resp. at 2, 6, 9, 29, 32, 36—is no substitute for particularized "facts demonstrating that the Individual Defendants had actual knowledge" that their statements were false. *Omnicare*, 769 F.3d at 483. "[G]eneral statements" that an alleged scheme was "perpetrated at a high level" and "openly known within the Company" "cannot substitute for *specific* facts" supporting scienter. *Konkol v. Diebold, Inc.*, 590 F.3d 390, 401 (6th Cir. 2009) (emphasis in original). Here, as in *Konkol*, "[n]owhere in the

---

[9] Unlike in *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046 (M.D. Tenn. 2022), Revance did not merely issue "general cautionary language." *Id.* at 1075. Revance specifically—and repeatedly—disclosed that the Tender Offer had been delayed and that it might not proceed on the terms originally agreed—or at all. *See* Memo at 19-21. For similar reasons, *Grae v. Corrections Corp. of Am.*, 2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017), is distinguishable. *See id.* at *17 (company claimed that "history of quality services had earned it the confidence of its government partners" despite knowing that government had "a low assessment" of its services).

[10] Plaintiffs concede by omission that they do not plead suspicious "insider trading" (*Helwig* factor one) or "the personal interest of certain directors" in failing to disclose "an impending sale of stock" (*Helwig* factor eight).

complaint . . . are any specific facts alleged that connect the Defendants to the [alleged kickback] scheme." *Id.*

Plaintiffs' reliance on the "FE" allegations is misplaced. For instance, the Response leans heavily on FE 3, a low-level regional sales manager for Los Angeles County who is not alleged to have had any contact with the Individual Defendants or insight into Revance's company-wide business practices. Compl. ¶¶ 124-28, 142. The same is true for FE 1, a low-level product manager. *Id.* ¶¶ 119-23, 129. Confidential witnesses who are "not identified as having *any* contact or interaction with any of the Defendants" do not support scienter. *Konkol*, 590 F.3d at 401.[11] As for the purported "high-ranking FEs" (two former Vice Presidents), FE 2 left Revance *before* the Class Period started, and FE 5 left only days or weeks after the Class Period started. *Id.* ¶¶ 121 n.3, 137. These confidential witnesses "could not have known what was in [Revance's] corporate mind at the time it issued the challenged statements." *Sarafin v. BioMimetic Therapeutics, Inc.*, 2013 WL 139521, at *19 (M.D. Tenn. Jan. 10, 2013), *aff'd*, *sub nom. Kuyat v. BioMimetic Therapeutics, Inc.,* 747 F.3d 435 (6th Cir. 2014).[12]

### B.     Plaintiffs' "Temporal Proximity" (Factor Three) Arguments Fail.

Plaintiffs next argue that Revance must have known that the representations it made to

---

[11] *See also In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 960 (S.D. Ohio 2009) (to be reliable, the "who, what, when, where, and how a confidential witness knew of information should be definite").

[12] Plaintiffs' case law shows what the Complaint lacks. For example, in *Dougherty v. Esperion Therapeutics, Inc.*, the company issued a press release concerning an "FDA approval process" that contradicted information "executives" learned at an earlier meeting with the FDA, as reflected in "the FDA's [meeting] minutes." 905 F.3d 971, 981 (6th Cir. 2018). And in *Frank v. Dana Corp.*, the plaintiffs identified specific reports that the defendants actually received and discussed at specific meetings "showing that Dana was under financial distress" that contradicted the defendants "positive statements regarding Dana's financial health." 646 F.3d 954, 959 (6th Cir. 2011). No similar facts are alleged here.

Crown in the merger agreement were false because Teoxane sent the Breach Notice four days later. Resp. at 33-34. But "temporal proximity between an alleged fraudulent statement and a later disclosure, without more, is nothing more than fraud by hindsight." *Huntington Bancshares*, 674 F. Supp. 2d at 973. "Because [Plaintiffs] . . . do not allege any specific facts establishing that the Defendants knew . . . the falsity of their statements, the proximity of the [alleged] inconsistent statements is not sufficient to support a strong inference of scienter." *Konkol*, 590 F.3d at 401.

**C.      Plaintiffs Do Not Allege "Bribery by a Top Company Official" (Factor Four).**

Despite Plaintiffs' efforts to contort the fourth *Helwig* factor, Resp. at 36, Plaintiffs do not allege "bribery *by a top company official*," even if the Complaint could be read to allege bribery at all. *Teamsters*, *Local 237 Welfare Fund v. ServiceMaster Global Holdings, Inc.*, 83 F.4th at 514, 526 (6th Cir. 2023). The Complaint contains no specific details about any top company official.

**D.      There Was No "Ancillary Lawsuit Charging Fraud" (Factor Five).**

Plaintiffs admit that "Revance's disputes with Crown and Teoxane never escalated to litigation," Resp. at 35, much less "an ancillary lawsuit *charging fraud*." *Teamsters*, 83 F.4th at 526. Unsurprisingly, Plaintiffs cite no authority applying this *Helwig* factor to curable allegations of a contractual breach or revised deal terms based on changed circumstances. *Cf. Konkol*, 590 F.3d at 402 (noting that even a DOJ investigation "is not sufficient . . . on its own").

**E.      Plaintiffs Do Not Allege Misleading "Accounting Information" (Factor Seven).**

For the first time in the Response, Plaintiffs contend that "Defendants deliberately failed to account for the free samples and gifts that Revance gave to doctors," Resp. at 36, but cite no corresponding factual allegation in the Complaint disclosing "accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication." Plaintiffs asserting, *in the Response* no less*, that Defendants merely "failed to account for" certain alleged "free samples" is insufficient. *See Doshi*, 823 F.3d at 1042.

9

**F.** **Plaintiffs Fail to Allege "Self-Interested Motivation" (Factor Nine).**

Plaintiffs argue that the Individual Defendants were motivated to defraud Crown and the public to save their jobs and salaries and because they would have received more money if they were cashed out at the initial $6.66 deal price than they did when they were cashed out at $3.65. Resp. 34-35. This is true for every stockholder and not indicative of scienter. *See Plymouth Cty. Ret. Assoc. v. Viewray, Inc*., 556 F.Supp.3d 772, 800 (N.D. Ohio 2021); *see also Omnicare*, 769 F.3d at 484 (a "general interest in being paid" does not support scienter). Nor do motives shared by "[a]ll corporate managers," such as "a desire for their companies to appear successful." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004).

**III.** **Plaintiffs Do Not Plead "Scheme" or "Control Person" Liability.**

Scheme liability claims must be "different and separate from a nondisclosure claim." *Teamsters*, 83 F.4th at 525. Yet Plaintiffs do not (and cannot) cite to a single paragraph of the Complaint to support their cursory one-sentence argument that "Defendants *fraudulently inflated Revance's sales and revenue* by illegally inducing purchases through free samples that were intended for resale and other gifts." Resp. at 37. This failure to plead particularized factual allegations is fatal.[13] Finally, Plaintiffs' failure to plead any Section 10(b) claim compels dismissal of their Section 20(a) claim. *See* Memo at 34.

**CONCLUSION**

For these reasons and those in the Memo, Defendants respectfully request that the Complaint be dismissed.

---

[13] *Cf. In re FirstEnergy Corp*., 2022 WL 681320, *14 (S.D. Ohio Mar. 7, 2022) (permitting scheme liability claim to proceed because the complaint "referenc[ed] specific criminal charges actually brought against [] alleged co-conspirators" and "identifie[d] specific actors, dollar amounts, phone contacts, meetings, and methods of concealment").

Dated: December 5, 2025                    Respectfully submitted:


**BAKER, DONELSON, BEARMAN,**          **RILEY & JACOBSON, PLC**
 **CALDWELL & BERKOWITZ, PC**

*/s/ Christopher E. Thorsen*                    */s/ Milton S. McGee, III*
Christopher E. Thorsen (BPR 21049)      Milton S. McGee, III (BPR 024150)
1600 West End Avenue, Suite 2000         1960 West End Avenue Nashville,
Nashville, Tennessee 37203                    TN 37203
(615) 726-5600                                     (615) 320-3700
cthorsen@bakerdonelson.com                tmcgee@rjfirm.com


**SKADDEN, ARPS, SLATE,**              **KIRKLAND & ELLIS LLP**
 **MEAGHER & FLOM LLP**
Susan L. Saltzstein (*pro hac vice*)         */s/ Jordan D. Peterson*
Jeffrey S. Geier (*pro hac vice*)             Jordan D. Peterson, P.C. (*pro hac vice*)
Christopher R. Fredmonski (*pro hac vice*)  601 Lexington Avenue
One Manhattan West                            New York, NY 10022
New York, New York 10001                    (212) 446-4800
(212) 735-3000                                     jordan.peterson@kirkland.com
susan.saltzstein@skadden.com
jeffrey.geier@skadden.com                    *Counsel for Defendant Revance*
christopher.fredmonski@skadden.com       *Therapeutics, Inc.*


**SKADDEN, ARPS, SLATE,**
 **MEAGHER & FLOM LLP**
Jenness E. Parker (*pro hac vice*)
One Rodney Square
920 N. King St.
Wilmington, Delaware 19801
(302) 651-3000
jenness.parker@skadden.com

*Counsel for Defendants Mark J. Foley*
*and Tobin C. Schilke*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2025, I electronically filed a copy of the foregoing document with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to all parties registered with the Court's electronic filing system.

*/s/ Jordan D. Peterson*