**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| IN RE REVANCE THERAPEUTICS, INC. SECURITIES LITIGATION | C.A. No. 3:25-cv-0018-EJR<br><br>District Judge Eli J. Richardson<br>Mag. Judge Jeffery S. Frensley |

# MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS

EC.00144787.1

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 4

A. Lead Counsel Are Entitled to an Award of Fees from the Common Fund .......... 4

B. The Court Should Award Attorneys' Fees Using the Percentage Approach .......... 4

C. The Requested Fee of 30% Is Comparable to Awards in Similar Cases .......... 5

D. Lead Counsel's Fee Request Is Fair and Reasonable under Sixth Circuit Authority .......... 7

1. The Value of the Benefit Achieved .......... 8

2. The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee .......... 11

3. The Contingent Nature of Counsel's Representation Supports the Fee Request .......... 13

4. Society's Interest in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee .......... 14

5. The Complexity of the Litigation Supports the Requested Fee .......... 14

6. The Quality of Representation Supports the Requested Fee .......... 15

E. Plaintiffs' Counsel's Expenses Should Be Reimbursed Because They Are Reasonable and Were Necessarily Incurred in the Prosecution of the Action .......... 16

F. Lead Plaintiffs' Reimbursement Should Be Approved .......... 18

III. CONCLUSION .......... 18

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arp v. Hohla & Wyss Enters., LLC,*
2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) .......... 12

*Barnes v. Winking Lizard, Inc.*,
2019 WL 1614822 (N.D. Ohio Mar. 26, 2019) .......... 11, 13

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) .......... 14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) .......... 14

*Bd. of Trs. of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*,
2013 WL 12239522 (E.D. Mich. Dec. 27, 2013) .......... 4, 17

*BleachTech LLC v. United Parcel Service, Inc.,*
2022 WL 2900796 (E.D. Mich. July 20, 2022) .......... 6

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) .......... 4

*Cheng Jiangchen v. Rentech, Inc*.,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......... 8, 16

*Ciarciello v. Bioventus Inc.*,
760 F. Supp. 3d 377 (M.D.N.C. 2024) .......... 8

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*,
2024 WL 6446751 (E.D. Tenn. Sept. 10, 2024) .......... 6

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) .......... *passim*

*Gokare v. Fed. Express Corp.*,
2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013) .......... 5

*Grae v. Corrections Corp. of America*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) .......... 5

*Gross v. GFI Grp., Inc.,*
784 F. App'x. 27 (2d Cir. 2019) .......... 10

*Hefler v. Wells Fargo & Co.,*
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......... 14

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........ 8

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........ 10

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ........ 9

*In re Caraco Pharm. Lab'ys., Ltd. Sec. Litig.*,
2013 WL 3213328 (E.D. Mich. June 26, 2013) ........ 6

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ........ 4, 17

*In re Chevrolet Bolt EV Battery Litig.*,
2025 WL 3708892 (E.D. Mich. Dec. 22, 2025) ........ 12

*In re Envision Healthcare Corp. Sec. Litig.*,
2024 WL 1270007 (M.D. Tenn. Mar. 21, 2024) ........ 5, 13

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ........ 15

*In re Home Point Cap. Inc. Sec. Litig.*,
2024 WL 3273275 (E.D. Mich. June 28, 2024) ........ *passim*

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ........ 9

*In re Prandin Direct Purchaser Antitrust Litig.*,
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ........ 6

*In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*,
2016 WL 7735229 (E.D. Tenn. Dec. 12, 2016) ........ 6

*In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig.*,
2016 WL 8290089 (W.D. Tenn. Aug. 2, 2016) ........ 6, 10

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........ 5, 6, 17

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 2946459 (E.D. Tenn. June 30, 2014) ........ 6

*Jorling v. Anthem, Inc.*,
836 F. Supp. 2d 821 (S.D. Ind. 2011) ........ 9

*Kritzer v. Safelite Solutions, LLC*,
2012 WL 1945144 (S.D. Ohio May 30, 2012) ........ 13

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014)........................................................................................ 9

*Lucyk v. Materion Brush Inc.,*
2023 WL 4405280 (N.D. Ohio July 7, 2023)........................................................................ 12

*Newtyn Partners, LP v. All. Data Sys. Corp.*,
165 F.4th 947 (6th Cir. 2026)........................................................................................ 9

*Padilla v. Cmty. Health Sys., Inc.*,
2023 WL 7018392 (M.D. Tenn. Oct. 20, 2023)........................................................ *passim*

*Palazzolo v. Fiat Chrysler Automobiles N.V.*,
2019 WL 2957143 (E.D. Mich. June 5, 2019)........................................................................ 6

*Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*,
2022 WL 17582004 (E.D. Mich. Dec. 12, 2022)........................................................ *passim*

*Pinto v. Princess Cruise Lines, Ltd*.,
513 F. Supp. 2d 1334 (S.D. Fla. 2007)........................................................................ 8

*Pio v. Gen. Motors Co.*,
2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ........................................................................ 10

*Ramey v. Cincinnati Enquirer, Inc.*,
508 F.2d 1188 (6th Cir. 1974)........................................................................................ 7

*Thacker v. Chesapeake Appalachia, L.L.C.*,
695 F. Supp. 2d 521 (E.D. Ky. 2010) ........................................................................ 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
396 F.3d 96 (2d Cir. 2005)........................................................................................ 5

*Zimmerman v. Diplomat Pharmacy, Inc.*,
2019 WL 3942483 (E.D. Mich. Aug. 20, 2019) ........................................................ 3, 6

Court-appointed lead counsel, Entwistle & Cappucci LLP ("Entwistle & Cappucci") and Saxena White P.A. ("Saxena White," and together with Entwistle & Cappucci, "Lead Counsel"), respectfully submit this memorandum of law in support of their Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards.[1]

## I. INTRODUCTION

Lead Counsel secured a $17,000,000 non-reversionary, all-cash Settlement for the benefit of the Settlement Class—an exceptional recovery achieved in the face of substantial litigation risks. This result reflects Lead Counsel's strategic judgment, persistence, and high level of skill throughout the Action. In light of this outcome, Lead Counsel respectfully move for an award of attorneys' fees of 30% of the Settlement Fund (*i.e.*, $5,100,000, plus accrued interest), and reimbursement of $183,112.29 in Litigation Expenses. These expenses include $173,112.29 in out-of-pocket costs reasonably and necessarily incurred in prosecuting the Action, and an aggregate of $10,000 to Court-appointed Lead Plaintiffs for reasonable costs—including time expended—in representing the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u(a)(4).

As detailed below and in the accompanying Joint Declaration, the Settlement provides an excellent recovery to the Settlement Class. Absent this resolution, the case would have

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated March 20, 2026 (the "Stipulation," ECF No. 62-1). Unless otherwise indicated, all capitalized terms herein shall have the meanings provided in the Stipulation, or in the concurrently filed Joint Declaration of Jonathan D. Lamet and Andrew J. Entwistle in Support of: Lead Plaintiffs' (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards ("Joint Decl." or "Joint Declaration"). All citations to "¶ __" or to "Ex. __" in this memorandum refer, respectively, to paragraphs in or exhibits to the Joint Declaration. Unless otherwise indicated, all internal citations are omitted and all emphasis is added.

proceeded for years through motion practice, class certification, extensive fact and expert discovery, summary judgment, trial, and likely appeals.

From the outset, Lead Counsel confronted formidable challenges. Defendants were represented by highly skilled counsel, and the case presented substantial hurdles, including the PSLRA's heightened pleading standards and automatic discovery stay, the complexity of the securities fraud claims, the need for extensive expert analysis, and the significant costs associated with prosecuting such an action—all against the backdrop of a very real risk of no recovery whatsoever.

Despite these obstacles, Lead Counsel devoted substantial time, resources, and expertise to the prosecution of this case. Counsel conducted a comprehensive investigation both before and after filing, including interviews with former Revance employees, Revance customers, and pharmaceutical industry professionals, and an exhaustive review and analysis of Securities and Exchange Commission ("SEC") filings, earnings calls, press releases, analyst reports, and industry publications. Counsel also explored multiple avenues of relief, including preparing and pursuing a books-and-records strategy to develop potential state-law claims, before determining—based on evolving disclosures, factual development, and legal analysis—that a federal securities class action under Section 10(b) offered the strongest path to recovery.

Following appointment, Lead Counsel drafted a detailed, 87-page Consolidated Complaint grounded in this extensive factual investigation. Counsel then engaged in adversarial motion practice, including fully briefing Defendants' motion to dismiss, which required careful marshaling of facts, law, and competing inferences under the PSLRA's exacting standards. Lead Counsel then prepared comprehensive mediation submissions that rigorously analyzed liability, loss causation, damages, and the significant litigation risks, participated in a full-day, arm's-

length mediation before an experienced neutral mediator, and continued settlement negotiations thereafter until the Settlement was reached.

These efforts combined deep factual development, sophisticated legal analysis, and strategic advocacy, which culminated in an agreement to resolve the Action for $17,000,000 in cash. Thereafter, Lead Counsel continued their substantial efforts to bring the Settlement to fruition, including working closely with a damages expert to develop the Plan of Allocation, negotiating the terms of the Stipulation and its detailed provisions, coordinating with the Claims Administrator to ensure effective notice to the Settlement Class, and preparing the preliminary and final approval submissions presented to the Court.

Against this backdrop, Lead Counsel achieved a prompt, meaningful, and certain recovery, eliminating the substantial uncertainty, delay, and expense inherent in continued litigation. The requested fee of 30% of the Settlement Fund is, therefore, fair, and reasonable and consistent with awards in comparable complex PSLRA class actions routinely granted in this District and throughout the Sixth Circuit. *See*, *e.g*., *Padilla v. Cmty. Health Sys., Inc.*, 2023 WL 7018392, at *1 (M.D. Tenn. Oct. 20, 2023) (Richardson, J.) (granting 33⅓% of a $9.5 million settlement); *Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at *5 (E.D. Mich. Dec. 12, 2022) (awarding 30% fee of a $12 million settlement); *Zimmerman v. Diplomat Pharmacy, Inc.*, 2019 WL 3942483, at *1 (E.D. Mich. Aug. 20, 2019) (awarding "fees of 30% of the $14.1 million Settlement Amount").

Underscoring that Lead Counsel's request is fair and reasonable, the requested 30% fee reflects a 1.27 lodestar multiplier, which is at the low end of the "1.3 to 4.5" range Courts in the Sixth Circuit approve in "large post-PSLRA securities class action[s]." *In re Home Point Cap. Inc. Sec. Litig.*, 2024 WL 3273275, at *7 (E.D. Mich. June 28, 2024). The requested Litigation

Expenses are likewise reasonable and were necessarily incurred in achieving this result and likewise warrant approval.

Finally, the reaction of the Class and the support of Lead Plaintiffs reinforce the reasonableness of the requested 30% fee. Lead Plaintiffs—experienced institutional investors that supervised the litigation and oversaw the settlement negotiations—carefully evaluated the fee request and fully endorse it, providing exactly the type of informed, independent judgment courts look to when assessing fee awards. Furthermore, although the objection deadline has not yet passed, not a single Settlement Class Member has challenged the fee request to date.

For these reasons, and as set forth in more detail below, Lead Plaintiffs and Lead Counsel respectfully request that the Court approve this motion.

## II. ARGUMENT

### A. Lead Counsel Are Entitled to an Award of Fees from the Common Fund

"[I]t is well established that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 531-32 (E.D. Mich. 2003) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). In common fund cases, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Bd. of Trs. of City of Birmingham Employees' Ret. Sys. v. Comerica Bank*, 2013 WL 12239522, at *6 (E.D. Mich. Dec. 27, 2013). Trial courts have broad discretion in awarding attorneys' fees in common fund cases and such awards "need only be reasonable under the circumstances." *Id*.

### B. The Court Should Award Attorneys' Fees Using the Percentage Approach

Although the Sixth Circuit has granted district courts the discretion to utilize either the lodestar or the percentage-of-the-fund method when awarding attorneys' fees, courts within the

Sixth Circuit have recognized that the percentage of the fund method "clearly appears to have become the preferred method in common fund cases." *Gokare v. Fed. Express Corp.*, 2013 WL 12094887, at *3 (W.D. Tenn. Nov. 22, 2013).

This is because the percentage method eliminates disputes about the reasonableness of rates and hours, conserves judicial resources and aligns the interests of class counsel and the class members. *See*, *e.g., Palm Tran*, 2022 WL 17582004, at *5 (the percentage method "has numerous advantages, including that it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation"). Indeed, the percentage-of-the-fund method '"provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *See In re Se. Milk Antitrust Litig.,* 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005)).

Furthermore, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that, "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). *See Home Point*, 2024 WL 3273275, at *7 (noting that the PSLRA "particularly endorses contingent attorney fees as a percentage of the fund").

**C. The Requested Fee of 30% Is Comparable to Awards in Similar Cases**

Lead Counsel's fee request of 30% of the Settlement Fund falls squarely within the range of fees Courts within the Sixth Circuit have awarded in PSLRA securities fraud cases. *See Padilla*, 2023 WL 7018392, at *1 (finding 33⅓% of a $9.5 million settlement was "fair and reasonable"); *In re Envision Healthcare Corp. Sec. Litig.*, 2024 WL 1270007, at *1 (M.D. Tenn. Mar. 21, 2024) (awarding 30% in a PSLRA case); *Grae v. Corrections Corp. of America*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding 33.3% fees on a $56 million securities

settlement); *Palm Tran*, 2022 WL 17582004, at **5-6 (describing a request for a 30% fee award on a $12 million securities fraud settlement as "more than reasonable" and "comparable to awards in this Circuit"); *Zimmerman*, 2019 WL 3942483, at *1 (awarding "fees of 30% of the $14.1 million Settlement Amount"); *Palazzolo v. Fiat Chrysler Automobiles N.V.*, 2019 WL 2957143, at *1 (E.D. Mich. June 5, 2019) (finding a fee award of 30% of $14.75 million settlement fund "fair and reasonable"); *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 2024 WL 6446751, at *1 (E.D. Tenn. Sept. 10, 2024) (awarding "one-third of the Settlement Fund" where Settlement was $13.7 million).[2]

The request is also well within the range for complex common fund cases more generally within the Sixth Circuit. *See In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *1 (E.D. Tenn. June 30, 2014) (finding that a fee of one-third is "within the range of fees ordinarily awarded."); *Se. Milk,* 2013 WL 2155387, at *3 (a one-third fee request is "certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."); *BleachTech LLC v. United Parcel Service, Inc.,* 2022 WL 2900796, at *2 (E.D. Mich. July 20, 2022) ("Class Counsel's request for 33 1/3 % of the common fund created by their efforts is well within the benchmark range and in line with what is often awarded in this Circuit"); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable"); *In re Prandin Direct Purchaser Antitrust Litig.,* 2015 WL 1396473, at *4 (E.D.

[2] *See also Home Point*, 2024 WL 3273275, at *7 (awarding 30% fee award of $5 million securities class action settlement); *Cosby v. KPMG LLP*, 2022 WL 4129703, at *1 (E.D. Tenn. July 12, 2022) (awarding 33⅓% of $35 million securities settlement); *In re Provectus Biopharmaceuticals, Inc. Sec. Litig.*, 2016 WL 7735229, at *3 (E.D. Tenn. Dec. 12, 2016) (awarding 33.3% fees on $3.5 million securities class action settlement); *In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig.*, 2016 WL 8290089, at *8 (W.D. Tenn. Aug. 2, 2016) ("District courts in the Sixth Circuit have often approved thirty percent fees"); *In re Caraco Pharm. Lab'ys., Ltd. Sec. Litig.,* 2013 WL 3213328, at *4 (E.D. Mich. June 26, 2013) (awarding 33% of $2.975 million settlement).

Mich. Jan. 20, 2015) (awarding one-third of $19 million settlement). Thus, precedent within this Circuit supports the requested fees of 30% of the Settlement Fund.

Furthermore, as of June 29, 2026, a total of 26,397 Postcard Notices or Notices have been provided to potential Settlement Class Members advising that Plaintiffs' Counsel would seek an award of up to 33%, and, to date, no Settlement Class Member has objected to Lead Counsel's request for attorneys' fees and expenses even at that higher level. *See* Ex. 3 (Declaration of Kathleen Brauns Regarding: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; (C) Establishment of Settlement Website and Call Services; and (D) Report on Exclusions and Objections (hereafter "Brauns Declaration" or "Brauns Decl.")). While not dispositive, the lack of objections from the Settlement Class supports the reasonableness of the fee request. *Padilla*, 2023 WL 7018392, at *1 (approving requested fee where "[t]here were no objections to the requested attorneys' fees and reimbursement of Litigation Expenses"). If any objections are received, they will be addressed in Lead Counsel's reply papers, which will be filed on August 3, 2026.

### D. Lead Counsel's Fee Request Is Fair and Reasonable under Sixth Circuit Authority

In reviewing the reasonableness of the requested award, district courts within the Sixth Circuit also consider six factors, known as the *Ramey* factors:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis [the lodestar cross-check]; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974); *Cosby*, 2022 WL 4129703, at *2. As demonstrated below, each of these factors supports an award of the requested attorneys' fees in this case.

### 1. The Value of the Benefit Achieved

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Home Point*, 2024 WL 3273275, at *6; *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."). Here, Lead Counsel have secured a Settlement that provides for a substantial, non-reversionary, cash payment of $17,000,000 for the benefit of the Settlement Class.

The Settlement represents between 10.3% and 24.64% of the potential maximum aggregate recoverable damages, which assumes Lead Plaintiffs overcame all the obstacles to establishing liability, the Court granted class certification and Lead Plaintiffs prevailed on all of their loss causation and damages theories. Courts have routinely approved recoveries of a similar or lesser percentage of recoverable damages. *See*, *e.g., Cheng Jiangchen v. Rentech, Inc*., 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) (citing cases where 3.5% and 4.5% of maximum damages were approved). Notably, this recovery is significantly higher than the median recovery of 6.5% for cases of a similar magnitude. *See* Ex. 9, Laarni T. Bulan, Eric Tam, *2025 Review & Analysis Securities Class Action Settlements*, Cornerstone Research, p.7;[3] *see also Ciarciello v. Bioventus Inc.*, 760 F. Supp. 3d 377, 396-97, 400 (M.D.N.C. 2024) (noting that recovery between 10.8% and 27% of total damages was "more than double the average recovery in § 10(b) cases litigated" over the prior decade and was "a good result for the class").

The Settlement represents an excellent result in light of the procedural and substantive hurdles that Lead Plaintiffs would have had to overcome to prevail in this complex securities fraud litigation. *Pinto v. Princess Cruise Lines, Ltd*., 513 F. Supp. 2d 1334, 1340 (S.D. Fla.

---

[3] Also available at https://www.cornerstone.com/wp-content/uploads/2026/02/Securities-Class-Action-Settlements-2025-Review-and-Analysis.pdf.

2007) (noting that litigation risks must be assessed from the time the action "commenced"). While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly. *See In re Ikon Office Sols., Inc. Sec. Litig.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").

Indeed, the Sixth Circuit recognizes that pleading securities fraud "under the PSLRA is a tall order." *See Newtyn Partners, LP v. All. Data Sys. Corp.*, 165 F.4th 947, 965 (6th Cir. 2026); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 441 (6th Cir. 2014) (noting the "high hurdle imposed by the PSLRA"). Accordingly, there was a risk that the Court would dismiss the Complaint under the PSLRA's heightened pleading standards, and that the statute's automatic stay of discovery would preclude Lead Plaintiffs from obtaining the evidence necessary to successfully replead their claims effectively. *See Jorling v. Anthem, Inc.,* 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process."); *In re BP p.l.c. Sec. Litig.,* 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading").

Nor would the risks end at the pleading stage. Although Lead Counsel strongly believe in the merits of their claims, they faced numerous hurdles to proving liability. *See Palm Tran*, 2022 WL 17582004, at *3 (noting that had the case progressed it would "raise complex issues before the Court"). Defendants raised numerous defenses, including that: (a) none of the challenged statements were materially false or misleading; (b) Defendants did not act with the requisite fraudulent intent; and (c) the alleged misstatements did not cause Plaintiffs' losses.

Each of these issues is fact intensive, dependent on evidence from hostile witnesses, and/or would require extensive expert testimony to resolve. If Defendants had prevailed on their liability arguments with respect to any element of the claim, it would have proven fatal to Lead Plaintiffs' case. *See Gross v. GFI Grp., Inc.,* 784 F. App'x. 27, 29 (2d Cir. 2019) (affirming summary judgment on alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable).

Moreover, even if Lead Plaintiffs prevailed on liability, they would still need to prove damages. In securities class actions, assessing damages often requires a "battle of economic experts" which is "costly with uncertain results." *Home Point*, 2024 WL 3273275, at *3. As a result, "[i]t is uncertain that a jury would award damages exceeding the amount the Class will receive from the Class Settlement." *Regions Morgan Keegan*, 2016 WL 8290089, at *5; *see also Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *7 (E.D. Mich. Oct. 24, 2014) (proving damages in a securities class action "is a highly technical task that usually involves a battle of experts").

Here, Defendants argued in their motion to dismiss and no doubt would have continued to argue at summary judgment, trial and on appeal that the stock-price declines on the alleged disclosure dates were the result of information unrelated to Revance's prior statements about the strength of its relationship with Teoxane, the reasons for its apparently strong sales or even the status of its negotiations with Crown and Teoxane. Had these arguments been accepted by the court at any stage of the litigation, damages could have been greatly reduced, or even eliminated. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.,* 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict based

on plaintiffs' expert's failure to disaggregate certain negative information), *aff'd on other grounds sub nom., Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012).

While Plaintiffs' Counsel believe they would have ultimately been able to overcome all of Defendants' arguments, there can be no question that this Action was difficult, complex, and fraught with risk. Lead Counsel nevertheless obtained an excellent result for the Settlement Class. Success in the face of these challenges strongly supports the requested fee. *See Home Point*, 2024 WL 3273275, at *7 ("[t]he significant risk inherent in prosecuting this action warrants the award of the requested 30% contingent fee"); *Padilla*, 2023 WL 7018392, at *2 (awarding one-third in fees where there "remain[ed] a significant risk that Lead Plaintiffs and the other members of the Settlement Class may have recovered less than the Settlement Amount, or nothing at all").

### 2. The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

In the Sixth Circuit, "[p]erforming a cross-check of the attorney-fee request using Class Counsel's lodestar is optional." *Barnes v. Winking Lizard, Inc.*, 2019 WL 1614822, at *6 n.2 (N.D. Ohio Mar. 26, 2019). However, when applying the percentage-of-the-fund method, courts will often look at the hours expended by counsel, either as a factor in the fee analysis or as an independent cross-check. *See Home Point*, 2024 WL 3273275, at *7; *Palm Tran*, 2022 WL 17582004, at *5. The lodestar is determined by multiplying "the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Home Point*, 2024 WL 3273275, at *6.

As shown in the declarations submitted with this motion, Lead Counsel and their professional staff have worked a total of 3,977.80 hours on this case, broken down as follows: Entwistle & Cappucci, 2,428.2 hours (Entwistle Decl., Ex. 6 at ¶ 4 and Ex. A thereto); Saxena White, 1,532.5 hours (Lamet Decl., Ex. 7 at ¶ 5 and Ex. A thereto); and 17.10 (Stranch Decl., Ex.

8 at ¶ 5 and Ex. A thereto). Applying the rates charged by counsel to these hours yields a "lodestar" of $4,013,506.81. *See id.* Thus, the requested fee of 30% ($5,100,000) represents a multiplier on Plaintiffs' Counsel's lodestar of approximately 1.27.

A multiplier of 1.27 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See In re Chevrolet Bolt EV Battery Litig.,* 2025 WL 3708892, at *13 (E.D. Mich. Dec. 22, 2025) (multiplier of 3.6-4.25 was "reasonable and consistent with those awarded in other courts"); *Cosby*, 2022 WL 4129703, at *2 (multiplier of 2.86 in securities fraud action); *Palm Tran*, 2022 WL 17582004, at *5 (multiplier of about 2.64 in PSLRA case); *Home Point*, 2024 WL 3273275, at *7 (multipliers "in [] large PSLRA securities class action[s]" generally "range[] from 1.3 to 4.5"); *Arp v. Hohla & Wyss Enters., LLC,* 2020 WL 6498956, at *8 (S.D. Ohio Nov. 5, 2020) (multiplier of 5.29 "acceptable"); *Lucyk v. Materion Brush Inc.,* 2023 WL 4405280, at *6 (N.D. Ohio July 7, 2023) (finding multiplier of 2.7 "well within the accepted range for these types of cases.").

Moreover, the lodestar and multiplier do not contemplate that Lead Counsel "will expend substantial additional time going forward working on behalf of the Settlement Class" in administering the Settlement Fund. *See Chevrolet Bolt EV*, 2025 WL 3708892, at *12. Among other things, Lead Counsel will oversee the claims administration process, respond to investor inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward, because Lead Counsel will not seek any additional compensation for this work.

Consequently, whether analyzed as a cross-check on the percentage-of-the-fund method or independently under the lodestar method, the requested fees are reasonable and consistent with prior awards in this Circuit and nationwide.

### 3. The Contingent Nature of Counsel's Representation Supports the Fee Request

Courts recognize that where counsel "provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [or] until there was a recovery" they "should be compensated for that risk." *Winking Lizard*, 2019 WL 1614822, at *5. This is because where compensation is "entirely contingent upon success" there is a legitimate "risk of under-compensation in the absence of settlement or victory at trial." *Cosby*, 2022 WL 4129703, at *2. Indeed, success in contingent litigation is never guaranteed and the "significant risk inherent in prosecuting" a securities fraud class action "warrants the award of the requested 30% contingent fee." *Home Point*, 2024 WL 3273275, at *7; *see also Envision Healthcare*, 2024 WL 1270007, at *1 (awarding 30% fee in PSLRA case when "considering . . . the contingent nature of Class Counsel's representation").

Here, Lead Counsel prosecuted the Action on a fully contingent basis. Lead Counsel understood from the outset that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. Unlike defense counsel who typically receive payment on a timely and regular basis throughout a case—regardless of the outcome—Lead Counsel has not been compensated for any time or expenses since this case began. Lead Counsel's commitment was substantial (*i.e.*, $4,013,506.81 in lodestar and $173,112.29 in out-of-pocket hard costs), all of which could have been lost had they not obtained a recovery. Accordingly, the contingent nature of this uncertain litigation supports the requested fee. *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("counsel undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant fee").

#### 4. Society's Interest in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee

The federal securities laws are remedial in nature and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, (1985) (referring to private securities actions as providing "a most effective weapon in the enforcement of the securities laws"). Adequate compensation is, therefore, a necessary component of encouraging attorneys to assume the risk of litigation in the public interest. Indeed, "[s]ociety has a strong interest in compensating [Lead] Counsel for the risks and complex issues posed by this case, thereby encouraging others to bring similar litigation in the future." *Cosby*, 2022 WL 4129703, at *2. Furthermore, this settlement "serves the public interest by providing an efficient, yet substantial, recovery to a large class of [investors]." *Home Point*, 2024 WL 323275, at *4. Thus, the public interest will be served by approving the requested award.

#### 5. The Complexity of the Litigation Supports the Requested Fee

The complexity of the litigation is a significant factor to be considered in determining the reasonableness of a fee award. *See Cosby*, 2022 WL 4129703, at *2. Courts have long recognized that securities class actions carry substantial risks, and post-PSLRA rulings have only heightened the possibility of no recovery. *See*, *e.g.*, *Hefler v. Wells Fargo & Co.,* 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain'"). This Action was no exception.

As noted above and in the Joint Declaration, this litigation raised many complex factual and legal questions that required extensive efforts by Lead Counsel to bring to resolution. To

prosecute the case, Lead Counsel had to, among other things, gain a working knowledge of Revance's business, its contractual relationship with Teoxane, FDA regulations and the process by which Revance and its management negotiated, agreed to, and then renegotiated the Tender Offer with Crown. Lead Counsel also had to understand the complex loss causation and damages issues, especially in the situation where the outstanding Tender Offer may have affected Revance's trading price.

Indeed, the complexity of the issues involved in this case is evidenced by the 87-page Complaint and the complicated nature of the briefing on Defendants' motion to dismiss. Had Plaintiffs' Counsel not devoted the necessary resources and attention to the difficult questions raised in this case, they would not have been able to obtain a settlement at the level achieved.

In addition, Plaintiffs did not benefit from other advantages securities class action plaintiffs frequently have. There were no financial restatements or SEC charges that would illuminate a theory of the case and set out key evidence. Nor was there an SEC whistleblower who could be counted on to cooperate with Plaintiffs and explain to the jury why Defendants' conduct was fraudulent. Here, "Lead Counsel did not have the benefit of a 'road map' established by a government investigation off which they could 'piggy back', but instead independently developed factual allegations and legal theories." *In re Hi-Crush Partners L.P. Sec. Litig.,* 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014).

Substantial risks and uncertainties in this type of litigation and, in this case in particular, made it far from certain that any recovery, let alone a recovery of $17 million, would ultimately be obtained, supporting the requested award.

### 6. The Quality of Representation Supports the Requested Fee

Lead Counsel are nationally recognized leaders in securities class actions and complex litigation. *See* Exs. 6 and 7 (and Exs. C thereto). Their high-quality representation is reflected in

the substantial recovery achieved for the Settlement Class, as well as the efficient and effective prosecution and resolution of this Action. The recovery obtained is directly attributable to the efforts of experienced, highly skilled attorneys with deep expertise in complex securities litigation. Lead Counsel devoted significant time and resources to investigating, researching, and litigating the case, executing a coordinated effort to maximize recovery for the putative class. Through their diligence, experience and reputation, they successfully negotiated a highly favorable settlement under challenging circumstances. This level of quality, efficiency and commitment supports the requested fee.

The quality of Lead Counsel's work must also be assessed in light of the caliber of opposing counsel. Here, Lead Counsel faced Kirkland & Ellis LLP and Skadden, Arps, Slate, Meagher & Flom LLP—two premier defense firms that vigorously represented their clients. Notwithstanding this formidable opposition, Lead Counsel developed a compelling case that ultimately led Defendants to agree to a settlement that provides a fair, reasonable, and adequate recovery for the Settlement Class. *See Rentech,* 2019 WL 5173771, at *10 ("requested fee" supported because "Lead Counsel faced a vigorous defense" from "respected national law firm[s]").

For these reasons, Lead Counsel respectfully request that the Court approve an attorneys' fee award of 30% of the Settlement Fund, or $5,100,000, plus any accrued interest.

### E. Plaintiffs' Counsel's Expenses Should Be Reimbursed Because They Are Reasonable and Were Necessarily Incurred in the Prosecution of the Action

Lead Counsel also requests reimbursement of out-of-pocket expenses incurred in connection with the prosecution of this litigation in the amount of $173,112.29. *See* Ex. 5. Under the common fund doctrine, Lead Counsel "is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining

settlement." *Cosby*, 2022 WL 4129703, at *3 (quoting *Cardizem,* 218 F.R.D. at 535); *see also Se. Milk,* 2013 WL 2155387, at *8 ("[e]xpense awards are customary" in common fund cases). In determining whether expenses are reasonable and compensable, the inquiry is whether the particular costs are of the variety of "those typically billed by attorneys to paying clients, such as research costs, expert fees, mediation fees, and administrative costs." *Regions Morgan Keegan*, 2016 WL 2890089, at *8.

Here, the Joint Declaration and its attachments attest to the accuracy of Lead Counsel's expenses, listing all expense items by category and amount. A significant portion of the expenses were incurred for professional services rendered by Lead Plaintiffs' experts and the mediator, while the remaining expenses are attributable to standard litigation fees such as research and photocopy expenses and filing fees. *See* Ex. 5 (Expenses Summary); Exs. 6, 7, and 8 (and Exs. B thereto). These expenses were critical to Lead Plaintiffs' success in achieving the proposed Settlement, and they are of the type typically billed by attorneys to paying clients in similar litigation. *See Palm Tran*, 2022 WL 17582004, at *5 (reimbursing out of pocket expenses including "[c]ourt, witness and service fees," "experts and professional [f]ees," "mediation," and "online legal & factual research"); *Comerica*, 2013 WL 12239522, at *7 (awarding litigation expenses for "experts; computerized research; travel; mediation; photocopying; court filing; postage and overnight delivery; telephone; and telecopier").

Moreover, to date, not a single objection to the expense request has been filed with the Court, and the amount requested is below the $250,000 limit disclosed in the Notice. *See* Joint Decl. ¶ 49 and Ex. 5 thereto. Accordingly, Lead Counsel respectfully request reimbursement for these expenses.

### F. Lead Plaintiffs' Reimbursement Should Be Approved

The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for its "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *See* 15 U.S.C. §78u-4(a)(4). Courts "throughout the Sixth Circuit" have approved Lead Plaintiff reimbursements to "compensate them for time and effort spent on behalf of a class." *Home Point*, 2024 WL 3273275, at *7.

Here, Lead Plaintiffs respectfully request reimbursement of costs and expenses in the amounts of $5,000 for Lead Plaintiffs The Arbitrage Fund, AltShares Merger Arbitrage ETF, AltShares Event-Driven ETF, and iMGP Alternative Strategies Fund (Ex. 1) and $5,000 for Lead Plaintiff Chicago Capital Management, LLC (Ex. 2). As set forth in their declarations, Lead Plaintiffs—the only institutional investors to step forward to represent the Settlement Class—devoted significant time participating in this litigation, including, *inter alia*: (a) communicating with Lead Counsel regarding the posture and progress of the case; (b) reviewing pleadings and briefs filed in the Action; and (c) overseeing the settlement negotiations including evaluating proposals and approving the Settlement Amount. *See* Exs. 1 and 2. Lead Plaintiffs, therefore, collectively seek $10,000, a modest request well within the range routinely approved in PSLRA actions. *See*, *e.g.*, *Home Point,* 2024 WL 3273275, at *7 (lead plaintiff award of $15,337.00); *Cosby*, 2022 WL 4129703, at *3 (granting awards of $25,000, $10,000, and $10,000 to lead plaintiffs); *Padilla*, 2023 WL 7018392, at *2 (awarding $10,000 and $6,800 to lead plaintiffs).

## III. CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application. Proposed orders will be submitted with Lead Plaintiffs' reply papers, after the deadlines for objections have passed.

Dated: June 29, 2026

Respectfully Submitted,

**STRANCH, JENNINGS & GARVEY PLLC**

By: *<u>/s/ J. Gerard Stranch, IV</u>*
J. Gerard Stranch, IV (BPR 23045)
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Liaison Counsel for Lead Plaintiffs and the Settlement Class*

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci (*pro hac vice*)
Robert N. Cappucci (*pro hac vice*)
Brendan J. Brodeur (*pro hac vice*)
230 Park Avenue, 3rd Floor
New York, NY 10169
Tel.: (212) 894-7200
Fax: (212) 894-7272
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
bbrodeur@entwistle-law.com

-and-

**ENTWISTLE & CAPPUCCI LLP**
Andrew J. Entwistle (*pro hac vice*)
Callie Crispin (*pro hac vice*)
500 West 2nd Street, Suite 1900
Austin, TX 78701
Tel.: (512) 710-5960
Fax: (212) 894-7278
aentwistle@entwistle-law.com
ccrispin@entwistle-law.com

**SAXENA WHITE P.A.**
Steven B. Singer (*pro hac vice* forthcoming)
David J. Schwartz (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551

Fax: (888) 631-3611
ssinger@saxenawhite.com
dschwartz@saxenawhite.com

Lester R. Hooker (*pro hac vice* forthcoming)
Jonathan D. Lamet (*pro hac vice* pending)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 374-3399
Fax: (561) 394-3382
lhooker@saxenawhite.com
jlamet@saxenawhite.com

*Counsel for Lead Plaintiffs and the Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum in Support of Plaintiffs' Unopposed Motion for Final Approval, Fees, Expenses and Service Awards was electronically filed on June 29, 2026, using the Court's Electronic Filing System, which will send a Notice of Electronic Filing to counsel in the CM/ECF system.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (BPR 23045)